STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
rspan@steinbrecherspan.com
DOUGLAS R. PAINTER (SB# 131043)
dpainter@steinbrecherspan.com
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

LESNICK PRINCE & PAPPAS LLP
MATTHEW A. LESNICK (SB# 177594)
matt@lesnickprince.com
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
T: (310) 396-0964
F: (310) 396-0963

Attorneys for KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>ROBIN DIMAGGIO,<br><br>Debtor. | Case No. 1:17-bk-12434-MT<br><br>Chapter 7<br><br>**EXHIBITS TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** |

Exhibits A, 1 and 2 to the "Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362" [Dkt. No. 21] are attached.

# EXHIBIT A



THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

Español | Tiếng Việt | 한국어 | 中文 | հայերեն

Search

Home | Online Services Pay Fines, Search Records... | Forms & Filings Forms, Filing Fees... | Self-Help Self-Rep, Info, FAQs... | Divisions Civil, Criminal, Family... | Jury Jury Duty Portal, Q&A... | General Info Courthouses, ADA, Local Rules...

ONLINE SERVICES

# Case Summary

## CASE SUMMARY

PRINT NEW SEARCH

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

Case Number: BC645027
KRASIMIER DACHEV ET AL VS ROBIN DIMAGGIO ET AL

Filing Date: 12/27/2016

Case Type: Fraud (no contract) (General Jurisdiction)

Status: Pending

### Future Hearings

**02/02/2018** at 08:33 am in Department U at 6230 Sylmar Ave., Van Nuys, CA 91401
Conference-Final Status(JURY TRIAL SET 2/13/18ESTIMATE 5-7 DAYS)

**02/13/2018** at 09:30 am in Department U at 6230 Sylmar Ave., Van Nuys, CA 91401
Trial(ESTIMATE 5-7 DAYS)

Documents Filed | Proceeding Information

### Parties

AD SVILOSA - Plaintiff

DACHEV KRASIMIR - Plaintiff/Petitioner

DACHEV KRASIMIR - Plaintiff

DIMAGGIO INTERNATIONAL INC. - Defendant/Respondent

DIMAGGIO INTERNATIONAL INC. - Defendant

DIMAGGIO ROBIN - Defendant

DIMAGGIO ROBIN - Defendant/Respondent

DOES 1-25 - Defendant/Respondent

DOES 1-25 - Defendant

FOX J.T. ESQ. - Attorney for Deft/Respnt

PEACE FOR YOU PEACE FOR ME - Plaintiff

PEACE FOR YOU PEACE FOR ME - Plaintiff/Petitioner

SPAN ROBERT STEVEN - Attorney-Plaintiff

STEINBRECHER & SPAN LLP - Attorney for Plaintiff/Petitioner

SVILOSA AD - Plaintiff/Petitioner

TUSHINSKY-FOX JACQUES . - Former Attorney for Defendant


Case Information | Party Information | Proceeding Information


**Documents Filed** (Filing dates listed in descending order)

**09/12/2017** Declaration
Filed by Attorney-Plaintiff

**09/12/2017** Motion (FOR TERMINATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND
SPOLIATION OF EVIDENCE )
Filed by Attorney-Plaintiff

**09/08/2017** Substitution-Attorney
Filed by Attorney-Defendant

**07/07/2017** Order (FINAL STATUS CONFERENCE ORDERS )
Filed by Clerk

**07/07/2017** Order (CASE MANAGEMENT CONFERENCE ORDERS )
Filed by Clerk

**05/25/2017** Answer to First Amended Complaint
Filed by Attorney-Defendant

**05/04/2017** Notice-Case Management Conference
Filed by Clerk

**04/06/2017** Opposition Document
Filed by Attorney for Plaintiff/Petitioner

**04/05/2017** Notice-Related Cases (LC0104988 )
Filed by Attorney for Defendant/Respondent

**04/05/2017** Receipt (JURY FEES )
Filed by Attorney for Defendant/Respondent

**04/05/2017** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**04/05/2017** Notice
Filed by Attorney for Defendant/Respondent

**04/05/2017** Notice (OF RESCHEDULING )
Filed by Attorney for Defendant/Respondent

**03/21/2017** Statement-Case Management
Filed by Attorney for Plaintiff/Petitioner

**03/06/2017** Notice-Case Management Conference
Filed by Attorney for Plaintiff/Petitioner

**02/08/2017** Motion to Strike
Filed by Attorney for Defendant/Respondent

**01/10/2017** Notice-Case Management Conference
Filed by Clerk

**12/29/2016** Notice-Related Cases (LC104988 )
Filed by Attorney for Plaintiff/Petitioner

**12/27/2016** Complaint

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)

**10/04/2017** at 08:32 am in Department NWU, Rupert A. Byrdsong, Presiding
Motion-Terminate Sanctions - **Denied**

**07/07/2017** at 08:30 am in Department NWU, Rupert A. Byrdsong, Presiding
Conference-Case Management - **Held-Trial date set**

**05/16/2017** at 08:30 am in Department NWT, FRANK J. JOHNSON, Presiding
Conference-Case Management - **Reassigned-Case for all purposes**

**04/19/2017** at 08:30 am in Department 30, Barbara M. Scheper, Presiding
Motion to Strike - **Transferred to different departmnt**

**04/05/2017** at 08:30 am in Department 30, Barbara M. Scheper, Presiding
Conference-Case Management - **Held-Continued**

Case Information | Party Information | Documents Filed | Proceeding Information NEW SEARCH

---

Art Showcased in
Los Angeles Courthouse Jury Rooms

"Flamingo Resort" by Michael Artis
2009 – Amateur 3rd Place

Copyright 2014 Superior Court of California, County of Los Angeles

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 27 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

Robin DiMaggio, an individual, DiMaggio International, Inc., a California corporation, and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Krasimir Dachev, an individul, Peace for You Peace for Me, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock company organized under the laws of Bulgaria

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov)*, en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org)*, en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of the state of California, County of Los Angeles, 111 N. Hill St., Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):* BC 6 4 5 0 2 7

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Douglas R. Painter, Steinbrecher & Span LLP, 445 S. Figueroa St., Ste. 2350, L.A., CA 90071, 213-891-1400

DATE: *(Fecha)* DEC 2 7 2016 SHERRI R. CARTER Clerk, by *(Secretario)* Judi Lara, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

COPY

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 27 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,

Plaintiffs,

v.

ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,

Defendants.

CASE NO. BC 645027

**COMPLAINT FOR:**

**(1) FRAUD AND DECEIT**
**(2) BREACH OF CONTRACT**
**(3) CONVERSION**
**(4) MONEY HAD AND RECEIVED**
**(5) NEGLIGENT MISREPRESENTATION**
**(6) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(7) UNFAIR COMPETITION (Business & (Professions Code § 17200 *et seq.*)**
**(8) ACCOUNTING**

**JURY TRIAL DEMANDED**

COPY

Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD (collectively "Plaintiffs") allege against defendants Robin DiMaggio and DiMaggio International, Inc. (sometimes collectively "DiMaggio") and DOES 1-25 (DiMaggio and DOES 1-25 are collectively referred to as "Defendants"), as follows:

**NATURE OF THE ACTION**

1. This action involves a session musician who deceived and defrauded charity organizers of over $1,000,000 under the false pretext that he could and would use that money to secure celebrity musicians for a charity concert. After he took the money he demanded, he failed to secure the promised celebrities, pocketed the money for himself and caused the collapse of the concert, causing damages to Plaintiffs of over $4.5 million.

2. Plaintiffs were partners and/or investors in a planned charity concert event ("Charity Event") that was to have taken place on October 1, 2016 in Sofia, Bulgaria. The goal of the Charity Event was to provide financial aid and attention to homeless and displaced children in or from conflict zones and centered around a planned, internationally-televised concert of famous musician celebrities.

3. Around May 2016, DiMaggio, a session drummer and musician, represented to Plaintiffs that he was an American music promoter with major connections in the music industry, and had the expertise and ability to obtain commitments from famous musician celebrities to perform at the Charity Event; he also provided Plaintiffs with a written list of over 150 famous musician celebrities from which Plaintiffs could "pick." Based on DiMaggio's representations, Plaintiffs and DiMaggio entered into written agreements in which DiMaggio would secure these celebrities and be compensated later from commissions that would be applied against the celebrity contracts he secured.

4. Starting around June 2016 and through August 2016, DiMaggio demanded a series of large payments from Plaintiffs, purportedly to use as "deposits" for the celebrity contracts he claimed he would obtain. In reliance on DiMaggio's representations, Plaintiffs paid over $1,000,000 to DiMaggio for this ostensible purpose. Pursuant the parties' written agreements, these funds were to be placed in an escrow account and were to be fully refundable if DiMaggio

did not secure the promised contracts.

5. As it turned out, DiMaggio did not have the expertise, ability or intention to secure the promised celebrities and, in fact, never secured a single celebrity artist for the Charity Event. DiMaggio also did not open the promised escrow account in which Plaintiffs' money was supposed to have been held, nor did he use the monies to secure celebrity artists, instead keeping Plaintiffs' money in his own bank accounts. By early September 2016, when it became apparent that DiMaggio could not and would not fulfill his contractual obligations for the Charity Event (then less than four weeks away), Plaintiffs demanded the return of their money, pursuant their written agreements with DiMaggio. DiMaggio repeatedly refused, first under the pretext that he had given these monies to artists' agents to secure their performances and was "waiting" for "refunds," and then under the pretext that he needed to keep the money to organize a future charity event with Plaintiffs, even though there was and is no agreement for such an event.

6. In addition to the approximate $1,000,000 of Plaintiffs' money that DiMaggio has refused to return, Plaintiffs also incurred substantial liabilities relating to the Charity Event in reliance on DiMaggio's representations. Such liabilities include approximately $2,500,000 expended as deposits and/or payments for artists, hosts, hotels, airfare, stage and lighting vendors and other service providers, and approximately $1,000,000 of unpaid contractual obligations associated with those expenditures.

7. Defendants' acts and omissions as alleged herein give rise to the tort, contract and statutory claims pleaded below, provide grounds for injunctive relief and punitive damages, and have proximately caused compensatory damages to Plaintiffs in a precise amount to be determined at trial but in no event less than $4.5 million.

## THE PARTIES

8. Plaintiff Peace for You, Peace for Me Foundation ("Foundation") is a private non-profit foundation registered under Bulgarian law and was formed to organize and hold the Charity Event.

9. Plaintiff Krasimir Dachev ("Dachev") is a resident of Sofia, Bulgaria and was a sponsor of the Foundation.

10. Plaintiff Svilosa AD ("Svilosa") is a publicly traded Joint Stock Company listed on the Bulgarian Stock Exchange and was the primary investor in the Foundation and the Charity Event.

11. The name "Kris Dachev & Associates" as used in certain agreements referenced herein refers jointly to Dachev, the Foundation and Svilosa.

12. On information and belief, Defendant DiMaggio International, Inc. is a corporation organized under the laws of California and with a registered address and place of business located in Agoura Hills, California.

13. On information and belief, Defendant Robin DiMaggio is resident of Los Angeles County, California and the Chief Executive Officer of DiMaggio International, Inc. On information and belief, Robin DiMaggio exercised complete domination and control over DiMaggio International, Inc. which resulted in the injuries alleged herein, with such a unity of interest and control between Robin DiMaggio and DiMaggio International, Inc. that they cannot be construed as two separate entities or parties under the law. Thus, the term "DiMaggio" as used herein refers to Robin DiMaggio and DiMaggio International, Inc. collectively.

14. Plaintiffs are ignorant of the true names and capacities of defendants Does 1 through 25 and, therefore, sue Does 1 through 25 by such fictitious names pursuant to Section 474 of the Code of Civil Procedure. Plaintiffs will amend this Complaint to allege the true names and capacities of Does 1 through 25, and each of them, upon discovering that information, and are informed and believe that Does 1 through 25, and each of them, are responsible for and proximately caused the occurrences and damages alleged herein.

15. Plaintiffs are informed and believe that each of the Defendants is the agent, joint venturer and/or employee of each of the other Defendants, and in doing the things herein alleged was acting within the course and scope of said agency, employment and/or joint venture with the advance knowledge, acquiescence or subsequent ratification of each and every other Defendant.

16. Plaintiffs are informed and believe and thereon allege that each of the Defendants knowingly and willingly conspired and agreed among themselves to undertake the unlawful actions and omissions alleged herein in furtherance of the common design alleged below.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this matter as the amount in controversy in this action exceeds $25,000.

18. This Court has personal jurisdiction over Robin DiMaggio pursuant to section 410.10 of the Code of Civil Procedure because he is a resident of the State of California and the agreements underlying this Complaint were executed by him in the State of California.

19. This Court has personal jurisdiction of DiMaggio International, Inc. pursuant to section 410.10 of the Code of Civil Procedure because it is a corporation organized under the laws of the State of California, with its principal place of business in Agoura Hills, California.

20. Venue is proper in the Court because the agreements at issue were negotiated, executed and intended to be performed in the County of Los Angeles, California and defendants reside in the County of Los Angeles, California.

## GENERAL ALLEGATIONS

21. Around early 2016, Dachev and Svilosa decided to help organize and invest in a charity concert to help homeless and displaced children in world conflict zones. In furtherance of this effort, they formed under Bulgarian law the non-profit Foundation, through which an all-day charity concert event, patterned after 1985's Live-Aid or 2010's Hope for Haiti Now, would be organized and internationally televised on October 1, 2016.

22. In late May 2016, DiMaggio engaged in communications with the Foundation and its representatives, claiming that he was a well-known session drummer to celebrity artists and the "Musical Director of the United Nations" and could, through the celebrity connections he claimed to have developed in his years in the entertainment industry, procure commitments from numerous celebrity musicians to perform at the Charity Concert within the 16-week period before it was to take place. Around this time, DiMaggio sent Plaintiffs an "Artist Acquisitions Roster" listing over 150 well-known musician celebrities from which Plaintiffs were to "pick," including but not limited to Adele, Stevie Wonder, Mick Jagger, Mariah Carey, Justin Timberlake, Rihanna, Lady Gaga, Maroon 5 and Snoop Dog. Around June 6, 2016, DiMaggio represented to Plaintiffs that he had received a "verbal yes" from Mick Jagger to perform at the Charity Event. He also

claimed in an interview broadcast on Bulgarian television that he had discussed the Charity Event with Rod Stewart, Slash, Bruno Mars and Justin Timberlake.

23. Based on DiMaggio's representations to Plaintiffs, around June 7, 2016, the Foundation and DiMaggio entered into an "Engagement Binder" which provided, among other things, that all artist fees advanced by Plaintiffs would be "returned" at the "option" of the Foundation if an artist was "not available" or did not agree to the final contract offer approved by the Foundation. A true and correct copy of this Engagement Binder is attached hereto as Exhibit A and incorporated herein.

24. Around the latter half of June 2016, DiMaggio demanded the payment of funds pursuant to the Binder Agreement, writing to Plaintiffs with claims such as "Rod Stewart gave me a verbal yes so we are starting contracts with him. He will be flying from London. We have already 'officially' Sir Mick Jagger, Earth, Wind & Fire, Sir Rod Stewart and . . . KISS!" Plaintiffs complied with DiMaggio's funding request and sent him the monies he requested.

25. Around July 7, 2016, DiMaggio represented to Plaintiffs that he had received verbal confirmations to perform from Johnny Depp, Earth Wind and Fire, Slash, Bruno Mars and Justin Timberlake, but that unless Plaintiffs sent him more money immediately, the artists would be lost. In reliance on DiMaggio's representations, around July 14, 2016, Plaintiffs sent DiMaggio another $150,000 as he had demanded to retain Mick Jagger and Earth, Wind and Fire. DiMaggio's invoice for this payment, like the Binder Agreement, stated that the monies tendered by Plaintiffs would be "returned" at the "option" of the Foundation if an artist was "not available" or did not agree to the Foundation's contract offer. A true and correct copy of this invoice ("Artist Invoice") is attached hereto as Exhibit B and incorporated herein.

26. Around late July 2016, DiMaggio wrote to Plaintiffs that he had "confirmed" various additional artists for the Charity Event, including Blondie, The Beach Boys and Roger Waters of Pink Floyd, and conveyed specific details related to each artist's supposed contract requirements, including Jennifer Lopez's and Robbi Williams' alleged demands for a private jet to and from Bulgaria, travel requirements for each artist's personnel and the specific amount of money each artist supposedly required for a deposit. He asked Plaintiffs for their "green light" on

Jennifer Lopez, Robbi Williams and Don Henley of the Eagles so he could let "the legal done . . . ready to go finally." DiMaggio, however, claimed that in order for him to proceed with securing these artists, he would need another $750,000, in addition to the approximate $258,000 that Plaintiffs had already transferred to him. Relying on DiMaggio's representations and claims that he was on the verge of finalizing contracts with these artists and "ready to go," around August 4, 2016, DiMaggio and the Foundation entered into a written agreement ("August Contract") which provided for Plaintiffs' payment of another $750,000 within 5 days into an independent escrow account.

27. The August Contract provided that such funds were to be used only for future celebrity contracts and that if DiMaggio did not secure an acceptable list of celebrity contracts, the monies would "be repaid in full to Purchaser in the first banking day following the end of the term [defined as October 3, 2016]." It also provided that the Foundation would have final approval as to all artist contracts and that DiMaggio's remuneration would be obtained from commissions applied against future payments, after the closing of artist contracts. A true and correct copy of the August Contract is attached hereto as Exhibit C and incorporated herein.

28. Shortly after the August Contract was executed, DiMaggio wrote to Plaintiffs that he was "unable" to open the required escrow account within the 5-day payment period. Instead of offering that Plaintiffs defer their payment until he opened the required escrow account, DiMaggio claimed that the money had to be paid immediately, lest he lose the artists with whom he was supposedly on the verge of contracting. Relying on DiMaggio's representations, Plaintiffs sent the entire $750,000 to DiMaggio's own bank account.

29. DiMaggio never opened the promised escrow account and, on information and belief, converted the money sent to his bank accounts for his own personal use.

30. Despite the receipt of this additional $750,000 that was supposedly needed immediately, DiMaggio did not secure a single celebrity contract and did not provide any comprehensible explanation as to why he could not open the escrow account in which Plaintiffs' funds were supposed to have been placed. By the latter half of August 2016, and after three months of empty promises, Plaintiffs, suspecting something was wrong, began looking for

celebrity artists without DiMaggio's assistance, spending significant resources in the process.

31. On August 22, 2016, Plaintiffs asked in writing for the return of their money, pursuant to the written terms to which DiMaggio had agreed. In response, DiMaggio first claimed that Plaintiffs' right to reimbursement could not occur until "everyone returns the deposits." Plaintiffs, however, had not approved any celebrity contracts (of which there were none) through which a deposit could have been lawfully tendered. Subsequently, on August 25, 2016, DiMaggio represented that he did not want to return any monies at all, so he could instead use that money to secure artists for a 2017 concert that the parties had briefly discussed. Plaintiffs, however, had no agreement with DiMaggio for any 2017 concert and the idea was quickly abandoned by Plaintiffs, in part due to their increasing suspicions of DiMaggio's trustworthiness.

32. In September 2016, less than four weeks from the Charity Event and without DiMaggio having secured a single celebrity contract, Plaintiffs made additional written demands for the return of their money. DiMaggio refused those demands, and as of this date has refused all subsequent requests for the return of the $1,008,300 and has refused to provide any explanation or accounting for these monies.

33. On information and belief: (a) at no time did DiMaggio have any of the celebrity "commitments," verbal or otherwise, he claimed to have been given, and his numerous emails to Plaintiffs to the contrary were knowingly false and intended to induce Plaintiffs to give him more money; (b) DiMaggio's claims that he used Plaintiffs' monies for celebrity "deposits" were knowingly false and there is no documentation of any unreturned money given as a deposit to secure any celebrity contract; (c) DiMaggio's repeated demands for payments, usually made on the cusp of phony news about a celebrity "almost" ready to commit, were intentionally deceptive and made for the sole purpose of extracting monies from Plaintiffs; (d) at no time did DiMaggio intend to open the escrow account he promised because he wanted to keep Plaintiffs' money for himself; and (e) at no time did DiMaggio believe that he could or would secure the celebrities he promised within the short amount of time before the Charity Event.

34. Plaintiffs have recently discovered that DiMaggio has been alleged to have

engaged in the same pattern of deceptive behavior as alleged herein to dupe other, unsuspecting philanthropists and/or investors. In the pending case of *Natwick v. Kelley, et al.*, Case No. BC615001, California Superior Court for the County of Los Angeles (filed March 24, 2016), an elderly investor alleges that DiMaggio committed fraud and elder abuse by taking over $117,000 of his money under false promises that he would help organize a "Save the Rainforest" concert that was allegedly to have been seen by over one billion viewers but which never materialized. In the pending case of *Forum Entertainment Group, Inc. v. DiMaggio et al.*, Case No. BC520593, California Superior Court for the County of Los Angeles (filed September 6, 2013), an investor alleges that DiMaggio demanded a series of large payments to secure various celebrity artists for a for-profit concert, but after taking the money, never secured any of the promised artists and refused to return plaintiff's money.

35. As a result of Defendants' acts and omissions as alleged herein, and in reliance on DiMaggio's false and deceptive representations, Plaintiffs (a) lost $1,008,300 of refundable payments tendered to DiMaggio; (b) made deposits and/or payments for artists, hosts, hotels, airfare, stage and lighting vendors and other service provider contracts totaling another $2,500,000; and (c) carry another $1,000,000 of payment obligations under these contracts. The total damage caused by Defendants therefore exceeds $4,500,000.

## FIRST CAUSE OF ACTION

**Fraud and Deceit**

**(against all Defendants)**

36. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

37. The representations made by Defendants as alleged herein, including but not limited to those relating to (a) the alleged use of Plaintiffs' monies for celebrity contract deposits; (b) the celebrity "commitments" or "confirmations" by Earth, Wind and Fire, Slash, Bruno Mars, Justin Timberlake, The Beach Boys, Roger Waters, Jennifer Lopez and Robbi Williams, among others; (c) the alleged inability to open an escrow account as required by the August Contract; (d)

the repeated claims of the need for additional monies to secure celebrity artists; (e) the alleged ability and intention to secure the celebrities required for the Charity Event in time for the October 1, 2016 concert date; and (f) the use of the approximate $1,000,000 that was sent to DiMaggio's bank accounts, were knowingly false when made and intended to induce Plaintiffs to induce act thereon.

38. Plaintiffs reasonably and justifiably relied on the misrepresentations and deceit of Defendants and had no reason to believe that Defendants were defrauding them.

39. As a proximate result of Defendants' misrepresentations and deceit, Plaintiffs have sustained damages in an amount to be determined at trial, but in excess of $4.5 million.

40. Defendants performed these acts and omissions with malice, fraud and oppression and are therefore liable to Plaintiffs for punitive damages pursuant to Civil Code § 3294.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

**(against all Defendants)**

41. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

42. The Binder Agreement, Artist Invoice and the August Contract, both individually and collectively, constitute binding and enforceable contracts.

43. Plaintiffs have performed all conditions and covenants required of them under these contracts, except any which were excused by the actions of Defendants.

44. By undertaking the acts and omissions alleged herein, including but not limited to failing to return Plaintiffs' monies and failing to secure the promised celebrity contracts, Defendants breached the provisions of the Binder Agreement, Artist Invoice and August Contract.

45. As a proximate result of the breaches by Defendants, and each of them, Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $4.5 million.

**THIRD CAUSE OF ACTION**

**Conversion**

**(against all Defendants)**

46. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

47. Defendants knowingly took the monies tendered by Plaintiffs to DiMaggio as alleged herein. Pursuant to the Binder Agreement, Artist Invoice and August Contract, these monies are refundable to Plaintiffs and belong exclusively to Plaintiffs.

48. Plaintiffs did not consent to Defendants taking possession and control of such monies once their right of refund was triggered.

49. As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have suffered actual damages in an amount to be proven at trial.

50. Defendants performed these acts and omissions with malice, fraud and oppression and are therefore liable to Plaintiffs for punitive damages pursuant to Civil Code § 3294.

**FOURTH CAUSE OF ACTION**

**Money Had and Received**

**(against all Defendants)**

51. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

52. Within the last 12 months, Defendants have become indebted to Plaintiffs in the amount of $1,080,300 for money had and received.

53. No payment has been made by Defendants thereon, and there is now a sum due of approximately $1,080,300, with interest thereon at the statutory rate of 10% under Civil Code § 3289 from the date refund was demanded and had accrued.

**FIFTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(against all Defendants)**

54. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

55. When Defendants made the false representations to Plaintiffs as alleged herein, they had no reasonable ground for believing them to be true and either intended to induce Plaintiffs to act in reliance thereon or expected Plaintiffs to act in reliance thereon.

56. Plaintiffs reasonably and justifiably relied on the misrepresentations and deceit of Defendants and had no reason to believe that Defendants were defrauding them.

57. As a proximate result of Defendants' misrepresentations and deceit, Plaintiffs have sustained damages in an amount to be determined at trial, but in excess of $4.5 million.

**SIXTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(against all Defendants)**

58. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

59. California law implies a covenant of good faith and fair dealing in all contracts entered into between parties that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

60. Plaintiffs' fulfilled their obligations under the Binder Agreement, Artist Invoice and August Contract, except as to any excused by the acts or omissions of Defendants.

61. By undertaking the acts and omissions alleged herein, Defendants materially breached the implied covenant and therefore prevented Plaintiffs from receiving the benefits of the aforementioned agreements.

62. As a proximate result, Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $4.5 million.

**SEVENTH CAUSE OF ACTION**

**Unfair Competition**

**(Business and Professions Code Section 17200 *et seq.*)**

**(against all Defendants)**

63. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

64. Plaintiffs are informed and believe that Defendants have deceived and continue to deceive concert investors through the same pattern of deception as alleged herein.

65. Defendants' actions constitute unfair business practices and unfair competition, in violation of Section 17200 *et seq.* of the Business & Professions Code.

66. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiffs have suffered compensatory and special damages, as well as reasonable attorney fees and costs, in an amount to be determined at trial.

67. Defendants performed these acts and omissions with malice, fraud and oppression and are therefore liable to Plaintiffs for punitive damages pursuant to Civil Code § 3294.

**EIGHTH CAUSE OF ACTION**

**Accounting**

**(against all Defendants)**

68. Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

69. At all relevant times, a relationship of trust existed between Plaintiffs and Defendants, in that Plaintiffs entrusted DiMaggio to use the monies sent to him only for the purposes of securing celebrity contracts for the Charity Event, and to hold that money in trust consistent with the escrow obligations he promised.

70. On information and belief, DiMaggio claims that some or all of the monies tendered to him by Plaintiffs were used for lawful purposes and are not subject to the contracts' right of refund. Assuming there were any lawful uses of the withheld monies, which Plaintiffs

deny, the balance due Plaintiffs can only be ascertained by a proper and full accounting of what DiMaggio did with Plaintiffs' money.

71. An accounting is therefore proper for (a) all monies sent to DiMaggio by Plaintiffs; and (b) all monies allegedly spent by DiMaggio related in any way to the Binder Agreement, Artist Invoice and August Contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and orders on all causes of action as follows:

On the First Cause of Action

1. For compensatory and special damages in an amount to be proven at trial;
2. For an award of punitive damages pursuant to Civil Code § 3294; and
3. For any other relief the Court deems appropriate.

On the Second Cause of Action

1. For compensatory and special damages in an amount to be proven at trial; and
2. For any other relief the Court deems appropriate.

On the Third Cause of Action

1. For compensatory and special damages in an amount to be proven at trial;
2. For an award of punitive damages pursuant to Civil Code § 3294; and
3. For any other relief the Court deems appropriate.

On the Fourth Cause of Action

1. For compensatory and special damages in an amount to be proven at trial;
2. For an award of punitive damages pursuant to Civil Code § 3294; and
3. For any other relief the Court deems appropriate.

On the Fifth Cause of Action

1. For compensatory and special damages in an amount to be proven at trial; and
2. For an award of punitive damages pursuant to Civil Code § 3294.

On the Sixth Cause of Action

1. For compensatory and special damages in an amount to be proven at trial; and
2. For any other relief the Court deems appropriate.

On the Seventh Cause of Action

1. For compensatory and special damages in an amount to be proven at trial;
2. For injunctive relief mandating the cessation of Defendants' continued unlawful activity;
3. For reasonable attorney fees and costs;
4. For an award of punitive damages pursuant to Civil Code § 3294; and
5. For any other relief the Court deems appropriate.

On the Eighth Cause of Action

1. For an accounting on (a) all monies sent to DiMaggio by Plaintiffs; and (b) all monies allegedly spent by DiMaggio in performance of the Binder Agreement, Artist Invoice and August Contract.

Dated: December 27, 2016

STEINBRECHER & SPAN LLP
ROBERT S. SPAN
DOUGLAS R. PAINTER

By: ______________________
Douglas R. Painter

Attorneys for Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

**EXHIBIT  A**



**AEI ENTERTAINMENT BROKERAGE FIRM**
**ENGAGEMENT BINDER**

REVISION #4

**Date:** JUNE 6th 2016
**To:** PEACE FOR YOU PEACE FOR ME FOUNDATION
100, Maria Luisa Blvd. Sofia, 1202 Bulgaria
c/o: J Botev

## ARTIST & PRODUCTION REQUESTED:

**Binder Fee:** $50,000.00 USD (BINDER FEE)

**Provisions:** Full rider requirements to include sound, lights, backline equipment, flight travel plus hotels and local ground transportation.

Please feel free to contact me with any questions and please RETURN back to both email(s):
thedimaggio@gmail.com / aei.ivp@gmail.com

**This engagement offer confirms our conversation with respect to the non-exclusive performance on: OCTOBER 1ST 2016**

**Please see the offer below:**

| | | |
|---|---|---|
| 1. | BUYER(S): | PEACE FOR YOU PEACE FOR ME FOUNDATION |
| 2. | EVENT NAME: | PEACE FOR YOU PEACE FOR ME |
| 3. | NATURE OF DATE: | HIGH PROFILE CHARITY CONCERT |
| 4. | LOCATION: | SOFIA, BULGARIA |
| 5. | PRODUCTION CO. | DIMAGGIO INTERNATIONAL, INC. |
| 6. | ARTIST: | VARIOUS A & B LIST ARTIST ACQUISITIONS (line-up tba) |
| 7. | DATE: | OCTOBER 1ST 2016 |
| 8. | SHOW DURATION: | 2:00 PM to 8:00 PM - first part<br>8:00 PM - 12:00 AM - second part |
| 9. | VENUE CAPACITY: | 43,230 |
| 10. | VENUE NAME: | "VASIL LEVESKII" Sofia, Bulgaria. |

**PROMOTER REPRESENTATIVE:**

PEACE FOR YOU PEACE FOR ME FOUNDATION
J Botev (Organizer / Promoter)
Date: 7.06.2016
An Authorized Signatory

PEACE FOR YOU PEACE FOR ME

**PRODUCER OR REPRESENTATIVE:**

DIMAGGIO INTERNATIONAL, INC.
Robin DiMaggio (Producer)
Date: 5/30/2016
An Authorized Signatory

**DIMAGGIO INTERNATIONAL INC.** will make its best effort to secure the artist for the event.

ARTIST & PRODUCTION TERMS

| | | |
|---|---|---|
| **PRODUCER BINDER FEE:** | $ 50,000.00 | USD |
| **PRODUCTION COST:** | $ 150,000.00 | USD |
| **VARIOUS ARTIST Artist Fees:** | $ 1,000.000.00 | USD |

Please be advised that upon the receipt of $50,000.00 (Fifty Thousand Dollars USD) binder fee will be above the line for the PRODUCER to obtain the artist and production needs above.

You will have (1) week to send binder fee of **$50,000.00 (Fifty Thousand Dollars USD)** as per OUR binder agreement above.

The binder deposit must be received via bank wire and is non-refundable with the following exclusions:

**Provisions:** Full rider requirements to include Staging, Local Union Crew, Stage Manager, Sound Lights, Backline Equipment, Flight Travel plus Hotels and Local Ground Transportation.

**DIMAGGIO INTERNATIONAL INC.** will secure the Artists and Production for **PEACE 4 YOU PEACE 4 ME FOUNDATION** and when the artist and production deposits are applied to artist guarantees, and all production vendors, at that time contracts will be issued accordingly.

If the Artist is not available or does not accept your offer, Artist fees will be applied towards another artist(s) or returned if the artist declines your offer and is willing to accept an offer at a higher fee, you will have the option of paying the higher fee or having your funds returned.

Your signature where indicated will act as your agreement and acceptance to the above stated terms.

Please feel free to contact me with any questions and please RETURN back to me at email: aei.ivp@gmail.com and thedimaggio@gmail.com

## WIRE INSTRUCTIONS FOR DEPOSIT:

Please indicate your wire transaction information:

**NAME OR COMPANY NAME:** DIMAGGIO INTERNATIONAL INC.
**BANK NAME:** CITI BANK, N.A. BRANCH #731
**BANK ADDRESS:** 3967-AE THOUSAND OAK BLVD
**COUNTRY:** USA
**CITY:** WEST LAKE VILLAGE **STATE:** CALIFORNIA **ZIP:** 91362

BANK ACCOUNT #204775621

BANK ROUTING #322271724

SWIFT CODE - citius33

**EXHIBIT  B**



# DIMAGGIO INTERNATIONAL, INC.

ARTIST AQUISISTIONS INVOICE

INVOICE NO#: #DII-001-ART-P4UP4M-AAI

LABEL/VENDOR:
**PEACE FOR YOU**
**PEACE FOR ME FOUNDATION**
100, Maria Luisa Blvd.
Sofia, 1202 Bulgaria
c/o: Jay Botef

DATE of EVENT: OCTOBER 1ST 2016

PROJECT DESCRIPTION:
**PEACE FOR YOU**
**PEACE FOR ME CONCERT**

ARTIST AQUISISTIONS: ARTIST FEES & DEPOSITS

**PAYMENT DEPOSITS:**

| | | |
|---|---|---|
| ARTIST NAME; | MICK JAGGER: | $100,000.00 |
| ARTIST NAME; | EARTH, WIND & FIRE: | $ 50,000.00 |

Direct Deposit Payable to:
**DIMAGGIO INTERNATIONAL, INC.**
5737 Kanan Road #117
Agoura Hills, CA 91301
EIN: #0617908

**CITI BANK**
3967 a-e Thousand Oaks Blvd.
Westlake Village, California
91362 USA
**Bank Account: # 204775621**
**Routing: #322271724**
SWIFT CODE – citius33

## ADDENDUM TO INVOICE:

**DIMAGGIO INTERNATIONAL INC.** will make its best effort to secure the artist for the event.

**ARTISTS REQUESTED:**

| | |
|---|---|
| MICK JAGGER: | $ 100,000.00 USD |
| EARTH, WIND & FIRE: | $ 50,000.00 USD |

**DIMAGGIO INTERNATIONAL INC.** will secure the Artists and Production for **PEACE FOR YOU, PEACE FOR ME CONCERT** and if and when the artist and production deposit fees to artist guarantees, and all production vendors, at that time contracts will be issued accordingly.

If the Artist is not available or does not accept your offer, Artist fees will be applied towards another artist(s) and if any artist have NOT accept your offer and is willing to accept your offer will have the option of declining the offer and funds will be returned with a cancellation clause applicable to the artist fees.

Please feel free to contact me with any questions and please RETURN back to me at email: **thedimaggio@gmail.com**

**ALL PROVISIONS WILL BE APPLICABLE FROM THE PROMOTER AS FOLLOWS:**

Full rider requirements to include Staging, Local Union Crew, Stage Manager, Sound Lights, Backline Equipment, Flight Travel plus Hotels and Local Ground Transportation.

**EXHIBIT C**

DII

# DIMAGGIO INTERNATIONAL, INC.

Kris Dachev (the Purchaser)

DiMaggio International Inc. (The Agency)

Taking for granted that DiMaggio International, Inc. is fully comparable and experienced with Talent Brokerage Agency...

This letter of Engagement is to confirm that KRIS DACHEV & ASSOCIATES (hereinafter known as "PURCHASER"). Like to acknowledge professional brokerage services facilitated by DIMAGGIO INTERNATIONAL, INC. (collectively referred to as "AGENCY")

The Purchaser is willing to use the Agency expertise in engagement of various artists (Artist/s) for their participation in the Event.

EVENT: Purchaser represents PEACE FOR YOU PEACE FOR ME FOUNDATION (the Foundation) in organizing a concert in Bulgaria (the Event).
LOCATION: The Event is planned for October 1, 2016 in Sofia town, at The National Stadium Vasil Levski, address: 38, Evlogi I Hristo Georgievi, 1000 Sofia, Bulgaria.

The Parties concluded this Agreement as follows:

1. SUBJECT OF THIS AGREEMENT: the Agency undertakes to cooperate with and to facilitate the Foundation in concluding contracts with Artists, specified in this Agreement, for participation in the Event.

2. The List of Artists describes the names, which the Agency undertakes to engage for the Subject of the Agreement.
3. As a result of consultations between the Parties the list of Artists could be amended from time to time and the Parties shall sign the respective amendment to this Agreement.

4. LIST OF ARTISTS:
   a. JENNIFER LOPEZ
   b. ROGER WALTERS
   c. JOHN LEGEND
   d. CHRISTINA AGUILERA
   e. ROBBI WILLIAMS
   f. DON FELDER

5. The Term of this Agreement is until OCTOBER 3RD 2016.

6. Purchaser shall transfer $750,000.00 (Seven Hundred & Fifty Thousand Dollars USD) to transfer into Agency Escrow account (Escrow) as a Guarantee for future payments related to Artists engaged with participation in the Event.

7. The term for the transfer the Guarantee is 5 banking days from receiving with Purchaser of the Escrow agreement.

8. Agency remuneration fees shall obtained thru commissions of the services of the Artist upon closing of the agreement from Artists fees.

9. The Subject of the Contract shall be deemed successfully fulfilled provided at least 20 names from the List of Artists are contracted for the Event during the Term of Agreement. Otherwise the Subject is not fulfilled and the Guarantee shall be repaid in full to Purchaser in the first banking day following the end of the Term

DII

# DIMAGGIO INTERNATIONAL, INC.

10. Not later than the next day after signing this Agreement the Agency shall e-mail the drafts of and the links to the entire documentation such as contracts, Artists terms and conditions etc., which are expected to be agreed, signed and executed by the Foundation (Artists Requirements). Once the Parties agreed on a specific Artists Requirements, the respective amount for this Artist shall be released from Escrow.

11. If the Parties could not agree on a specific Artists Requirements, as the case may be:
    a. This Artist shall be removed from the List and the List of Artists shall be amended accordingly;
    b. Whilst within the Term of this Agreement, after preliminary Purchaser's acceptance in writing (including e-mail), this Artist could be replaced with another one. In this case the List of Artists shall be amended accordingly;

12. In case this Agreement is expired the remaining amount (if any) in the Escrow shall be transferred back to the Purchaser within 30 days after the term of this agreement.

13. The Agency is not entitled to:
    a. Undertake any liabilities or enter in any kind of contracts, or amend already agreed contracts, on behalf of the Purchaser without prior Purchaser's approval by e-mail or authorization in writing;
    b. Negotiate under this Agreement with artists who are not in the List of Artists, except prior Purchaser's approval by e-mail;

14. The Purchaser does not bear any responsibility for any Agency expenses, loses whatsoever.

15. The Parties bank accounts: please see invoice provided by AGENCY: DIMAGGIO INTERNATIONAL, INC.

16. The Parties e-mail addresses and telephone numbers:
    a. For the Agency: thedimaggio@gmail.com
    b. For the Purchaser: kdachev@mtgbg.com

17. Each one Agency and the Purchaser separately declares:
    a. By entering in this Agreement does not violate any national law in the respective place of incorporation, constitutive act or internal rules;
    b. Persons who signed this Agreement and will sign eventual amendments to it are and will be duly authorized;
    c. Each Party shall treat as Confidential information all the e-mails, letters and documents received from the other Party
    d. Each Party shall:
        i. not disclose the Confidential information to any third party;
        ii. Not use the Confidential information for any purpose unless in connection with the execution of tasks under projects, contracts and activities agreed between the Parties;
        iii. Take any action on the protection of the Confidential information from destruction, loss, change or damage;
        iv. Keep properly the submitted Confidential information by simply restrict access to it and prevent it from spreading through printing, forwarding, copying or sharing by any means except with prior approval of issuing Party.

18. Any dispute, controversy or claim arising out of or in connection with this Agreement will be finally settled under the law, applicable at the seat of the Agency:

PURCHASER: KRIS DACHEV & ASSOCIATES

Signatory _______ 04.08.2016 (date)

AGENCY: DIMAGGIO INTERNATIONAL, INC.

Signatory _______ 08-03-16 (date)

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB#68605)
DOUGLAS R. PAINTER (SB#131043)
445 S. Figueroa St., Suite 2350, Los Angeles, CA 90071
TELEPHONE NO.: (213) 891-1400 FAX NO.: (213) 891-1470
ATTORNEY FOR (Name): Krasimir Dachev, et al.

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 27 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:
Dachev, et al. v. DiMaggio, et al.

# CIVIL CASE COVER SHEET

- [✓] Unlimited (Amount demanded exceeds $25,000)
- [ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**

- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: BC 645 027

JUDGE:

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [✓] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action *(specify)*: Eight (8)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 27, 2016

Douglas R. Painter
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

COPY

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Dachev, et al. v. DiMaggio, et al. | CASE NUMBER BC 645027 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Auto Tort | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

COPY

| SHORT TITLE: Dachev, et al. v. DiMaggio, et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ A6013 Fraud (no contract) | 1, (2), 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels_______ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Dachev, et al. v. DiMaggio, et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

| SHORT TITLE: Dachev, et al. v. DiMaggio, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | | | ADDRESS: 5737 Kanan Rd., #117 |
|---|---|---|---|
| CITY: Agoura Hills | STATE: CA | ZIP CODE: 91301 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: December 27, 2016

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| DIMAGGIO INTERNATIONAL, INC., a California corporation, Plaintiffs, v. PEACE FOR YOU PEACE FOR ME FOUNDATION, a form of business entity unknown, ALEXANDER PANEV, an individual, JAY BOTEV, an individual, KRASIMIR DACHEV, an individual, MARCELO DJOTOLOV, an individual, METAL TECHNOLOGY GROUP, a form a form of business entity unknown, and DOES 1 to 50, Defendants. | CASE NO. LC104988<br><br>*Hon. Rupert Byrdsong* |
| KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria, Plaintiffs, v. ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive, Defendants. | CASE NO. BC645027<br><br>**NOTICE OF MOTION AND MOTION FOR THE TERMINATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES [C.C.P. § 2023.030(d)(4)]**<br><br>[Declarations of Krasimir Dachev, Bruce W. Pixley, Matthew A. Lesnick and Douglas R. Painter; Proposed Order filed concurrently herewith]<br><br>Date: October 4, 2017<br>Time: 8:30 a.m.<br>Dept.: "U"<br>**RESERVATION NO. 170811242306** |

**MOTION AND NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 4, 2017, at 8:30 a.m., in Department "U" of the above-entitled Court located at 6230 Sylmar Ave., Van Nuys, CA 91401, Plaintiffs Krasimir Dachev, Peace For You Peace For Me and Svilosa AD (collectively "Plaintiffs") will, and hereby do, move for an order issuing the terminating sanction of default pursuant to C.C.P. § 2023.030(d)(4) and the Court's inherent power or, in the alternative, for monetary sanctions and evidentiary and issue preclusion. The Motion is made on the grounds that since this litigation commenced, Defendant Robin DiMaggio ("DiMaggio") has intentionally destroyed evidence and has forged fake emails, fake bank receipts and fake bank statements which he has produced in discovery and filed with this Court. The Motion will be based on this Motion and Notice, the attached Memorandum of Points and Authorities, the Declarations of Krasimir Dachev, Bruce W. Pixley, Matthew A. Lesnick and Douglas R. Painter filed concurrently herewith, the records and files in this action and on all matters the Court deems appropriate for consideration.

The parties' counsel engaged in a telephonic meet-and-confer concerning this Motion on August 23, 2017. A copy of the email to DiMaggio's counsel initiating the meet-and-confer process is attached as Exhibit FF to the Declaration of Douglas R. Painter, filed concurrently herewith. The parties were unable to arrive at a resolution that would avoid the need for this Motion.

Dated: September 12, 2017

STEINBRECHER & SPAN LLP
ROBERT S. SPAN
DOUGLAS R. PAINTER

By: ______________________
Douglas R. Painter

Attorneys for Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

**TABLE OF CONTENTS**

**PAGE NO.**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. Plaintiffs' Claims and the Importance of Electronic Communications ..... 2

B. DiMaggio's Destruction of Evidence and Forgery of Bank Documents ..... 2

1. Background ..... 2

2. Plaintiffs' Document Requests and DiMaggio's Stonewalling ..... 4

3. DiMaggio's Fraud on the Judicial Process ..... 5

a. The fake emails and intentional destruction of evidence ..... 5

b. DiMaggio's proclamation that he will not participate in further discovery because (a) his company filed for Chapter 7; (b) he now resides in France; or (c) he has "cancer." ..... 6

c. The forged bank statements ..... 8

III. ARGUMENT ..... 9

A. The Court Should Issue The Terminating Sanction Of Default Due To DiMaggio's Repeated And Continued Fraud On This Court ..... 9

1. The Sanction of Default Is Appropriate When A Litigant Engages In Intentional And Egregious Misconduct In The Litigation Process Which Adversely Impacts A Fair Resolution Of A Case ..... 9

2. DiMaggio's Forgeries And Destruction Of Evidence Were Deliberate And Egregious And Have Adversely Impacted Any Fair Resolution Of This Case ..... 10

a. DiMaggio's Actions Were Deliberate and Egregious ..... 10

b. DiMaggio's Actions Have Forever Prejudiced A Fair Resolution Of This Case ..... 11

3. Should The Court Decline The Issuance of a Terminating Sanction, It Should Issue Monetary and Preclusion Sanctions ..... 13

IV. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

PAGE NO(S).

### CASES

*Alliance Bank v. Murray*,
161 Cal.App.3d 1 (1984) ........ 11

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989) ........ 10

*Bauguess v. Paine*,
22 Cal.3d 626 (1978) ........ 10

*Cedars-Sinai Med. Ctr. v. Superior Court*,
18 Cal. 4th 1 (1998) ........ 11, 12

*Fred Howland Co. v. Superior Court of Los Angeles Cty.*,
244 Cal. App. 2d 605 (1966) ........ 9

*Laguna Auto Body v. Farners Ins. Exchange*,
231 Cal. App. 3d 481 (1991) ........ 12

*Liberty Mut. Fire Ins. Co. v. LcL Adm'rs, Inc.*,
163 Cal. App. 4th 1093 (2008) ........ 11

*R.S. Creative, Inc. v. Creative Cotton, Ltd.*,
75 Cal.App.4th 486 (1999) ........ 10, 11, 12

*Stephen Slesinger, Inc. v. Walt Disney Co.*,
155 Cal. App. 4th 736 (2007) ........ 9, 10

*Von Schmidt v. Wilder*,
99 Cal. 511 (1893) ........ 10

*Williams v. Russ*,
167 Cal. App. 4th 1215 (2008) ........ 11

### OTHER AUTHORITIES

California Code of Civil Procedure:
§ 2023.030 ........ 1, 9, 12, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Under the guise of procuring talent for a benefit concert in Sofia, Bulgaria for refugee children, Defendant Robin DiMaggio ("DiMaggio") took more than one million dollars from Plaintiffs, Bulgarian philanthropists. DiMaggio took the money from Plaintiffs allegedly to pay advances to the celebrities he was booking. As it turns out, his celebrity "negotiations" and "contracts" were complete fabrications. Instead, he pocketed the money and produced no artists. As a result, the concert had to be cancelled, causing millions of dollars in damages to Plaintiffs.

Unfortunately, DiMaggio's fraudulent conduct has continued even after this litigation was filed. He has intentionally destroyed important evidence and has created fake emails and fake bank documents in an attempt to cover his tracks. He has produced these forgeries in discovery, and filed some as exhibits with the Court.[1] His egregious litigation conduct has continued unabated for over 8 months and irrevocably prejudiced Plaintiffs by depriving them of the best evidence of his actions.

This Motion seeks the sanction of default against DiMaggio pursuant to C.C.P. § 2023.030(d)(4) and the Court's inherent powers, based on DiMaggio's fraud on the judicial system. As discussed below, default is the only appropriate sanction here, with Plaintiffs later submitting damages (including the additional costs incurred by Plaintiffs as a result of DiMaggio's litigation conduct) for the Court's review and approval, consistent with regular default practice.

No alternative relief, such as monetary sanctions, could cure the prejudice to Plaintiffs that DiMaggio's fraud has caused. DiMaggio contends that he was working on a "fee" (as opposed to contingency) basis and that he actively negotiated prices and terms with numerous celebrities. But because DiMaggio has permanently destroyed *all* emails relating to this case by "wiping"

---

[1] These purported emails were filed with this Court as Exhibit "B" to the Complaint (now consolidated herein with Plaintiffs' case) filed by DiMaggio's company, DiMaggio International Inc., and are attached as Exhibit A to the Declaration of Bruce W. Pixley, filed concurrently herewith ("Pixley Dec.").

them from his Gmail account, Plaintiffs have forever lost the ability to test DiMaggio's claims through what should have been their primary source of such evidence: his email communications (or lack thereof) with artists, agents and event organizers and the corresponding metadata proving or disproving their authenticity. Because no alternate order can cure the prejudice stemmimg from this loss of evidence, the Court should issue the only sanction commensurate with the severity of DiMaggio's misbehavior – *i.e.,* default – and take up the issue of damages in subsequent proceedings.

## II. STATEMENT OF FACTS.

### A. Plaintiffs' Claims and the Importance of Electronic Communications.

In this case, Plaimtiffs allege that DiMaggio falsely represented he would book celebrities for the Charity Event if Plaintiffs wired him money. The means through which he committed this fraud was by celebrity association: by sending photos of him posing with celebrities for whom he had played drums and by dropping the names of celebrities with whom he was "negotiating," he convinced Plaintiffs to entrust him with over a million dollars to help displaced children.

Plaintiffs are located in Bulgaria and DiMaggio in Los Angeles. Thus, most of the representations relating to this matter were exchanged via email. So were the "agreements" DiMaggio had Plaintiffs sign. *See* FAC, ¶¶ 23-28. Because email transmissions form the evidentiary foundation of this litigation, it was crucial that all relevant emails, including their corresponding metadata, be preserved, collected, and produced diligently and in good faith.

### B. DiMaggio's Destruction of Evidence and Forgery of Bank Documents.

#### 1. Background.

The issue of fabricated documents goes back to November 2016. That month, Plaintiffs sent a letter to DiMaggio demanding the return of Plaintiffs' money. Declaration of Douglas R. Painter, filed concurrently herewith ("Painter Dec."), ¶ 3 *and* Ex. A thereto. In response, DiMaggio's counsel, J.T. Fox, asked Plaintiffs' counsel, Douglas Painter, not to file any lawsuit on behalf of Plaintiffs until the parties could exchange and discuss various emails and documents and explore whether the matter could resolve informally. Painter Dec., ¶ 3. Mr. Painter agreed to Mr. Fox's request, and during the first half of December 2016, Mr. Fox forwarded to Mr. Painter

several documents, including (1) an email chain purportedly sent to DiMaggio suggesting that his "fee" as of August 2016 had "reached" $450,000; and (2) a copy of an alleged receipt for a $600,000 bank check made payable to a booking agency. *Id.* at ¶ 4 *and* Exs. B and C thereto.

These documents looked suspicious, if not incredible. Plaintiffs had never seen or heard of these emails or of the notion that DiMaggio was to be paid a fee by Plaintiffs (as opposed to receiving a commission from the artists), much less that he was to be paid $450,000 with no obligation to produce celebrities.[2] Declaration of Krasimir Dachev, filed concurrently herewith ("Dachev Dec."), ¶ 2. Further, the alleged emails contained formatting anomalies suggesting they were not authentic:

- The alleged August 12, 2016 email to Dachev:
  - Contains no space between the month and the date (it reads "August12"); this line is normally auto-generated by an email server, not manually entered by an author; all of the legitimate emails in Plaintiffs' possession from DiMaggio have a space between the month and numerical date).
  - Has a space in the middle of the header (between the "date" line and the "to" line), which is not found in auto-generated headings.
- The alleged August 13, 2016 email reply from Dachev to DiMaggio:
  - Contains a "date" field ("Date: Aug 13, 2016 9:43 AM") which uses the U.S. style of date designation (month, numerical date, year). To the best of Plaintiffs' knowledge, all of the other emails sent to DiMaggio from this Bulgarian email address use the European style of date and time designation (numerical date, month, year) (for example: "Sent: Thu, 04 Aug 2016 09:52:44 +0300").
  - The text of this alleged email – "<u>I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds</u>" – is underlined in its entirety. There are no other emails formatted like that which Plaintiffs have been able to locate.

*See* Pixley Dec., ¶¶ 3-4 *and* Exs. A and B thereto.

DiMaggio's purported receipt for a $600,000 bank check made payable to AEI raised similar concerns. Although DiMaggio claims that he gave $600,000 to AEI for the Charity Event, the receipt was dated July 14, 2016. As of that date, Plaintiffs had only sent DiMaggio

[2] This notion, of course, is contradicted by the agreements DiMaggio had Plaintiffs sign: all of them expressly set forth an arrangement in which monies paid to DiMaggio were to be refunded, in full, if DiMaggio did not secure an acceptable list of celebrity contracts. *See* Exhibits A, B and C attached to FAC *and* ¶¶ 23-27 of FAC.

approximately $200,000, which he claimed to have already used to "book" Mick Jagger and Earth Wind & Fire. FAC, ¶¶ 25, 26. Because it would not make sense for DiMaggio to "loan" Plaintiffs over half-million dollars (much less be feasible for a non-celebrity drummer to do such a thing), Plaintiffs had concerns that this receipt, which also had inconsistent fonts, was also a fabrication. *See* Pixley Dec., ¶ 5 *and* Exs. C and D thereto.

Prompted by these concerns, on December 19, 2016, Mr. Painter called Mr. Fox and reminded him of DiMaggio's obligation to preserve all evidence related to this matter, including all "metadata" – *i.e.,* data embedded within an email or electronic document that shows when it was created and how it was sent. He also sent to Mr. Fox a "Notice to Preserve Electronic and Other Evidence" which stated that "some of the recent communications you forwarded to us from Mr. DiMaggio unfortunately look as though they are not authentic; only a proper review of corresponding metadata and storage media from Mr. DiMaggio's electronic devices can confirm their content and if, when and to whom they were sent." Painter Dec., ¶¶ 5-7 and Ex. D thereto.

**2. Plaintiffs' Document Requests and DiMaggio's Stonewalling.**

Against this backdrop, on March 8, 2017, Plaintiffs served their First Set of Document Requests on DiMaggio seeking communications, metadata and bank records relating to the Charity Event and the suspicious documents. Ex. F to Painter Dec. On April 20, 2017, DiMaggio served responses to these requests (Ex. G to Painter Dec.) and produced images of a handful of emails (many with the headers suspiciously removed), the same receipts for bank checks that had previously been tendered, plus a few other documents. *See* Exs. H and I to Painter Dec. Notably, the two suspicious emails filed with the Court were *not* included in the production, nor were any bank records. Painter Dec., ¶ 9. When Mr. Painter raised these deficiencies with Mr. Fox, Mr. Fox wrote that "Robin said he ordered his bank records. He lost his last statements . . . Apparently he is having surgery on May 10, 2017." Ex. J to Painter Dec.

On May 4, 2017, Mr. Painter sent Mr. Fox a meet-and-confer letter memorializing the deficiencies in DiMaggio's responses and proposing a search term protocol for the stipulated inspection of DiMaggio's electronic devices. Ex. K to Painter Dec. Subsequently, DiMaggio served a supplemental response in which he stipulated to the third-party inspection and agreed to

produce further documents pursuant to the requests. Ex. L to Painter Dec.

Despite his sworn agreement to produce bank records, including those showing the source of the funds for the alleged July 14, 2016 $600,000 bank check (*see* Exs. F and L to Painter Dec. and corresponding requests and responses to Demand Nos. 7-10), DiMaggio instead produced bits and pieces of bank statements dated *after* July 14, 2016 – *i.e.*, one page of a 2-page August 2016 bank statement and a 1-page September 2016 bank statement. Painter Dec., ¶ 11 *and* Ex. M thereto. He also failed – again – to produce electronic versions of the emails with the suspicious formatting. *Id.*[3]

**3. DiMaggio's Fraud on the Judicial Process.**

*a. The fake emails and intentional destruction of evidence.*

As noted, due to the suspicious characteristics of the emails filed with the Court, Plaintiffs asked DiMaggio to submit his electronic devices and accounts for inspection by a forensic computer specialist, Bruce Pixley. DiMaggio agreed. *See* Ex. K to Painter Dec. (supplemental response to Inspection Request). On June 5, 2017, Mr. Painter sent to Mr. Fox the agreed-upon protocol for this search. Ex. S to Painter Dec. After agreeing to and then canceling two such inspection dates, DiMaggio finally agreed to a June 9, 2017 inspection. Painter Dec., ¶ 14.

At the June 9, 2017 inspection, DiMaggio arrived with no laptop to inspect. Pixley Dec., ¶ 7. When asked why he did not bring his laptop, DiMaggio claimed, in contradiction of his sworn discovery responses (Ex. K to Painter Dec. (supplemental response to Inspection Request)) that he does not own a laptop, but an iMac desktop computer, which he did not bring. *Id.* When asked why he did not bring his claimed iMac with him, he offered no comprehensible explanation

[3] This stonewalling was followed by more stonewalling. After Mr. Painter raised the above failures with Mr. Fox (Ex. N to Painter Dec.), Mr. Fox wrote that Mr. DiMaggio was "go[ing] back to his bank" to "try to get more statements" (Ex. O to Painter Dec.) and then said he was "unable to make it" to the bank due to work commitments (Ex. P to Painter Dec.). Later, on June 1, 2017 and after continued demands from Mr. Painter, DiMaggio produced a heavily redacted July 2016 bank statement (which was forged, *see* pp. 8-9, below), but once again failed to produce the bank records he promised or any documents showing the actual sources of the alleged $600,000. Ex. Q to Painter Dec. Mr. Fox then proposed, for the first time, a stipulated protective order for any further production of bank records. Plaintiffs obliged and the parties subsequently executed and filed a stipulated protective order. Ex. R to Painter Dec. Despite the filing of the protective order, no bank records or any additional communications with Plaintiffs were produced beyond one additional page of the incomplete August 2016 bank statement. Painter Dec., ¶ 13.

but promised to bring it with him for another inspection next Monday, June 12, 2017. *Id.* The day after this promise, DiMaggio canceled the June 12, 2017 inspection, causing Plaintiffs to lose the money they had spent reserving the inspection facility, and to date DiMaggio has refused to permit inspection of his alleged iMac. *Id.;* Painter Dec. ¶ 15 *and* Ex. T thereto.

Because DiMaggio brought no computer with him to inspect on June 9, 2017, the only electronic device available for inspection that day was his cell phone, from which he permitted, after significant discussion, Mr. Pixley to download (from the Gmail "cloud" service) the contents of his Gmail email account that he used to communicate with Plaintiffs, so Mr. Pixley could conduct the stipulated search terms thereon. Pixley Dec., ¶ 8. Shortly thereafter, Mr. Pixley examined the entire contents of DiMaggio's Gmail account and around July 26, 2016 produced to Mr. Painter and Mr. Fox thumb drives containing all of the resultant emails from his searches. *Id.*

Although some of the emails Mr. Pixley found in DiMaggio's account were dated as early as April 2016, before DiMaggio first communicated with Plaintiffs, not a single email communication with Plaintiffs was found, not even the ones he had produced with mysterious header redactions or the ones he filed with this Court. Pixley Dec., ¶¶ 9-10. Thus, there was no metadata relating to any relevant emails to test their authenticity, defeating a primary purpose of the inspection. *Id.* There were also no emails relating to DiMaggio's alleged communications with any of the numerous celebrities with which he claimed to have been negotiating. *Id.* According to Mr. Pixley, all emails to and from Plaintiffs, as well as any with celebrities or their representatives, had been manually deleted, intentionally, and unless they had been stored elsewhere on a media storage device, are forever lost. *Id.* at ¶ 10.

*b. DiMaggio's proclamation that he will not participate in further discovery because (a) his company filed for Chapter 7; (b) he now resides in France; or (c) he has "cancer."*

On June 12, 2017, the day of the canceled iMac inspection, DMI filed for bankruptcy protection. DiMaggio, however, did not file (and has not filed) for such protection. Two weeks later, Mr. Painter and Mr. Fox engaged in a meet-and-confer for a motion to compel and for

sanctions for the discovery failures discussed above.[4] Painter Dec. ¶ 15. In response, Mr. Fox emailed that DiMaggio would "see if he is able to retrieve the emails." Ex. V to Painter Dec.

On August 3, 2017, Mr. Painter received an email directly from DiMaggio, copied to Mr. Fox and his company's bankruptcy counsel, Moses Bardavid. Ex. W to Painter Dec. In that email, DiMaggio stated that he would refuse to produce any further emails in this litigation because of his company's bankruptcy, even though he had not personally filed for bankruptcy protection. *Id.* A few days later, Mr. Fox sent Mr. Painter an email stating that "I am trying to get Moses to provide you a formal response as to the pending discovery issue." Ex. X to Painter Dec. As of this date, there has been no follow up to this email. Painter Dec., ¶ 18.

That same day, DiMaggio texted Alexander Panev, a representative of Plaintiffs, claiming that he now resided in France and blaming Plaintiffs for the "closure" of his company:

> How was your Concert this year without me? I'm loving you France my citizenship country where I reside. I closed my companies because Business is not what it used to be because of you so at least in France I can still create epic Concerts. Wished we could of worked something out but you were to stubborn to listen to me. And we both wasted a lot of stupid money due to your ego. Ahhhh long live the Bulgarian Ego who thinks he knows all. If your in France dinner on me. La Biz. De ton Vieux Frères. [Ex. Y to Painter Dec.]

Five days later, DiMaggio again emailed Mr. Painter, Mr. Fox and Mr. Bardavid, this time stating that he had a "devastating surgery" for his "major cancer" the following week and that "I know your threatening of sanctions but . . . I [will] get medical letters . . . [for] the judge." Ex. Z to Painter Dec. A few days later, DiMaggio again wrote to Mr. Painter, Mr. Fox and Mr. Bardavid, now stating "[I'm] cooked for a while and this doesn't even talk about a 98% start of Chemo and Radiation. Everyone Back off!!!!!!! I'm not playing! Sanction all you want. My [goal] is not Legal, staying alive is my only Priority." Ex. AA to Painter Dec. In this email, he also attached the promised letter from his doctor, who wrote that although "a recent MRI reveals details that are there suspicious for cancer," the "devastating surgery" that DiMaggio had

[4] The grounds for the meet-and-confer included DiMaggio (1) deleting all of his email communications with Plaintiffs from his Gmail account; (2) refusing to produce metadata or authentication for the suspect "emails"; (3) refusing to submit his alleged iMac for inspection; (4) refusing to produce bank statements for the relevant time period; and (5) refusing to produce any other documents as called for by the document requests. Painter Dec., ¶ 17. This meet-and-confer was memorialized in a July 28 email from Mr. Painter to Mr. Fox. Ex. U to Painter Dec.

previously written about was, in actuality, a "tonsillectomy;" the doctor also stated that no biopsies for any cancer had been performed and made no mention of any cancer diagnosis. *Id.*

As of this date, it is unclear whether the basis for DiMaggio's stated refusal to participate in further discovery is based on his company's bankruptcy, his new "French residency," his tonsillectomy and/or cancer concerns, or a combination thereof.[5]

*c. The forged bank statements.*

On August 18 and 21, 2017, Citibank produced bank statements responsive to the Plaintiffs' subpoena dated June 7, 2017. Ex. BB to Painter Dec. After reviewing them, Plaintiffs finally discovered proof that DiMaggio had, for months, been forging documents in this case.

DiMaggio's produced "bank receipt" for $600,000 and made out to AEI has a serial number and date of July 14, 2016. The actual check with that same payee, serial number and date is for $10,000, not $600,000. Apparently, DiMaggio "Photoshopped" images on top of the $10,000 receipt to create the fake one. Pixley Dec., ¶¶ 3-4 *and* Exs. A and B thereto.

DiMaggio's produced July 2016 "bank statement" supposedly showed that he had money for the alleged $600,000 check (since, as noted, Plaintiffs had not yet paid him those funds) and that he purchased the check. As shown in the real July 2016 bank statement (Exhibits DD and EE to the Painter Dec.), however, DiMaggio forged these documents too:

- He deleted the "$36.89" checking summary at the top of the statement and replaced it with "------";
- He changed the real beginning monthly balance of "662.41" to a fake balance of $715,662.41;
- With this inflated "balance," he inserted a fraudulent entry dated July 14 which reads "07/14 WITHDRAWAL 600,000.00." That fraudulent entry, as noted, was created to explain the prior fraudulent "$600,000 bank check" and is nowhere to be found in the real bank statement.

---

[5] Although not relevant to this Motion, it is worth noting that (1) the bankruptcy stay in the Chapter 7 case is for DMI, not DiMaggio; and (2) the Bankruptcy Trustee for debtor DMI has stated, in writing, that she has no objection to any discovery in this case that is related to DMI (and in fact has requested that Plaintiffs please send her copies of any relevant DMI documents produced to Plaintiffs in this litigation). Ex. A to Declaration of Matthew A. Lesnick, filed herewith.

In short, DiMaggio forged documents in December 2016 that he produced in discovery and filed with this Court. When confronted with the fact that these documents looked fake and made no sense, he then forged *more* documents to cover up his prior fraud. During his forgery-making, he intentionally deleted all emails and metadata relating to this case to destroy evidence of his forgery, refused the stipulated inspection of his computer and now refuses to cooperate in any further discovery. His litigation behavior has permanently destroyed the evidentiary basis of this case and forever prejudiced Plaintiffs' ability to test DiMaggio's defenses through what should have been their primary source of evidence: DiMaggio's electronic communications (or lack thereof) relating to artists, agents, Plaintiffs' money and the Charity Event.

## III. ARGUMENT.

### A. The Court Should Issue The Terminating Sanction Of Default Due To DiMaggio's Repeated And Continued Fraud On This Court.

#### 1. The Sanction of Default Is Appropriate When A Litigant Engages In Intentional And Egregious Misconduct In The Litigation Process Which Adversely Impacts A Fair Resolution Of A Case.

In California, the authority to issue a dismissal or default against a litigant who engages in egregious misconduct during the discovery and/or litigation process derives from at least two sources: C.C.P. § 2023.030(d)(4) and the Court's inherent power to dismiss a case for such misconduct. *See* C.C.P. § 2023.030 *and* § 2023.030(d)(4) (a court "may impose . . . sanctions against anyone engaging in conduct that is a misuse of the discovery process," including an "order rendering a judgment by default against that party"); *Stephen Slesinger, Inc. v. Walt Disney Co.*, 155 Cal. App. 4th 736, 764 (2007) (courts have "inherent power" to issue a terminating sanction where a party has engaged in egregious misconduct in litigation); *Fred Howland Co. v. Superior Court of Los Angeles Cty.*, 244 Cal. App. 2d 605, 612 (1966) ("[t]here is no question of the power of the respondent court to apply the ultimate sanction of default against a litigant who persists in an outright refusal to comply with his discovery obligations").[6]

[6] The policy roots of the terminating sanction were established over a hundred years ago and reflect the principle that if a litigant intentionally commits fraud in the judicial process, he or she has no business participating in it. *Stephen Slesinger, Inc.*, 155 Cal. App. 4th at 761, 764-65 (holding that although a terminating sanction is a "drastic" remedy, the exercise of that remedy is

"The power to impose [a terminating sanction] is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action." *R.S. Creative, Inc. v. Creative Cotton, Ltd.*, 75 Cal.App.4th 486, 496 (1999) (quotation and citation omitted). In that regard, a terminating sanction "need *not* be preceded by a violation of a court order." *Stephen Slesinger, Inc.*, 155 Cal. App. 4th at 763 (emphasis added). Nor are there any specific actions or circumstances which automatically trigger or defeat the sanction. *Id.*, 155 Cal.App.4th at 764 ("the types of misconduct necessary to justify an exercise of the inherent power to [issue a terminating sanction] cannot be "catalogue[d]" because "corrupt intent knows no stylistic boundaries" (citations omitted)).

Under these governing principles, there are two criteria applied in determining whether a terminating sanction should be imposed: (1) whether a party has engaged in litigation misconduct that is "deliberate and egregious"; and (2) whether that misconduct could adversely impact "a fair resolution of the case" that cannot be remedied by lesser sanctions. *Id.* at 763. As shown below, there can be no serious dispute that these two criteria are present here.

**2. DiMaggio's Forgeries And Destruction Of Evidence Were Deliberate And Egregious And Have Adversely Impacted Any Fair Resolution Of This Case.**

*a. DiMaggio's Actions Were Deliberate and Egregious.*

The forgery of documents produced in discovery or filed with a court is a deliberate and egregious "fraud on the court," as a matter of law. *Stephen Slesinger, Inc.*, 155 Cal.App.4th at ns. 18, 20 (affirming terminating sanction); *see also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) (affirming dismissal of complaint as proper sanction for plaintiff's forgery of documents used in litigation). Here, DiMaggio manufactured and produced a fake bank receipt to try to show what he did with Plaintiffs' money, and when confronted with the fact that his receipt was dated weeks before he had been paid the money to make his claimed payment, manufactured and produced *more* fake documents to try to show he had personal funds for this check, which did not exist in the first place. These forgeries alone constitute the "deliberate and egregious"

---

"essential for every California court to remain a place where justice is judicially administered" and "'restores balance to the adversary system when one party has destroyed it,'" *quoting Von Schmidt v. Wilder*, 99 Cal. 511, 512 (1893) *and Bauguess v. Paine*, 22 Cal.3d 626, 638 (1978), respectively).

requirement for a terminating sanction. *Stephen Slesinger, Inc.*, 155 Cal.App.4th at ns. 18, 20 (affirming dismissal sanction; false evidence is a fraud on the court which "'sets in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier [of fact] or unfairly hampering the presentation of the opposing party's claim or defense'" (citations omitted)).[7]

DiMaggio's intentional destruction of evidence is a separate egregious act sufficient for a terminating sanction. *Williams v. Russ*, 167 Cal. App. 4th 1215, 1223 (2008) (citing *R.S. Creative, Inc.*, 75 Cal. App. 4th at 497)) ("[a] terminating sanction is appropriate in the first instance without a violation of prior court orders in egregious cases of intentional spoliation of evidence"); *see also Cedars-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 12 (1998) ("[d]estroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of section 2023, as would such destruction in anticipation of a discovery request"). Here, as discussed, DiMaggio deleted all emails related to this case to destroy the metadata that would show the ones he filed with this Court were fake.[8]

Because DiMaggio cannot deny the misconduct on which this Motion is based, the first criteria for the sanction of default – *i.e.*, deliberate and egregious behavior – is present.

*b. DiMaggio's Actions Have Forever Prejudiced A Fair Resolution Of This Case.*

DiMaggio's misbehavior has also created irrevocable prejudice to Plaintiffs' claims, negatively impacting any fair resolution of this case.

The California Supreme Court has made clear that intentional spoliation of evidence

---

[7] It is worth noting that there are much less egregious instances of discovery misconduct that have supported a terminating sanction as compared to multiple forgeries which, due to the extreme nature of such misconduct, are not commonly at issue in a civil case. *See, e.g.*, *Alliance Bank v. Murray*, 161 Cal.App.3d 1, 9-12 (1984) (affirming terminating sanction for party's failure to show up at noticed deposition dates).

[8] Indeed, the totality of DiMaggio's misconduct – *i.e.*, multiple forgeries, destruction of evidence, stalling, mistruths, nonsensical excuses and refusals to participate in discovery – are also a factor in considering the imposition of a termination sanction. *Liberty Mut. Fire Ins. Co. v. LcL Adm'rs, Inc.*, 163 Cal. App. 4th 1093, 1106 (2008).

which irrevocably prejudices another party's claims or defenses warrants a terminating sanction. *Cedars-Sinai Med. Ctr.*, 18 Cal. 4th at 8. In *Cedars-Sinai Med. Ctr.*, a plaintiff asserted a tort claim based on a defendant's destruction of records in a medical malpractice action. In its discussion of whether such allegations support a separate tort, the Court clarified why termination of a case is the only fair sanction where spoliation impacts its fair resolution:

> Destroying evidence can . . . destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action . . . [it can also] increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both . . . Without knowing the content and weight of the spoliated evidence…[t]he jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation . . . . Our discovery laws provide a broad range of sanctions for [such] conduct . . . (Code Civ. Proc., § 2023, subd. (b).) . . . Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of section 2023, as would such destruction in anticipation of a discovery request . . . The sanctions under Code of Civil Procedure section 2023 are potent [and] include . . . granting a default judgment against the offending party.

*Id.* at 8, 12-14; *see also R.S. Creative, Inc.*, 75 Cal. App. 4th at 498 (upholding the issuance of terminating sanctions where one party deleted emails relevant to plaintiff's claims); *Laguna Auto Body v. Farners Ins. Exchange*, 231 Cal. App. 3d 481, 490 (1991).

Here, there can be no serious dispute that DiMaggio's actions have created the precise unfairness discussed in *Cedars-Sinai Med. Ctr* . DiMaggio intentionally destroyed all emails related to this case and the metadata that could have been used to disprove the authenticity of the "emails" filed with this Court. He also destroyed an irreplaceable source of evidence that could have been used to test his claims that he was "owed" $450,000 in August 2016, "negotiated" with numerous celebrities and was in constant contact with event organizers. As such, "[w]ithout knowing the content and weight of the spoliated evidence… [t]he jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation." Under these circumstances, default is the only appropriate sanction for this loss of crucial evidence. *Id., see also R.S. Creative, Inc.*, 75 Cal. App. 4th at 498.

**3. Should The Court Decline The Issuance of a Terminating Sanction, It Should Issue Monetary and Preclusion Sanctions.**

Should the Court decline to issue a terminating sanction, Plaintiffs request, pursuant to C.C.P. §2023.030 (a) and (d), an order (1) precluding any claim or evidence that there was any agreement with Plaintiffs other than what was reflected in the written agreements produced in this case; (2) precluding any claim or evidence claim that Plaintiffs failed to comply with any term of said agreements; and (3) mandating payment of at least $40,000 to Plaintiffs for the minimum fees and expenses spent on DiMaggio's fraudulent conduct in this litigation. *See* Painter Dec., ¶ 27. As noted, however, an order like this cannot possibly cure the loss of evidence in this case, and for that reason, Plaintiffs urge the Court to issue the terminating sanction of default, followed by separate proceedings on the issue of damages.

**IV. CONCLUSION.**

For the reasons stated, the Motion for the Terminating Sanction of Default should be granted.

Dated: September 12, 2017

STEINBRECHER & SPAN LLP
ROBERT S. SPAN
DOUGLAS R. PAINTER

By: ______________________
Douglas R. Painter

Attorneys for Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

**THIS IS YOUR CRS RECEIPT**

INSTRUCTIONS

Please print this receipt and attach it to the corresponding motion/document as the last page. Indicate the Reservation ID on the motion/document face page (see example). The document will not be accepted without this receipt page and the Reservation ID.

**RESERVATION INFORMATION**

**Reservation ID:** **170811242306**
**Transaction Date:** August 11, 2017

**Case Number:** LC104988
**Case Title:** DIMAGGIO INTERNATIONAL, INC. VS. PEACE FOR YOU FOR ME
**Party:** DACHEV KRASIMIR (Defendant)

**Courthouse:** Van Nuys Courthouse East
**Department:** U
**Reservation Type:** **Motion to Compel Further Discovery Responses**
**Date:** 10/4/2017
**Time:** 08:30 am

---

**FEE INFORMATION (Fees are non-refundable)**

**First Paper Fee:** Party asserts first paper was previously paid.

| Description | Fee |
|---|---|
| Motion to Compel Further Discovery Responses | $60.00 |

**Total Fees:** **Receipt Number: 1170811K3440** **$60.00**

---

**PAYMENT INFORMATION**

**Name on Credit Card:** Alan Steinbrecher
**Credit Card Number:** XXXX-XXXX-XXXX-8035

---

**A COPY OF THIS RECEIPT MUST BE ATTACHED TO THE CORRESPONDING MOTION/DOCUMENT AS THE LAST PAGE AND THE RESERVATION ID INDICATED ON THE MOTION/DOCUMENT FACE PAGE.**

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

DIMAGGIO INTERNATIONAL, INC., a California corporation,
Plaintiffs,
v.
PEACE FOR YOU PEACE FOR ME FOUNDATION, a form of business entity unknown, ALEXANDER PANEV, an individual, JAY BOTEV, an individual, KRASIMIR DACHEV, an individual, MARCELO DJOTOLOV, an individual, METAL TECHNOLOGY GROUP, a form a form of business entity unknown, and DOES 1 to 50,
Defendants.

CASE NO. LC104988

*Hon. Rupert Byrdsong*

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,
Plaintiffs,
v.
ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,
Defendants.

CASE NO. BC645027

**DECLARATION OF BRUCE PIXLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR THE TERMINATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND SPOLIATION OF EVIDENCE**

[Notice and Motion; Memorandum of Points and Authorities; Declarations of Krasimir Dachev, Douglas R. Painter, Matthew A. Lesnick and Proposed Order filed concurrently herewith]

Date: October 4, 2017
Time: 8:30 a.m.
Dept.: "U"

## DECLARATION OF BRUCE PIXLEY

I, Bruce W. Pixley, declare as follows:

1. I am an adult citizen of the United States, a resident of California and the Founder and President of Pixley Forensic Group, a computer forensic firm specializing in computer data recovery, analysis and preservation. I am a GIAC (Global Information Certification) Certified Forensic Analyst and a Certified Information Systems Security Professional (CISSP). Since 2001, I have served as a lead instructor of computer forensics, internet investigations, and network intrusion courses for the California Department of Justice's Advanced Training Center. I am familiar with the facts stated herein and if called as a witness could and would testify competently thereto.

2. Earlier this year, I was retained by Plaintiffs' counsel, Douglas R. Painter of Steinbrecher & Span LLP, to examine some email authenticity issues and to conduct a proper search of Robin DiMaggio's electronic devices for documents relevant to this case due to alleged discovery lapses of Mr. DiMaggio, using search terms and parameters agreed to by all parties.

3. With respect to email authenticity, I was asked to retrieve metadata – information embedded within the email which reveals, among other things, when an email was created, sent and the servers used to transmit it – from the communications stored in Mr. DiMaggio's electronic devices and accounts; said communications included some alleged emails with non-standard formatting characteristics, which I discuss below (the "suspect emails"). True and correct copies of the suspect emails, one dated August 12, 2016 to K. Dachev from R. DiMaggio and the other dated August 13, 2016 from K.Dachev to R. DiMaggio, are attached hereto as Exhibit A.

4. The formatting characteristics of the suspect emails which suggest they are not authentic include:

a. The alleged August 12, 2016 email to Dachev contains no space between the month and the date (it reads "August12"); this text would

normally be auto-generated by an email server and the other emails I have reviewed from Mr. DiMaggio have a space between the month and numerical date.

b. The alleged August 12, 2016 email to K. Dachev has a space in the middle of the header block (between the "date" line and the "to" line); this header block would normally be auto-generated and not have such a space.

c. The alleged August 13, 2016 email reply from K. Dachev to R. DiMaggio contains a "date" field ("Date: Aug 13, 2016 9:43 AM") which uses the U.S. style of date designation (month, numerical date, year). This does not appear to be compliant with the other emails sent to Mr. DiMaggio from this Bulgarian email address that I have reviewed; such emails use the European style of date designation (numerical date, month, year) (for example: "Sent: Thu, 04 Aug 2016 2016 09:52:44 +0300").

d. The alleged August 13, 2016 email reply from K. Dachev to R. DiMaggio contains text which reads "I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds." The underlining of the entire text does not appear to be consistent with other emails from K. Dachev to R. DiMaggio that I have reviewed.

For the Court's reference, handwritten markings on these emails reflecting these anomalies are attached hereto as Exhibit B.

5. I also reviewed a copy of a purported receipt for a bank check in the amount of $600,000 dated July 14, 2016. A true and correct copy of this check is attached hereto as Exhibit C. Based on my examination of this alleged receipt, it appears to have inconsistent font styles, which for the Court's reference are marked in handwriting on Exhibit D, attached

hereto. A true and correct copy of what I understand is the actual check that corresponds with the serial number and date on the altered receipt is attached hereto for ease of reference as Exhibit E and I understand is discussed in Mr. Painter's declaration being filed concurrently herewith.

6. Because of the non-compliant characteristics of the suspect emails, I was asked to retrieve the emails' metadata, which could determine their authenticity with reasonable certainty. In conjunction therewith, I was also asked to conduct a "search term" review of Mr. DiMaggio's electronic devices, including the laptop and cell phone I understand he owned, due to the alleged failure of Mr. DiMaggio to produce responsive documents. A true and correct copy of the stipulated search term protocol I utilized is set forth in the letter attached hereto as Exhibit F.

7. On Friday, June 9, 2017, I met in with Mr. DiMaggio, his lawyer, J.T. Fox, and Mr. Painter in Sherman Oaks to conduct an inspection of Mr. DiMaggio's laptop and cell phone. At that inspection, however, Mr. DiMaggio claimed he did not own or use a laptop, but instead has an Apple iMac desktop computer. He offered no explanation as to why he did not bring his iMac to the inspection, but offered to bring it to a second inspection the following Monday, June 12, 2017. On June 10, 2017, however, Mr. DiMaggio canceled the inspection, and I understand from Mr. Painter that he is now declining to produce the alleged iMac for inspection.

8. During the June 9, 2017 inspection, Mr. DiMaggio personally entered (without disclosing it) his password for the Gmail account I understand he used for his communications with Plaintiffs, thedimmagio@gmail.com. After significant discussion, I then downloaded and stored, in the presence of Mr. DiMaggio and counsel, the entirely of all electronic documents and data contained in that email account; as the parties had stipulated, this complete email account download was not shared with any counsel or parties. Subsequently, at my computer forensics laboratory, I applied the search terms to which the parties agreed to the data in that account and sent the results to Mr. Fox and Mr. Painter on thumb drives.

9. Based on my review of the emails and documents responsive to the search terms, I found no email communications between Mr. DiMaggio and any Plaintiffs, much less any metadata for the suspect emails. I also found no communications with any music celebrity

(or music celebrity representative) referenced in the First Amended Complaint or whose name I was familiar with.

10. Because the emails I examined in Mr. DiMaggio's email account go back to April 2016, and because I have reviewed images of hard copy emails between Plaintiffs and Mr. DiMaggio falling shortly after that time and continuing into 2017, the only way for those emails to have been deleted would have been for Mr. DiMaggio or another person with access to his email account to selectively and intentionally delete them. Further, unless these deleted emails have been retained on separate storage media, their deletion is permanent and any metadata for the suspect emails forever lost.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 8th day of September 2017 at Camarillo, California.

Bruce W. Pixley

**EXHIBIT  A**

---------- Forwarded message ----------
From: "MTG-K.dachev" <kdachev@mtgbg.com>
Date: Aug 13, 2016 9:43 AM
Subject: Fwd: additional funds
To: "USA--ROBIN DI'MAGGIO" <thedimaggio@gmail.com>

I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds.

**From:** "R. DiMaggio" <thedimaggio@gmail.com>
**Date:** August12, 2016 at 2:14:04 PM GMT+2

**To:** "Svilosa-K.Dachev" <kdachev@svilosa.bg>, "MTG-K.dachev" <kdachev@mtgbg.com>
**Subject: additional funds**

Krass

All good for June 2 working on getting you the finalized artist's
I need more money now that I'm the Main Producer of the show as well as Liaison, and Musical Director this is a huge undertaking and my fee now is $450,000 all in.
Just need you to handle Travel, transpo and hotel for me. The usual.

**EXHIBIT  B**

[HANDWRITTEN NOTATIONS ADDED]

---------- Forwarded message ----------
From: "MTG-K.dachev" <kdachev@mtgbg.com>
Date: Aug 13, 2016 9:43 AM → not European style of date designation
Subject: Fwd: additional funds
To: "USA--ROBIN DI'MAGGIO" <thedimaggio@gmail.com>

→ all underlined text - not in other emails

I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds.

→ no space between month + date

**From:** "R. DiMaggio" <thedimaggio@gmail.com>
**Date:** August12, 2016 at 2:14:04 PM GMT+2

**To:** "Svilosa-K.Dachev" <kdachev@svilosa.bg>, "MTG-K.dachev" <kdachev@mtgbg.com>
**Subject: additional funds**

Krass

All good for June 2 working on getting you the finalized artist's
I need more money now that I'm the Main Producer of the show as well as Liaison, and Musical Director this is a huge undertaking and my fee now is $450,000 all in.
Just need you to handle Travel, transpo and hotel for me. The usual.

→ SPLIT HEADER BLOCK

**EXHIBIT C**

FOR YOUR PROTECTION SAVE THIS COPY

citibank
Citibank, N.A.

OFFICIAL CHECK

SERVICE INSTRUCTIONS
PLEASE CONSULT A CITIBANK ASSOCIATE OR YOUR CLIENT MANUAL FOR A DESCRIPTION OF THE BANK'S POLICY CONCERNING PLACING A STOP PAYMENT REQUEST ON THIS INSTRUMENT AND THE FEE ASSOCIATED WITH THAT REQUEST.

DATE

PAY

TO THE ORDER OF

NAME OF REMITTER
ADDRESS

NON NEGOTIABLE

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.

REMITTER COPY

**EXHIBIT D**

Main Document Page 67 of 248

[HANDWRITTEN NOTATIONS ADDED]

FOR YOUR PROTECTION SAVE THIS COPY
citibank
Citibank, N.A.
PAY
TO THE ORDER OF
NAME OF REMITTER ADDRESS
OFFICIAL CHECK
SERVICE INSTRUCTIONS
PLEASE CONSULT A CITIBANK ASSOCIATE OR YOUR CLIENT MANUAL FOR A DESCRIPTION OF THE BANK'S POLICY CONCERNING PLACING A STOP PAYMENT REQUEST ON THIS INSTRUMENT AND THE FEE ASSOCIATED WITH THAT REQUEST.
DATE
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.
TERMS
NON NEGOTIABLE
REMITTER COPY
font inconsistent with other font on "receipt"

**EXHIBIT E**

(Page 2 of 2)

OFFICIAL CHECK

citibank

Citibank, N.A.

313873841

FC# 00731 FA# 008 $0.00 ONL PIC

003-17 Ck. Ser.# 313873841

DATE 07/14/16

PAY ****TEN THOUSAND DOLLARS****

**$10,000.00**

TO THE ORDER OF ****AEI ENTERTAINMENT BROKERAGE FIRM****

NAME OF REMITTER ADDRESS ROBIN C DIMAGGIO

Citibank, N.A. One Penn's Way New Castle DE 19720

Drawer: Citibank, N.A.

BY AUTHORIZED SIGNATURE

⑈313873841⑈ ⑆031100209⑆ 38762924⑈

(Page 1 of 2)

Security features on this document include a Micro-Print Endorsement Line, Watermark and Visible Fibers. Absence of these features may indicate alteration. [illegible]

FOR INFORMATION CONCERNING THIS INSTRUMENT CONTACT: [illegible]

Seq 00024 07/14/16
BAT:668783 CC:3180981201
NT:01 LTPS:Jacksonville PT
BC:Warner Center BC CAT-168

Seq: 24
Batch: 668783
Date: 07/14/16

DEPOSITORY BANK ENDORSEMENT

DO NOT WRITE / SIGN / STAMP BELOW THIS LINE

WARNING—DO NOT CASH CHECK WITH-OUT NOTING WATERMARK. HOLD TO LIGHT TO VERIFY WATERMARK



**EXHIBIT F**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON D.C. | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2350
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

June 5, 2017

**VIA EMAIL AND U.S. MAIL**

J.T. Fox, Esq.
Law Offices of JT Fox
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105

***Dachev v. DiMaggio***
***Document Inspection Protocol***

Dear Mr. Fox:

This confirms the protocol for this Friday's inspection of Mr. DiMaggio's cell phone and laptop. The inspection will be held at 10:00 a.m., June 9, 2017, at Regus Sherman Oaks, 15233 Ventura Boulevard, Suite 500, Sherman Oaks, CA 91403, as you requested.

We have stipulated that the inspection shall be conducted by Bruce Pixley of Pixley Forensics Group. On Friday, Mr. Pixley will make forensic images of Mr. DiMaggio's laptop and cell phone, which should not take more than 2-4 hours. He will not provide me or anyone associated with Plaintiffs with these images, which shall remain in his exclusive possession, custody and control. Within the next week, Mr. Pixley will conduct searches through all email and text accounts and databases used thereunder, using the following search terms:

AEI (from January 1, 2012 to the present)
Bruce (from January 1, 2012 to the present)
Sterling (from January 1, 2012 to the present)
Foundation
Peace (from January 1, 2012 to the present)
DIM (from January 1, 2012 to the present)
DII
DiMaggio International (from January 1, 2012 to the present)
Charity
Sofia
Bulgaria
Rich America
Citibank (from January 1, 2012 to the present)
Cashier's (from January 1, 2012 to the present)
Bank (from January 1, 2012 to the present)

Wire (from January 1, 2012 to the present)
Invoice (from May 1, 2015 to the present)
Receipt (from May 1, 2015 to the present)
Contract (from January 1, 2012 to the present)
Agreement (from January 1, 2012 to the present)
Offer (from January 1, 2012 to the present)
Artist (from January 1, 2012 to the present)
Perform (from January 1, 2012 to the present)
Performance (from January 1, 2012 to the present)
Book (from May 1, 2015 to the present)
Booking (from May 1, 2015 to the present)
Binder (from May 1, 2015 to the present)
Trust (from May 1, 2015 to the present)
Vv Hadley (from January 1, 2012 to the present)
Metals (from May 1, 2015 to the present)
Svilosa (from May 1, 2015 to the present)
Dachev & Associates (from May 1, 2015 to the present)
RISE (from January 1, 2012 to the present)

All emails sent to and from:

Alexander Panev
Krasimir Dachev
Bruce Sterling
AEI
Jay Botev
Marcello Djotolov
Peace for You Peace for Me Foundation
Svilosa
Rich America
Industry Level Music Group
Ian Martin
A.J. Pavel

All artists that DiMaggio discussed with Plaintiffs as possibilities for the Charity Concert, including but not limited to:

Jennifer Lopez
Roger Waters
John Legend
Christina Aguilera
Robbi Williams
Don Felder
Don Henley
Adele
Stevie Wonder
Mick Jagger
Mariah Carey

Justin Timberlake
Rihanna
Lady Gaga
Maroon 5
Snoop Dog
R. Stewart
Slash
Bruno Mars
Earth Wind & Fire
Rod Stewart
KISS
Johnny Depp
Blondie
The Beach Boys

Mr. DiMaggio will provide to Mr. Pixley, in confidence, all passwords necessary to conduct the above searches on all of his email, text and messaging accounts. If Mr. Pixley encounters any issues that may require the above search parameters to be amended, he will contact counsel for both parties for any possible changes or modifications thereto and counsel for both parties will in good faith attempt to reach agreement thereon. After conducting the above searches, Mr. Pixley will then provide both sides with the native and readable electronic versions of the documents resultant from his search, with Mr. DiMaggio reserving the right to designate within 15 days of receipt any document therein which he deems to be confidential and/or not subject to discovery; any such designation may be challenged by Plaintiffs through court application or motion. Mr. Pixley will not provide Plaintiffs with any other documents from these devices and associated accounts and, at the conclusion of the case, will erase the forensic images. To the extent Mr. DiMaggio does not cooperate with the above protocol, Plaintiffs reserve the right to seek costs, fees and sanctions, including for Mr. Pixley's time.

Thanks.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

cc: Mr. Bruce Pixley

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| DIMAGGIO INTERNATIONAL, INC., a California corporation,<br>Plaintiffs,<br>v.<br>PEACE FOR YOU PEACE FOR ME FOUNDATION, a form of business entity unknown, ALEXANDER PANEV, an individual, JAY BOTEV, an individual, KRASIMIR DACHEV, an individual, MARCELO DJOTOLOV, an individual, METAL TECHNOLOGY GROUP, a form a form of business entity unknown, and DOES 1 to 50,<br>Defendants. | CASE NO. LC104988<br><br>*Hon. Rupert Byrdsong* |
| KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,<br>Plaintiffs,<br>v.<br>ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,<br>Defendants. | CASE NO. BC645027<br><br>**DECLARATION OF DOUGLAS R. PAINTER IN SUPPORT OF PLAINTIFFS' MOTION FOR THE TERMINATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND SPOLIATION OF EVIDENCE**<br><br>[Notice and Motion; Memorandum of Points and Authorities; Declarations of Krasimir Dachev, Bruce W. Pixley, Matthew A. Lesnick and Proposed Order filed concurrently herewith]<br><br>Date: October 4, 2017<br>Time: 8:30 a.m.<br>Dept.: "U" |

# DECLARATION OF DOUGLAS R. PAINTER

I, Douglas R. Painter, declare as follows:

1. I am adult citizen of the United States, a resident of California, a member in good standing of the California State Bar and a member of the law firm of Steinbrecher & Span LLP, counsel for Plaintiffs in Case No. BC645027 as consolidated within the above-entitled cause. I submit this Declaration in support of Plaintiffs' Motion for the Terminating Sanction of Default against Defendant Robin DiMaggio ("DiMaggio"). I am familiar with the matters stated herein, and if called as a witness could and would testify competently thereto.

2. This Declaration describes (a) the background behind and Plaintiffs' discovery of multiple forged documents created by DiMaggio that were produced in discovery and filed with this Court; (b) my unsuccessful nine-month effort to obtain discovery relating to them; (c) my lengthy but futile attempts to get DiMaggio to comply with his other discovery obligations; (d) the history of certain of my interactions with J.T. Fox, counsel for DiMaggio; (d) DiMaggio's destruction of all electronic evidence related to this case; and (e) the adverse impact of DiMaggio's misconduct on my ability to prepare and present Plaintiffs' claims in this case.

**Initial Tender of Suspicious Documents.**

3. In November 2016, I sent a letter to DiMaggio demanding the return of the money Plaintiffs had paid him and warning that unless resolution could be achieved, litigation would be forthcoming. Attached hereto as Exhibit A is a true and correct copy of this letter. In response to my letter, DiMaggio's counsel, J.T. Fox ("Mr. Fox") contacted me, asking me to defer the filing of any lawsuit on behalf of Plaintiffs until the parties could exchange and discuss various emails and documents and explore whether the matter could resolve informally.

4. I agreed to Mr. Fox's request, thus, during the first half of December 2016, Mr. Fox forwarded to me several documents, including (a) an email chain purportedly sent to DiMaggio suggesting that his "fee" as of August 2016 had "reached" $450,000; and (b) a copy of an alleged receipt for a $600,000 bank check made payable to AEI. A true and correct copy of this email chain is attached hereto as Exhibit B; a true and correct copy of the alleged bank

receipt provided to me is attached hereto as Exhibit C.

5. It was my view at the time that these documents looked suspicious. Based on my review of over 3,500 pages of documents Plaintiffs have produced to DiMaggio in this case, I had never seen or heard of these emails or of the notion that DiMaggio was somehow working on a "fee" (as opposed to a contingent) basis, much less that he was to be paid $450,000 with no obligation to produce celebrities. Nor had my clients ever seen these alleged emails. Further, the alleged emails (as noted, Exhibit B hereto) contained formatting anomalies suggesting they were not authentic:

- The alleged August 12, 2016 email to Dachev:
  - Contains no space between the month and the date (it reads "August12"); this line is normally auto-generated by an email server, not manually entered by an author; all of the emails in Plaintiffs possession from DiMaggio have a space between the month and numerical date).
  - Has a space in the middle of the header (between the "date" line and the "to" line), which is not found in auto-generated headings.
- The alleged August 13, 2016 email reply from Dachev to DiMaggio:
  - Contains a "date" field ("Date: Aug 13, 2016 9:43 AM") which uses the U.S. style of date designation (month, numerical date, year). To the best of Plaintiffs' knowledge, all of the other emails sent to DiMaggio from this Bulgarian email address use the European style of date designation (numerical date, month, year) (for example: "Sent: Thu, 04 Aug 2016 2016 09:52:44 +0300").
  - The text of this alleged email – "I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds" – is underlined in its entirety. There are no other emails formatted like that which Plaintiffs have been able to locate.

These anomalies are discussed by Plaintiffs' computer forensic specialist, Bruce W. Pixley, in his declaration filed concurrently herewith ("Pixley Dec."), at paragraphs 3-4.

6. DiMaggio's "receipt" for a $600,000 bank check made payable to AEI (as noted, Exhibit C hereto) raised similar concerns. Although DiMaggio claims that he gave $600,000 to AEI for the Charity Event, the receipt was dated July 14, 2016. As of that date, however, the bank transfer documents I have reviewed show that Plaintiffs had only sent DiMaggio approximately $200,000, which he claimed to have already used to "book" Mick Jagger and Earth Wind & Fire. The receipt which also had inconsistent fonts which are discussed in the Pixley

Dec. at paragraph 5.

7. Due to my concerns that these documents were fabrications created by DiMaggio, on December 19, 2016, I called Mr. Fox and reminded him of DiMaggio's obligation to preserve all evidence related to this matter, including all "metadata" – *i.e.,* data embedded within an email or electronic document that shows when it was created and how it was sent. I also sent to Mr. Fox a "Notice to Preserve Electronic and Other Evidence" which stated, in part, that "some of the recent communications you forwarded to us from Mr. DiMaggio unfortunately look as though they are not authentic; only a proper review of corresponding metadata and storage media from Mr. DiMaggio's electronic devices can confirm their content and if, when and to whom they were sent." A true and correct copy of this Notice is attached hereto as Exhibit D.

8. Mr. Fox then asked me to delay filing Plaintiffs lawsuit even further, until after December 26, 2016. Because Mr. Fox stated that this request was to permit the parties to continue to explore a resolution of this case, I agreed to his request, as memorialized in email correspondence between Mr. Fox and me; a true and correct copy of that email correspondence is attached hereto as Exhibit E. Although Mr. Fox had asked for this extension for the ostensible purpose of trying to resolve the matter, on December 27, 2016, and without any advance notice, he filed a separate action on behalf of DiMaggio's company, DiMaggio International Inc. ("DMI"), in the Van Nuys branch of this Court against the instant Plaintiffs who, as the parties had stipulated, waited to file their action until that same day, but in this Court's downtown branch. After a series of department transfers, the two cases were eventually consolidated here in Van Nuys.

**Plaintiffs' Document Requests and DiMaggio's Stonewalling.**

9. Against this backdrop, on March 8, 2017, Plaintiffs served their First Set of Document Requests on DiMaggio seeking communications, metadata and bank records relating to the Charity Event and the suspicious documents. A true and correct copy of these requests are attached hereto as Exhibit F. On April 20, 2017, DiMaggio served responses to these requests and produced images of paper copies of a handful of emails (many with the headers suspiciously removed), the same receipts for bank checks that had previously been tendered, plus a few other

documents. A true and correct copy of these responses are attached hereto as Exhibit G; true and correct copies of the images of the altered and non-altered emails are attached hereto as Exhibit H; a true and correct copy of the suspicious $600,000 "bank receipt" that had been sent to me earlier and formally produced in discovery is attached hereto as Exhibit I. Notably, the two suspicious emails filed with the Court in December 2016 were *not* included in the production, nor were any bank records. I then contacted Mr. Fox and requested that these deficiencies be cured. In response, Mr. Fox emailed me stating, among other things, that "Robin said he ordered his bank records. He lost his last statements . . . Apparently he is having surgery on May 10, 2017." A true and correct copy of this email to me is attached as Exhibit J.

10. On May 4, 2017, I sent Mr. Fox a meet-and-confer letter memorializing the deficiencies in DiMaggio's discovery responses and proposing a search term protocol for a stipulated inspection of DiMaggio's electronic devices, which Plaintiffs had requested in their document requests due to the authenticity issues discussed above and to DiMaggio's declination to produce the documents requested of him. A true and correct copy of this letter is attached hereto as Exhibit K. In response to this letter, DiMaggio served a supplemental response in which he stipulated to the third-party inspection and agreed to produce additional documents pursuant to the requests. A true and correct copy of this supplemental response is attached hereto as Exhibit L.

11. Despite his sworn agreement to produce bank records, including those showing the source of the funds for the alleged July 14, 2016 $600,000 bank check, DiMaggio instead produced bits and pieces of bank statements dated *after* July 14, 2016 – *i.e.*, one page of a 2-page August 2016 bank statement and a 1-page September 2016 bank statement. True and correct copies of these incomplete documents are attached hereto as Exhibit M. He also failed again to produce electronic versions of the alleged emails with the suspicious formatting that had been filed with this Court. I emailed Mr. Fox about these issues on May 24, 2017; a true and correct copy of that email is attached hereto as Exhibit N.

12. In response to my email, Mr. Fox emailed me several times, first stating, among other things, that Mr. DiMaggio was "go[ing] back to his bank" to "try to get more statements"

and later stating, among other things, that DiMaggio was "unable to make it" to the bank due to work commitments. True and correct copies of these communications are attached hereto as Exhibits O and P. After my continued communications with Mr. Fox pressing him on these issues, on June 1, 2017, Mr. Fox emailed me a heavily redacted July 2016 bank statement (which, as discussed below, was a forgery), but once again failed to produce the bank records he promised or any documents showing the actual sources of the alleged $600,000. A true and correct copy of Mr. Fox's email and the "bank statement" he appended to his email is attached hereto as Exhibit Q.

13. In response to my request for the missing bank documents, Mr. Fox then proposed, for the first time, a stipulated protective order for any further production of bank records. I agreed and the parties subsequently executed and filed a stipulated protective order, a true and correct copy of which is attached as Exhibit R. Despite the filing of the protective order, no bank records or any additional communications between DiMaggio and Plaintiffs were produced by DiMaggio beyond one additional page of the incomplete August 2016 bank statement.

**The Stipulated Inspection.**

14. On June 5, 2017, after communications with Mr. Fox as to the stipulated inspection, I sent a letter to him setting forth what I understood was to be the agreed-upon protocol for this search. A true and correct copy of this letter is attached hereto as Exhibit S. After agreeing to and then canceling two inspection dates that the parties had agreed upon, DiMaggio appeared, with his counsel, at a June 9, 2017 inspection conducted by Mr. Pixley and which I attended.

15. At the June 9, 2017 inspection, DiMaggio arrived with no laptop or other computer to inspect. When asked why he did not bring his laptop, DiMaggio claimed, in contradiction of his sworn discovery responses, that he does not own a laptop, but an iMac desktop computer, which he did not bring. When asked why he did not bring his claimed iMac with him, he offered no comprehensible explanation but promised to bring it with him for another inspection next Monday, June 12, 2017. The day after this promise, I understand from Mr. Pixley that DiMaggio canceled the June 12, 2017 inspection, causing Plaintiffs to lose the deposit they had

paid reserving the neutral place of inspection, and to date, DiMaggio has refused to permit inspection of his alleged iMac. I memorialized these failures in a letter to Mr. Fox dated June 12, 2017, a true and correct copy of which is attached hereto as Exhibit T.

16. At the June 9, 2017 inspection, I understand that Mr. Pixley downloaded the complete contents of the Gmail account DiMaggio used to communicate with Plaintiffs, so he could conduct the search protocol to which Mr. Fox and I had agreed. Around July 26, 2017, I received a thumb drive from Mr. Pixley which contained the results of his search. Although some of the emails Mr. Pixley found in DiMaggio's account were dated as early as April 2016, before DiMaggio first communicated with Plaintiffs, not a single email communication with Plaintiffs was found, not even the ones he had produced with inexplicable header redactions or the suspicious ones he had earlier filed with this Court. Thus, there was no metadata relating to any relevant emails to test their authenticity, defeating a primary purpose of the inspection. There were also no emails relating to DiMaggio's alleged communications with any of the numerous celebrities with which he claimed to have been negotiating. As I understand from Mr. Pixley, all emails to and from Plaintiffs, as well as any with celebrities or their representatives, were intentionally deleted and, unless specially stored on a media storage device, are forever lost.

**DiMaggio's Refusal to Engage in Further Document Discovery.**

17. Approximately two weeks after the June 12, 2017 Chapter 7 bankruptcy filing of DiMaggio's company, DiMaggio International, Inc. ("DMI"), I called Mr. Fox to engage in a meet-and-confer for a motion to compel and for sanctions as to DiMaggio, who had not filed for bankruptcy protection. The grounds for the meet-and-confer included DiMaggio (1) deleting all of his email communications with Plaintiffs from his Gmail account; (2) refusing to produce metadata or authentication for the suspect "emails"; (3) refusing to submit his alleged iMac for inspection; (4) refusing to produce bank statements for the relevant time period; and (5) refusing to produce any other documents as called for by the document requests. This meet-and-confer was memorialized in a July 28 email I sent to Mr. Fox; a true and correct copy of this email is attached hereto as Exhibit U. Mr. Fox's emailed response to me, in part, was that DiMaggio

would "see if he is able to retrieve the emails"; a true and correct copy of this response is attached hereto as Exhibit V.

18. On August 3, 2017, I received an email directly from DiMaggio, copied to Mr. Fox and his company's bankruptcy counsel, Moses Bardavid. As can be seen by that email, DiMaggio stated, in part, that he would refuse to produce any further emails in this litigation because of his company's bankruptcy, even though he had not personally filed for bankruptcy protection. A true and correct copy of that email is attached hereto as Exhibit W. A few days later, Mr. Fox sent me an email stating, in part, that "I am trying to get Moses to provide you a formal response as to the pending discovery issue." A true and correct copy of this email is attached hereto as Exhibit X. As of this date, there has been no follow up to this email.

19. That same day, my clients forwarded to me some text messages DiMaggio had sent to Alexander Panev, a representative of Plaintiffs, claiming that he now resided in France and blaming Plaintiffs for the "closure" of his company. A true and correct copy of these text messages are attached hereto as Exhibit Y.

20. Several days later, I received another email from DiMaggio, addressed to Mr. Fox, Mr. Bardavid and me, this time stating, in part, that he had a "devastating surgery" for his "major cancer" the following week and that "I know your threatening of sanctions but . . . I [will] get medical letters . . . [for] the judge." A true and correct copy of this email is attached hereto as Exhibit Z. A few days later, DiMaggio again wrote to Mr. Fox, Mr. Bardavid and me, now stating, in part, "[I'm] cooked for a while and this doesn't even talk about a 98% start of Chemo and Radiation. Everyone Back off!!!!!!! I'm not playing! Sanction all you want. My [goal] is not Legal, staying alive is my only Priority." In this email, he also attached the letter he promised would be forthcoming from his doctor, who wrote, in part, that although "a recent MRI reveals details that are suspicious for cancer," the "devastating surgery" that DiMaggio had previously written about was, in actuality, a "tonsillectomy;" the doctor also stated that no biopsies for any cancer had been performed and made no mention of any cancer diagnosis. A true and correct copy of this email, and the attached doctor's note, is attached hereto as Exhibit AA.

**Plaintiffs' Discovery of Proof that DiMaggio Forged Documents.**

21. On August 18 and 21, 2017, Citibank N.A. ("Citibank") produced to my firm bank statements responsive to Plaintiffs' subpoena dated June 7, 2017. A true and correct copy of this subpoena is attached hereto as Exhibit BB.

22. As can be seen from Exhibit I hereto, DiMaggio's produced "bank receipt" for $600,000 was made out to AEI, has a serial number of 313873841 and is dated July 14, 2016. The actual check produced by Citibank that corresponds with this payee, serial number and date however, is for $10,000, not $600,000. A true and correct copy of the real check from Citibank showing DiMaggio's forgery is attached hereto as Exhibit CC and is also discussed in the Pixley Dec. at paragraphs 3-4.

23. As can be seen from Exhibit Q hereto, DiMaggio's produced July 2016 "bank statement" purportedly shows that he had money for the alleged $600,000 check (since, as noted, Plaintiffs had not yet paid him those funds) and that he purchased this check. As shown in the real July 2016 bank statement produced by Citibank, a true and correct copy of which is attached as Exhibit DD, however, DiMaggio forged this statement too:

- He deleted the "$36.89" checking summary at the top of the statement and replaced it with "------";
- He changed the real beginning monthly balance of "662.41" to a fake balance of $715,662.41;
- With this inflated "balance," he inserted a fraudulent entry dated July 14 which reads "07/14 WITHDRAWAL 600,000.00." That fraudulent entry, as noted, was created to explain the prior fraudulent "$600,000 bank check" and is nowhere to be found in the real bank statement.

(For the Court's ease of reference, attached hereto as Exhibit EE is a true and copy of DiMaggio's produced July 2016 statement but with counsel's handwritten notes showing the forged portions.)

24. It is my professional opinion that my ability to develop and prove Plaintiffs' claims at trial has been compromised by DiMaggio's actions. Plaintiffs are located in Bulgaria and DiMaggio in Los Angeles. DiMaggio claims that he was "owed" $450,000 in August 2016, "negotiated" with numerous celebrities and was in constant contact with event organizers. The alleged representations relating to this matter, what DiMaggio did and said with artists, agents

and organizers relating to the Charity Event, the purported agreements that govern this case – all of these things were developed and exchanged via email transmission, which forms the evidentiary foundation of this litigation. DiMaggio's deletion of electronic evidence relating to this case from his Gmail account means that I will have to try to gather this evidence by tracking down third parties whose identities at this time are not fully known and it is uncertain whether the quality of evidence I would be able to obtain in this regard would rectify, in whole or in part, the evidence that was destroyed.

25. On August 23, 2017, Mr. Fox and I engaged in a telephonic meet-and-confer concerning this Motion. A true and correct copy of the email I sent to Mr. Fox initiating this call is attached hereto as Exhibit FF. The parties were unable to arrive at a resolution that would avoid the need for this Motion.

26. I have reviewed the incurred professional fees of my firm and Mr. Pixley (1) addressing DiMaggio's forgeries, destruction of evidence and discovery non-compliance; (2) preparing for and attending the computer inspection at which DiMaggio failed to bring any computer; and (3) preparing this Motion (plus an estimated 10 hours of my future time in the preparation of a reply brief and argument thereon). At a bare minimum, my firm has spent on these identified matters (a) 2 hours of senior partner's Robert Span's time (at $550 an hour); (b) 60 hours of my time (at $410 an hour), 25 hours of associate time (at $325 an hour) and 25 hours of paralegal time (at $150 per hour). Mr. Pixley, who was retained to collect and authenticate DiMaggio's emails (destroyed) and provide metadata (also destroyed), has billed $2,400 as of the date of this Declaration. The lost deposit on the facilities Plaintiffs reserved for the canceled inspection of Mr. DiMaggio's alleged iMac was $190. The total of such fees and costs comes to, at minimum, $40,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of September, 2017 at Los Angeles, California.

Douglas R. Painter

**EXHIBIT  A**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2350
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

November 15, 2016

**VIA EMAIL AND OVERNIGHT MAIL**

Mr. Robin DiMaggio
DiMaggio International, Inc.

5737 Kanan Rd., # 117
Agoura Hills, CA 91301

5841 Larboard Lane
Agoura Hills, California 91301

**Demand for Immediate Reimbursement of Funds**
**Peace for You, Peace for Me Foundation / October 1, 2016 event**

Dear Mr. DiMaggio:

This firm represents Kris Dachev & Associates and Krasimir Dachev (jointly referred to as "Dachev"), representatives of the Peace for You, Peace for Me foundation (the "Foundation") and (Dachev and the Foundation are collectively referred to as "Claimants").[1] By way of this letter, Claimants request your immediate payment of $1,035,571, which represents (1) the $1,008,300 Claimants tendered to you under the agreements relating to the planned October 1, 2016 Foundation charity concert event in Sofia, Bulgaria ("Charity Event"); and (2) $21,271 of statutory interest thereon from September 2, 2016 to the date of this letter pursuant to Civil Code § 3289. Please direct all future communications intended for Claimants concerning this matter to us, and if you have an attorney, please transmit this letter to him or her.

As you know, around late May 2016, you represented to Claimants that you had the expertise and ability to quickly secure contractual guarantees from numerous "A-List" musician celebrities to perform at the Charity Event, then four months away. Based on your representations, you requested a $50,000 binder to begin your services, as reflected in the binder fee agreement with the Foundation ("Binder Agreement") that you signed. The Artist & Production Terms appended to the Binder Agreement stated that production costs would be $150,000 and artist fees $1,000,000, with the Foundation having "the option of . . . having [the] funds returned" if you were unable to secure artist

[1] As used herein, the terms "you" and "yours" refer to you, Robin DiMaggio, and DiMaggio International, Inc.

guarantees. Shortly thereafter, you sent Claimants an invoice in the amount of $150,000, which you represented was to be used for any deposits required by Mick Jagger and Earth Wind & Fire ("Artist Invoice"); the Artist Invoice affirmed the Foundation's right to reimbursement if you failed to obtain artist contracts acceptable to the Foundation.

During the months of June and July 2016, pursuant to the Binder Agreement and Artist Invoice, Claimants paid to you a total of approximately $254,000; during this time you made representations about artist possibilities, ranging from supposed commitments from Rod Stewart, Earth, Wind & Fire, Mick Jagger and KISS, to claims that you were entertaining discussions with Justin Timberlake, Elton John, Celine Dion and Bruno Mars.

In mid-July 2016, multiple Bulgarian press reports expressed skepticism as to your ability to secure so many top-name artists for the Charity Event in such a short period of time. In response, you claimed you needed an additional $53,300 from Claimants to be used for what you called "legal defamation" and "damage control." Claimants paid you this amount, with you representing that such reports would not impact your ability to secure artist guarantees for the Charity Event, then ten weeks away.

In late July 2016, you claimed you needed additional funds to secure celebrity artist guarantees, even though at that time you had secured none. Thus, on August 3, 2016, you executed a contract ("Contract") with Dachev (as the Foundation's representative) in which you identified additional celebrities – *i.e.*, Jennifer Lopez, Roger Waters, John Legend, Christiana Aguilera, Robbi Williams and Don Felder – as artists you could secure for the Charity Event, then seven weeks away. The Contract called for Claimants' payment, within five days, of another $750,000 that was to be used only to pay artists guaranteeing to perform, and also provided, among other things, that (1) you would be paid for your services only "upon closing of the [artist] agreement[s]"; (2) any contracts with any artist would first have to be approved "in writing" by Dachev; and (3) unless you secured at least 20 names from List of Artists approved by Dachev, you were to return Claimants' funds "in full to Purchaser in the first banking day following the end of the term," defined as October 3, 2016.

The Contract required that you open an escrow account in which Claimants' $750,000 would be held. After executing the agreement, however, you claimed that you were "unable" to open this account within the 5-day payment period and instead demanded payment directly to you. On August 5, 2016, Claimants did as you requested, and paid you $750,000. You did not open the escrow account for these funds as you had promised and instead apparently kept the money.

By mid-August 2016, six weeks before the Charity Event, you had failed to secure a single celebrity artist. The Foundation therefore began looking for such artists without your assistance. When you discovered this, you blamed your failure on the Foundation and claimed Claimants' right to reimbursement could not occur until "everyone returns the deposits." On August 25, you stated you instead wanted to keep Claimants' funds for the ostensible purpose of securing artists for a 2017 concert on which no agreement had been reached.

By September 2, 2016, less than four weeks from the Charity Event and without you having secured a single celebrity artist, it became clear that the event could not proceed. Accordingly, pursuant to the written terms to which you agreed, Claimants requested the return of the funds paid to

you. In response, you claimed you had sent deposits to artists "as agreed." At no time did any Claimant provide you with any written authorization to enter into any contract with any artist. On September 9, 2016, Claimants again wrote to you asking for the return of their money. You declined, and have since ignored all of Claimants' requests for reimbursement.

Your actions are in breach of your agreements with Claimants. You breached multiple contractual obligations under the Binder Agreement and Artist Invoice and Contract, caused the collapse of the Charity Event and to this day are refusing to return over $1,000,000 that does not belong to you. Your actions have also caused other damages to Claimants which exceed the money you are withholding: in reliance on your representations that you were securing top A-list celebrity musicians, Claimants made deposits and/or payments for artists, hosts, hotels, airfare, stage and lighting vendors and other service providers totaling another $2,500,000; under the contracts for these expenditures, they carry another $1,000,000 of payment obligations. The total damages caused by your actions therefore exceed $4,500,000.

Without waiving any rights to seek additional damages as noted, Claimants hereby demand that you tender a check to this firm in the amount of $1,035,571 which, as noted, represents the $1,008,300 Claimants tendered to you and $21,271 of statutory interest thereon. The check must be received by our firm no later than *November 23, 2016*. If you have any questions about these matters, please contact us or, if you have an attorney, have him or her contact us.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

**EXHIBIT  B**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Sunday, December 11, 2016 5:09 PM
**To:** Douglas Painter
**Subject:** [FWD: additional funds]

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Doug,

Another important email.

Sincerely,

jt

---------- Forwarded message ----------
From: "MTG-K.dachev" <kdachev@mtgbg.com>
Date: Aug 13, 2016 9:43 AM
Subject: Fwd: additional funds
To: "USA--ROBIN DI'MAGGIO" <thedimaggio@gmail.com>

I understand the need of your extra charges for the June 2 concert, please see with Alexander for him to furnish you the funds.

**From:** "R. DiMaggio" <thedimaggio@gmail.com>
**Date:** August12, 2016 at 2:14:04 PM GMT+2

**To:** "Svilosa-K.Dachev" <kdachev@svilosa.bg>
**Subject: additional funds**

Krass

All good for June 2 working on getting you the finalized artist's
I need more money now that I'm the Main Producer of the show as well as Liaison, and Musical Director this is a huge undertaking and my fee now is $450,000 all in.
Just need you to handle Travel, transpo and hotel for me. The usual.

**EXHIBIT C**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Thursday, December 15, 2016 5:02 PM
**To:** Douglas Painter
**Subject:** Copy of Check Re: AEI
**Attachments:** 0596_001.pdf

Doug,

Attached is a copy of the check for AEI.

Sincerely,

JT

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

FOR YOUR PROTECTION SAVE THIS COPY

citibank
Citibank, N.A.

OFFICIAL CHECK

SERVICE INSTRUCTIONS
PLEASE CONSULT A CITIBANK ASSOCIATE OR YOUR CLIENT MANUAL FOR A DESCRIPTION OF THE BANK'S POLICY CONCERNING PLACING A STOP PAYMENT REQUEST ON THIS INSTRUMENT AND THE FEE ASSOCIATED WITH THAT REQUEST.

313873841

62-20
311

DATE 7/14/16

PAY ***SIX HUNDRED THOUSAND DOLLARS***

***$600,000.00***

TO THE ORDER OF ***ALL ENTERTAINMENT BROKERAGE FIRM***

NAME OF REMITTER ADDRESS

NON NEGOTIABLE

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.

REMITTER COPY

**EXHIBIT D**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON D.C. | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2230
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

December 19, 2016

**VIA EMAIL AND U.S. MAIL**

J.T. Fox, Esq.
Law Offices of J.T. Fox & Associates
556 S. Fair Oaks Ave., # 444
Pasadena, CA 91105

**Notice to Preserve Electronic and Other Evidence**
***Dachev v.DiMaggio et al.***

Dear Mr. Fox:

As you know from our email and telephonic communications, this firm represents Krasimir Dachev, the Peace for You Peace for Me Foundation ( "Foundation") and Svilosa AD (collectively "Plaintiffs") in connection with the parties contractual relationship surrounding a planned charity concert event ("Charity Event") that was to have taken place on October 1, 2016 in Sofia, Bulgaria. You have stated during these communications that you represent Robin DiMaggio and DiMaggio International, Inc. (collectively "Defendants") in connection therewith.

As I have mentioned to you in prior communications, some of the recent communications you forwarded to us from Mr. DiMaggio unfortunately look as though they are not authentic; only a proper review of corresponding metadata and storage media from Mr. DiMaggio's electronic devices can confirm their content and if, when and to whom they were sent. Regardless, I am writing to notify and remind you that your clients have an affirmative, legal duty to preserve all electronic and other evidence that may be related to this dispute. *Patton v. Wal–Mart Stores, Inc.*, 2013 WL 6158467, at *6 (D.Nev. Nov. 20, 2013) (citing *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D.Cal.2006) (duty to preserve evidence arises when one knows or should know of anticipated litigation); *People v. Rodrigues,* 8 Cal. 4th 1060, 1139 (1994). The evidence Defendants have a duty to preserve includes but is not limited to:

1. Communications and interactions with any of the Plaintiffs or their representatives;
2. Communications with any agency, artist representative, artist or other party that are related in any way to the Charity Event;
3. Any offers, bids, term sheets or contracts, finalized or not, related in any way to the Charity Event;
4. Communications with AEI and/or Bruce Sterling;

5. Any offers, bids, term sheets or contracts, finalized or not, with AEI and/or Bruce Sterling;
6. Bank documentation, receipts and any proof of payment related to what Defendants did with the approximate $1,000,000 that was tendered to them by Plaintiffs; and
7. Bank documentation, receipts and any proof of payment related to any expenditures or money transfers related to the Charity Event.

Your clients' legal duty to preserve evidence applies to their on-site and off-site computer systems and removable electronic media, all services, servers and devices (including all remote access or wireless devices) used by them, and all paper documents. The forms of evidence therein include, but are not limited to: email and other electronic communications on any account; any electronically stored documents, records, images, graphics, recordings, spreadsheets and databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cached files, user information and similar data. All operating systems, software, applications, hardware, codes, keys and other support information must also be preserved.

In order to comply with the legal duty to preserve evidence, we request that you direct your clients to undertake the following safeguards:

ONLINE DATA STORAGE

With regard to online storage and/or direct access storage devices attached to your clients' computers, we request that your clients not modify or delete any existing electronic data files that meet the criteria set forth above, unless an exact mirror copy has been made and will be preserved and kept accessible for purposes of this litigation.

OFFLINE DATA STORAGE, BACKUPS AND ARCHIVES

With regard to all electronic media used for offline storage, such as drives, magnetic tapes and cartridges, CDs, DVDs, and the like, used with any computer, that contain any electronic information relating to the subject matter of this litigation, we request that your clients stop any activity that may result in the loss of such data. This request is intended to cover all removable electronic media used for data storage in any device containing backup and/or archive data sets.

PRESERVATION OF REPLACED DATA STORAGE DEVICES

We request that your clients preserve any electronic data storage devices and/or media that may contain data relating to the subject matter of the litigation if they are replaced for any reason.

FIXED DRIVES ON STAND-ALONE PERSONAL COMPUTERS AND NETWORK WORKSTATIONS

We request that your clients not alter or erase relevant electronic data that existed on fixed drives attached to standalone computers and/or network workstations, or perform other procedures such as data compression and disk refragmentation or optimization routines that may impact such data, unless an exact copy has been made of such active files and of directory listings (including hidden files) for all directories containing such files and that they completely restore any deleted electronic files and file fragments and arrange to preserve all such data during the pendency of this anticipated litigation.

APPLICATIONS AND UTILITIES

We request that your clients preserve copies of all applications and utilities that may be used to process electronic data discussed in this letter.

LOG OF SYSTEM MODIFICATIONS

We request that your clients maintain an activity log of document modifications made to any electronic data processing system that may affect any system's capability to process any electronic data relating to the subject matter of the litigation. As noted, all operating systems, software, applications, hardware, codes, keys and other support information must be preserved.

PERSONAL COMPUTERS USED BY OTHERS UNDER THE CONTROL OF YOUR CLIENTS

Please immediately take the following steps with regard to all the fixed drives attached to any personal computers used by anyone under your clients' control:

An exact copy should be made of all electronic data relating to the subject matter of the litigation;

Full directory listings (including hidden files) for all directories and subdirectories should be written;

All removable electronic media, such as floppy diskettes, magnetic tapes and cartridges, CDs, DVDs and the like that existed before the delivery of this letter and that contain relevant data should be collected, maintained intact and kept available during the pendency of this litigation.

EVIDENCE CREATED AFTER RECEIPT OF THIS LETTER

Any relevant electronic data created after receipt of this letter should be preserved in a manner consistent with the directions in this letter.

Any destruction of the evidence described above could result in civil and criminal liabilities for spoliation of evidence. Accordingly, please ensure that the above-referenced evidence is preserved and not destroyed, inadvertently or otherwise.

If you have any questions about these matters, please feel free to contact me. Thank you.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

**EXHIBIT E**

**Lisa Atwood**

**From:** Douglas Painter
**Sent:** Thursday, December 15, 2016 7:56 PM
**To:** jt@jtfoxlaw.com
**Cc:** Robert Span
**Subject:** Re: Update / authority for service

Thanks JT - confirmed.

Get Outlook for iOS

---

From: jt@jtfoxlaw.com
Sent: Thursday, December 15, 2016 7:17 PM
Subject: RE: Update / authority for service
To: Douglas Painter <dpainter@steinbrecherspan.com>
Cc: Robert Span <rspan@steinbrecherspan.com>

Doug,

This will confirm our conversation this evening.

I will accept service of your client's lawsuit on my clients' behalf in the event that your client files a lawsuit against them. We agreed that your client would not file a lawsuit against my clients prior to December 26, 2016. The parties will agree to continue to discuss this matter in the interim. I will try to get you information from AEI as to whether or not AEI received the subject $600,000, as we discussed. I will also try to obtain AEI's cancellation policy information.

We discussed having a meeting between you, me and my client on Tuesday or Wednesday, if time permits. Assuming that my Monday trial does not cause delay, my client and I will try to meet with you no later than Wednesday of next week to further discuss the matter. If we cannot make the meeting happen, than it will not be problematic. I will still try to confer with you and try to help provide more facts and documents in respect to this matter.

Please confirm if this an accurate understanding of our conversation.

Sincerely,

JT

The Law Offices Of J.T. Fox
& Associates, APC

**J.T. Fox, Esq.**

LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites:www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the
use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the
attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a
waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any
attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use,
dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received
this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments
immediately, and destroy all copies.

-------- Original Message --------
Subject: Update / authority for service
From: Douglas Painter <dpainter@steinbrecherspan.com>
Date: Thu, December 15, 2016 4:02 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>
Cc: Robert Span <rspan@steinbrecherspan.com>

J.T.,

Its almost the close of 12/15, the date by which I recall you said you would send
me bank documentation showing AEI had been paid the monies alleged by Mr.
DiMaggio.  Since we have received nothing, and since we have been discussing
these documents for some time now, we have no choice but to assume they do
not exist.

Could you please let me know if you have been authorized to accept service on
behalf of Mr. DiMaggio and his company?  Since you are counsel in this matter I
can only assume yes, but I need your confirmation in writing (email) before
sending you the anticipated complaint.  Please confirm and thanks.

Best,

Doug

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400  Fax: 213-891-1470

dpainter@steinbrecherspan.com
www.steinbrecherspan.com

*This email may contain material that is confidential, attorney-client privileged and/or work-product protected, and is solely for the use of the intended recipient. Any review, reliance or distribution by others, or forwarding without express permission, is strictly prohibited. If you are not the intended recipient of this email, please contact the sender immediately and delete all copies. Thank you.*

**EXHIBIT  F**

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,

Plaintiffs,

v.

ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,

Defendants.

CASE NO. BC645027

**PLAINTIFFS' REQUESTS FOR INSPECTION AND PRODUCTION OF DOCUMENTS, SET ONE TO DEFENDANT ROBIN DIMAGGIO**

**PROPOUNDING PARTY:** **KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME AND SVILOSA AD**

**RESPONDING PARTY:** **ROBIN DIMAGGIO**

**SET NO.:** **ONE**

**TO DEFENDANT ROBIN DIMAGGIO AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to California Code of Civil Procedure Section 2031, Plaintiffs Krasimir Dachev, Peace For You Peace For Me and Svilosa AD ("Plaintiffs") hereby request that Defendant Robin DiMaggio ("DiMaggio") produce for inspection and copying the documents described hereinbelow 30 days after service hereof at Steinbrecher & Span LLP, 445 S. Figueroa Street, Suite 2350, Los Angeles, CA 90071. Alternatively, DiMaggio may produce the documents and things by mailing copies to Steinbrecher & Span to the address listed above. Plaintiffs reserve their rights to inspect originals of the documents at a mutually agreeable later date. DiMaggio is also required to serve written responses to these Requests within thirty (30) days after service hereof.

I. DEFINITIONS AND INSTRUCTIONS

A. Definitions.

1. The terms "YOU" and/or "YOUR" mean Defendant Robin DiMaggio and/or Defendant DiMaggio International, Inc., and all of his and/or its agents, representatives and anyone else acting on his and/or its behalf.

2. "COMPLAINT" means the Complaint on file in this action entitled *Krasimir Dachev, et al. v. DiMaggio, et al.*, Los Angeles Superior Court Case No. BC645027.

3. The terms "DOCUMENT" and "DOCUMENTS" mean any kind of written, typewritten, printed, electronic or recorded material whatsoever, including but not limited to, any emails, notes, memoranda, charges, complaints, claims, affidavits, statements, papers, files, forms, data, tapes, cassettes, discs, magnetic cards, printouts, letters, reports, summaries, compilations, chronicles, publications, books, manuals, handbooks, certificates, minutes, agendas, communications, contracts, agreements, telegrams, teletypes, telesales, records, correspondence, diaries, calendars, appointment books, logs, audio and/or video recordings and transcriptions of recordings, microfilm, microfiche, electronic records or representations of any kind, information stored on computer (including, but not limited to, readable files such as Microsoft Excel spreadsheets) or on any type of computer-readable storage media and

capable of being reproduced by printed representation of any form whether or not ever printed out or displayed, photographs, pictures, diagrams, or any other writing, however produced or reproduced, and further including, without limitation, originals, all copies that are not Exact Duplicates (as hereinafter defined) and all drafts prepared in connection with such DOCUMENTS whether or not used, within the possession, custody, and/or control of YOU, or YOUR agents, attorneys, and/or any other persons who may act on YOUR behalf, excepting only those DOCUMENTS that are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by written notice to Defendant.

4. The terms "COMMUNICATE" and/or "COMMUNICATIONS" mean and include any meeting, conference, face-to-face conversation, telephone conversation, or conference or communication used by any media (including, but not limited to, electronic mail), as well as any written, taped, or recorded communication of any kind whatsoever.

5. The term "CHARITY CONCERT" means the planned concert event that was scheduled to have taken place around October 1, 2016 in Sofia, Bulgaria that is a subject of this lawsuit.

6. The terms "ARTIST" and/or "ARTISTS" mean any performer who was informed of, contacted by YOU or under consideration by YOU to perform at, the CHARITY CONCERT.

7. The terms "BANK ACCOUNT" and/or "BANK ACCOUNTS" mean any and all accounts held in YOUR name or held for YOUR benefit and/or behalf at any financial institution, escrow or fiduciary through which monies are deposited, withdrawn or held.

8. The term "AEI" means AEI Entertainment and any of its agents, representatives, predecessors, successors or other persons or entities acting on its behalf.

9. The term "RELATED TO" means concerning, evidencing, constituting, mentioning, embodying, identifying, discussing, supporting, memorializing, describing, summarizing, referring to or pertaining to a subject matter or any aspect thereof.

B. Documents Withheld

If any DOCUMENT is withheld under a claim of privilege or other protection, so as to aid the Court and the parties hereto to determine the validity of the claim of privilege or other protection, please provide the following information with respect to any such DOCUMENT:

1. The identity of the person(s) who prepared the DOCUMENT, who signed it, and under whose name it was sent or issued;

2. The identity of the person(s) to whom the DOCUMENT was directed;

3. The nature and substance of the DOCUMENT with sufficient particularity to enable the Court and parties hereto to identify the DOCUMENT;

4. The date of the DOCUMENT;

5. The identity of the person(s) having custody of or control over the DOCUMENT and each copy thereof;

6. The identity of each person to whom copies of the DOCUMENT were furnished;

7. The number of pages;

8. The basis on which any privilege or other protection is claimed; and

9. Whether any non-privileged or non-protected matter is included in the DOCUMENT.

C. Partial Production.

Whenever YOU object to a particular demand, or portion thereof, YOU must produce all DOCUMENTS called for which are not subject to that objection. Similarly, wherever a DOCUMENT is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of YOUR knowledge, information and belief and with as much particularity as possible, those portions of the DOCUMENT that are not produced.

D. Orderly Response.

Please produce DOCUMENTS in such a manner as will facilitate their identification with the particular demand or category of demands to which they are responsive. Specifically, please number each page of each DOCUMENT and indicate which Request each DOCUMENT is responsive to.

E. Construction of "And" and "Or."

The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these discovery requests any information that might otherwise be construed to be outside of their scope.

F. Construction of the Singular and Plural Forms.

Wherever necessary to ensure completeness or accuracy of responses to these discovery requests, words importing the singular shall include the plural, and words importing the plural shall include the singular.

## REQUESTS FOR INSPECTION

**REQUEST FOR INSPECTION NO. 1:**

Plaintiffs request that YOU make available for inspection to an agreed-upon third party electronic discovery vendor YOUR computer, laptop, and other electronic devices so that the third party vendor may conduct a search for all of Plaintiffs' property contained therein, including all information and details RELATING TO when and how such property was created, sent or downloaded, by whom, and to whom any such property was sent. For purposes of this Request for Inspection, "Plaintiffs' property" includes DOCUMENTS created by, for or sent to Plaintiffs, and COMMUNICATIONS sent or received through Plaintiffs' electronic servers or email addresses. Plaintiffs request that the inspection take place at a date and time mutually convenient to YOU and Plaintiffs' counsel, no later than 30 days from the date of service of this Request, and that such inspection be conducted at the offices of Steinbrecher & Span LLP, located at 445 S.

Figueroa Street, Suite 2350, Los Angeles, CA 90071. The third party-vendor shall not turn over to Plaintiffs any of YOUR personal property or COMMUNICATIONS contained on YOUR computers or other devices.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between YOU and AEI from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

All COMMUNICATIONS between YOU and Bruce Sterling from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS RELATED TO any contracts or agreements between YOU and AEI from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS RELATED TO any contracts or agreements between YOU and Bruce Sterling from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATED TO AEI from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATED TO Bruce Sterling from January 1, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All bank statements for all BANK ACCOUNTS used for any deposit, withdrawal,

payment, holding or transaction RELATED TO the CHARITY CONCERT from January 1, 2015 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

Copies of all checks, personal or institutional, reflecting any deposit, withdrawal, payment, holding or transaction RELATED TO the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS showing any and all expenditures RELATED TO the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATED TO any purported $600,000 Official Check procured by YOU and issued by Citibank, N.A., dated July 14, 2016 and made payable to AEI Entertainment, including but not limited to those relating to its purpose and governing contract and to the source of funds YOU used to procure any such check.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS showing any and all expenditures RELATED TO the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS RELATED TO any COMMUNICATION between YOU and any ARTIST, including with any agent, manager, agency or similar representative of such ARTIST.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS RELATED TO any contracts or agreements, final or proposed, with any ARTIST, including with any agent, manager, agency or similar representative of such ARTIST.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS RELATED TO any proposals or offers made to any ARTIST, including to any agent, manager, agency or similar representative of such ARTIST, to perform at the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS RELATED TO all efforts undertaken by YOU to secure any ARTIST for the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS RELATED TO any actual booking of any ARTIST for the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS RELATED TO any monies expended, deposited or held for the purpose of booking of any ARTIST for the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS showing what YOU did with any monies paid to you by any plaintiff in this case.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS supporting YOUR contention that there was an agreement between YOU and any other party to organize a 2017 concert in Sofia, Bulgaria.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS RELATED TO any draft or final contracts or agreements reflecting any actual or proposed 2017 concert in Sofia, Bulgaria.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS RELATED TO any COMMUNICATIONS between YOU and any plaintiff in this case.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS RELATED TO any contracts or agreements, final or draft, between YOU and any plaintiff in this case.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS RELATED TO the CHARITY CONCERT.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS RELATED TO the PEACE FOR YOU PEACE FOR ME Foundation.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS RELATED TO Marchelo Djotolov.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS RELATED TO Creative Artists Agency.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS identified in YOUR responses to Special Interrogatories nos. 4, 7 and 11–13 (inclusive).

Dated: March 8, 2017

STEINBRECHER & SPAN LLP
ROBERT S. SPAN
DOUGLAS R. PAINTER

By: ______________________
Douglas R. Painter

Attorneys for Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

10

PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE TO DEFENDANT

5/5

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,

Plaintiffs,

v.

ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,

Defendants.

CASE NO. BC645027

*Hon. Barbara M. Scheper*

**PROOF OF SERVICE**

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss:
CITY AND COUNTY OF LOS ANGELES )

I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Steinbrecher & Span LLP, 445 South Figueroa Street, Suite 2350, Los Angeles, California 90071.

On March 8, 2017, I served the foregoing document(s) described as:

**1) PLAINTIFFS' SPECIAL INTERROGATORIES, SET ONE TO DEFENDANT ROBIN DIMAGGIO;**
**2) PLAINTIFFS' REQUESTS FOR INSPECTION AND PRODUCTION OF DOCUMENTS, SET ONE TO DEFENDANT ROBIN DIMAGGIO**
**3) FORM INTERROGATORIES, SET ONE TO DEFENDANT ROBIN DIMAGGIO;**
**4) FORM INTERROGATORIES, SET ONE TO DEFENDANT DIMAGGIO INTERNATIONAL, INC.; AND**
**5) PROOF OF SERVICE**

on the interested parties, by placing a true copy thereof in a sealed envelope(s) addressed as follows:

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
**Attorneys for Defendants**

[ ] **VIA OVERNIGHT MAIL:**
VIA : By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

[X] **VIA U.S. MAIL:**
I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on March 8, 2017 with postage thereon fully prepaid, at Los Angeles, California.

[ ] **VIA PERSONAL DELIVERY:**
I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP § 1011.

[ ] **VIA FACSIMILE:**
By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct and was executed on March 8, 2017, at Los Angeles, California.

Lisa M. Atwood

**EXHIBIT G**

Mr. J.T. Fox, Esq., SBN 195063
Law Offices of JT Fox & Associates, APC
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax

Attorney for Defendant,
ROBIN DIMAGGIO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KRASIMIR DACHEV, ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>ROBIN DIMAGGIO, ET AL.,<br><br>Defendants. | Case No.: BC645027<br><br>**DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR DOCUMENTS**<br><br>[Set No. One]<br><br>Lead Related Case:<br>YC071579 (Van Nuys Case) |

PROPOUNDING PARTY: PLAINTIFFS

RESPONDING PARTY: DEFENDANT ROBIN DIMAGGIO

SET NO.: One

Defendant hereby responds to Plaintiff's Request for Documents, Set No. 1, as follows:

**I**

**RESERVATION OF RIGHT TO SUPPLEMENT, MODIFY OR ALTER RESPONSES**

Additional discovery and further investigation is ongoing and additional documents as well as additional facts may later be discovered by responding party that pertain to the various issues and subject matters raised in the following discovery questions. Because of that possibility, responding

party reserves its right to introduce in this action evidence based upon or derived from subsequently discovered facts, witnesses and/or documents. Responding party expressly reserves the right to conduct further investigation into the facts and circumstances surrounding the subject matter of this litigation and the causes of action in Plaintiff's complaint in that the areas of inquiry set forth in these discovery questions involve information peculiarly within the knowledge of either Plaintiff, or third parties with whom responding party has not had an opportunity to engage in discovery. To the extent that further investigation and discovery uncover additional documents and/or facts and/or witnesses pertaining to the subject matters referred to in the interrogatories, responding party expressly reserves its respective right to supplement, modify or alter any of its responses set forth herein.

Responding party's responses herein are based only upon current information and documents known to this responding party and disclose only those contentions which presently occur to such responding party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the contentions herein set forth. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently discovered fact or facts which responding party may later obtain or recall.

Further, under the work product doctrine, the attorney-client privilege and pursuant to the provisions of " 2018.010, et seq., and 2034.210, et seq., Code of Civil Procedure, responding party declines to disclose materials or information protected by the attorney-client privilege, attorney work product doctrine or other legal privilege against disclosure or premature disclosure. No disclosures herein shall be considered a waiver of these privileges.

\\\

**INSPECTION DEMAND NO. 1**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. This request also invades the privacy of this responding party. Without waiving said objection, this responding party will allow the inspection of DIM's only cell phone and DIM's only laptop, however certain safeguards and limitations and security measures will have to be agreed to in order to protect non-relevant information or privacy information belonging to this responding party.

**DOCUMENT DEMANDS**

**DEMAND NO. 1**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails between responding party and AEI in connection with the events as set forth in Plaintiffs' lawsuit and DIM's lawsuit that are in this responding party's possession, custody or control.

**DEMAND NO. 2**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails between responding party and AEI in connection with the events as set forth in Plaintiffs' lawsuit and DIM's lawsuit that are in this responding party's possession, custody or control. No text messages exist between this responding party and Bruce Sterling, since they have never existed.

**DEMAND NO. 3**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails, receipt invoices and copies of payment from DIM to AEI which substantiates the oral agreement between DIM and AEI for AEI's musical artist booking services, that are in this responding party's possession, custody or control.

**DEMAND NO. 4**

Responding party is unable to comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. There no such documents responsive to this demand because said documents have never existed.

**DEMAND NO. 5**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails, receipt invoices and copies of payment from DIM to AEI which substantiates the oral agreement between DIM and AEI for AEI's musical artist booking services, that are in this responding party's possession, custody or control.

**DEMAND NO. 6**

Responding party is unable to comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. There no such documents responsive to this demand because said documents have never existed.

**DEMAND NO. 7**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection.

**DEMAND NO. 8**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection.

**DEMAND NO. 9**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection.

**DEMAND NO. 10**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection.

**DEMAND NO. 11**

Same question as No. 9 above. Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection.

**DEMAND NO. 12**

Defendant is unable to comply with Plaintiff's demand, with the exception of emails between DIM and Vv Hadley. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiff's demand. There no such documents responsive to this demand because said documents have never existed. However, there were emails between DIM and Vv Haldey that responding party will produce if responding party is able to locate.

**DEMAND NO. 13**

Responding party will comply with Plaintiffs' demand by producing all documents responsive to this request in responding party's possession, custody or control from or that were generated by AEI. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand.

**DEMAND NO. 14**

Responding party will comply with Plaintiffs' demand by producing all documents responsive to this request in responding party's possession, custody or control from or that were generated by AEI. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand.

**DEMAND NO. 15**

This responding party will produce all emails, receipt invoices and copies of payment from DIM to AEI which substantiates the oral agreement between DIM and AEI for AEI's musical artist booking services, that are in this responding party's possession, custody or control.

**DEMAND NO. 16**

Responding party will comply with Plaintiffs' demand by producing all documents responsive to this request in responding party's possession, custody or control from or that were generated by AEI. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand.

**DEMAND NO. 17**

Defendant is unable to comply with Plaintiff's demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiff's demand. There no such documents responsive to this demand because said documents have never existed. Monies that were expended for booking were by AEI.

**DEMAND NO. 18**

This responding party will produce copies of payment to third parties from Plaintiffs' funds in responding party's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 19**

This responding party will produce copies of the written agreements between DIM and Plaintiffs in responding party's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 20**

This responding party will produce emails between DIM and Plaintiffs in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

\\\

\\\

**DEMAND NO. 21**

This responding party will produce emails and the written agreements between DIM and Plaintiffs in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

**DEMAND NO. 22**

This responding party will produce emails and the written agreements between DIM and Plaintiffs in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

**DEMAND NO. 23**

This responding party will produce all documents in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

**DEMAND NO. 24**

This responding party will produce all documents in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

**DEMAND NO. 25**

Responding party is unable to comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiff's demand. There no such documents responsive to this demand because said documents have never existed.

**DEMAND NO. 26**

This responding party will produce all documents in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

**DEMAND NO. 27**

Demand does not exist in Plaintiffs' Request for Documents, Set No. 1.

**DEMAND NO. 28**

Demand does not exist in Plaintiffs' Request for Documents, Set No. 1.

**DEMAND NO. 29**

This responding party will produce all documents in responding party's possession, custody or control following a diligent search and inquiry that are responsive to this request.

\\\

\\\

Dated: April 20, 2017

LAW OFFICES OF JT FOX, APC

By: J.T. FOX, Attorney for
Defendant ROBIN DIMAGGIO

# VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing

**RESPONSES TO REQUEST FOR DOCUMENTS**

and know its contents.

☒ CHECK APPLICABLE PARAGRAPH

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner ☐ a director of __________ and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for__________________________, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on April 13, 2017 at Los Angeles County, California, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_______________________
ROBIN DIMAGGIO

**PROOF OF SERVICE**

STATE OF CALIFORNIA - COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action; my business address is 556 S. Fair Oaks Ave., No. 444, Pasadena, CA 91105.

On April 20, 2017, I served the foregoing documents described as: **RESPONSES TO REQUEST FOR DOCUMENTS, SET NO. 1** on the parties interested in this action, by ***United States Mail*** to:

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400 Fax: 213-891-1470

_X_ (Mail), I am readily familiar with the Law Offices of J.T. Fox & Associates' practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X_ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 20, 2017, at Pasadena, California.

J.T. Fox

**EXHIBIT H**

Just got to ASIA here is an email for you Kris let's keep moving forward I
extended the Deal until August 3rd. On OTI end.
I don't want to lose this deal it was to much work to put together and I will not
injure anymore relationships on this end and of COURSE with you!!! Which we
have a long term relationship that just started.

> Hello Robin,
>
> My deepest apologies for some of the imperfections on the agreement offer
but
> during our previous conversation I didn't want to proceed with any offers for a
> 3rd party purchaser to purchase talent artists.
>
> Which is why I wanted to discussed this further on Monday...
> But you explained to me that you needed to get theses offers out ASAP...
>
> I was able to speak with management on availability and the budgeted to
meet
> overall costs you explained to me.
>
> With that said, I've made the necessary corrections on the deal offer.
>
> Please notice that to proceed with this offer for the talent we can not distribute
any
> agreements until deposits are made for talent.
>
> The agreement that you received is our official deal agreement to get things
in motion.
>
> And because we have a great relationship with you and your production
company is
> the only reason why we are willing to subside the usual formalaties and
procedures.
>
> Although, which you are aware of since our last conversation...
> we normally do not even issue the deal offer agreement.
>

Dear Mr. Dimaggio,

Mr. Krasimir Dachev is in the deep mountain inspecting mineral deposit for one of his projects. There is no Internet. Please find below the message on behalf of Mr. Dachev.

Dear Robin,

Today our common friends surprised me that they are not ready to fulfill their obligations towards you till the end of this week. I have asked them to start working from Monday on. Today is Wednesday, I am away from Sofia and will be back in Friday. Obviously their muscles are weak and I will have to solve that task.

Please send me the logistics of the process (terms and amounts) to seek a solution and to avoid vitiation of the good idea. Everybody is promising around but there is no money yet.

I do not want to compromise you, the idea or myself.

Best regards,

Kris

**MTG-K.dachev** <kdachev@mtgbg.com> Aug 22
to USA–ROBIN, me

***Dear Robin,***

***I am asking you to consider the possibility of the event on October 1st 2016 to be a sort of a Rehearsal for the "real" one as proposed by you initially, which to be on June 1st 2017 (the official International Children Day). What do you think about this idea?***

***Regards,***

Khris

**R. DiMaggio** <thedimaggio@gmail.com> Aug 22

to dachev, me

Great Idea.
Lets start immediately

Sent from my Android
Excuse Google transcription errors-I often do not proofread them

 **R. DiMaggio** <thedimaggio@gmail.com> Aug 24

to me

Fyi read the thread

---------- Forwarded message ----------
From: "R. DiMaggio" <thedimaggio@gmail.com>
Date: Aug 24, 2016 11:51 PM
Subject: Re: P4YP4M
To: "Alexander Panev" <apanev@mtgbg.com>, "Svilosa-K. Dachev" <kdachev@svilosa.bg>
Cc:

Alex
I just talked to Kris last night and he knows we are keeping the funds until wed when i have new contracts for June 1st.
Please let ne know if myself or you are mis communicating?
Best
Robin

To: "Alexander Panev" <apanev@mtgbg.com>
Cc: "Svilosa-K. Dachev" <kdachev@svilosa.bg>

I will have all the questions reworded to your specifications because what you are asking for is fair.
However we need to show them a deposit as they wake up in a few hrs.

I am on stand by and ready to finilaze this today.
Just so you know where I am is 930pm Wednesday evening.
Im a day ahead of LA and NY.

Kris we have to talk about the song for Jay.
Everyone is telling me they are coming to LA to record it but that has to be discussed with you and I first.
As always my respect and loyalty.

Im actually going to try to sleep for a few hrs.

**From:** R. DiMaggio [mailto:thedimaggio@gmail.com]
**Sent:** Wednesday, August 3, 2016 12:32 PM
**To:** Alexander Panev
**Cc:** Svilosa-K. Dachev
**Subject:** RE: P4YP4M

I will have all the questions reworded to your specifications because what you
are asking for is fair.
However we need to show them a deposit as they wake up in a few hrs.

I am on stand by and ready to finilaze this today.
Just so you know where I am is 930pm Wednesday evening.
Im a day ahead of LA and NY.

Kris we have to talk about the song for Jay.
Everyone is telling me they are coming to LA to record it but that has to be
discussed with you and I first.
As always my respect and loyalty.

Im actually going to try to sleep for a few hrs.

Sent from my Android
Excuse Google transcription errors-I often do not proofread them

From: "R. DiMaggio" <thedimaggio@gmail.com>
Date: Aug 16, 2016 8:28 AM
Subject:
To: "Svilosa-K. Dachev" <kdachev@svilosa.bg>
Cc:


Every managers from,
Lenny Kravitz
Alecia Keys
Earth wind and fire
CALVIN Harris

Have all contacted my team asking why in the world are some idiots from Bulgaria counter asking for the show on Oct 1st?

Its really embarrassing on ALL fronts.

I am here trying to get you artists and i have dumb fucking morrons counter asking.
This is why Bulgaria mentality is where its at,
You Mr Dachev are an amazing man who i respect and feel there could of been potential to actually save ths show but because of the idiots involved you will not be able to achieve what you and I wanted.
To many inquiries from to many unstable sources of people asking about the same people. You will end up with very small names.

Now you understand why i asked not to deal with the people involved and only be involved with you.

Your idiots have made this show impossible to happen, i dont care if theres 50 million dollars the taste is bad in everyones mouth out here, i just wished you would of let me handle this like ive done for decades.
With 100% success.
Sad day for Sofia.

We should get on the phone,
Whiever did the demands made sure to kill my deal as no one wants to even hear from US again regarding Sofia.
They will no longer respect my discount offers that i had gotten you today of all days.
I wole up to embarrassing emails,
This has cost me incredible nobility ive built in the last 25 years.

Im extremely pissed!
Ill cool down and call you.
Its done on this side, notbing else i can do to save this.
You obviously have the Great promoters of Bulgria asking for talent, they can come up with it.

**EXHIBIT I**

FOR YOUR PROTECTION SAVE THIS COPY

citibank

Citibank, N.A.

OFFICIAL CHECK

SERVICE INSTRUCTIONS

PLEASE CONSULT A CITIBANK ASSOCIATE OR YOUR CLIENT MANUAL FOR A DESCRIPTION OF THE BANK'S POLICY CONCERNING PLACING A STOP PAYMENT REQUEST ON THIS INSTRUMENT AND THE FEE ASSOCIATED WITH THAT REQUEST.

DATE

PAY

TO THE ORDER OF

NAME OF REMITTER
ADDRESS

NON NEGOTIABLE

TERMS

KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.

REMITTER COPY

**EXHIBIT J**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Tuesday, May 02, 2017 12:51 PM
**To:** Douglas Painter
**Subject:** RE: DiMaggio

Doug,

Robin said he reordered his bank records. He lost his last statements. I do not know what to expect. Apparently he is having surgery on May 10, 2017.

I have asked him to comb his files again and try to find any additional documents that may be relevant to the case. If anything more comes in, I will add it to the drop box.

Also, please let me know if I should send supplemental responses to indicate the correct case number. I can always have Robin sign a short declaration to clear up the ambiguity.

Sincerely,

JT

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: RE: DiMaggio
From: Douglas Painter <dpainter@steinbrecherspan.com>

Date: Tue, May 02, 2017 12:47 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>

Ok thanks.

---

**From:** jt@jtfoxlaw.com [mailto:jt@jtfoxlaw.com]
**Sent:** Tuesday, May 02, 2017 12:47 PM
**To:** Douglas Painter
**Subject:** RE: DiMaggio

Doug,

Nothing has been added since last week.

Sincerely,

jt



J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM &
www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is
only for the use of the recipient(s) named above. This message, and its attachments, may contain information
that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended
recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the
intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended
recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this
communication is strictly prohibited. If you have received this e-mail in error, please notify the sender
immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: RE: DiMaggio
From: Douglas Painter <dpainter@steinbrecherspan.com>
Date: Tue, May 02, 2017 12:46 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>

Is this the same folder that was circulated a while back, or are there new documents? I managed to get into the dropbox that Brooke originally sent.

---

**From:** jt@jtfoxlaw.com [mailto:jt@jtfoxlaw.com]
**Sent:** Tuesday, May 02, 2017 12:44 PM
**To:** Douglas Painter
**Cc:** Lisa Atwood
**Subject:** RE: DiMaggio

Doug,

I tried granting you access to the drop box file again. Would you mind checking to see if you now have access?

Sincerely,

JT



J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: DiMaggio
From: Douglas Painter <dpainter@steinbrecherspan.com>
Date: Mon, May 01, 2017 1:44 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>
Cc: Lisa Atwood <latwood@steinbrecherspan.com>

JT,

I am reviewing Me. DiMaggio's responses to interrogatories and there is repeated reference to a case number YC071579. I looked up that case and it is entitled JOE GARZA v. POWER ELIXIR, LLC. Is that the correct case number you intended to use?

Also, I am unable to access the documents you said you were going to serve through Dropbox. Please contact my assistant Lisa with instructions on how to get those documents.

Thanks.

Doug

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400  Fax: 213-891-1470

dpainter@steinbrecherspan.com
www.steinbrecherspan.com

*This email may contain material that is confidential, attorney-client privileged and/or work-product protected, and is solely for the use of the intended recipient. Any review, reliance or distribution by others, or forwarding without express permission, is strictly prohibited. If you are not the intended recipient of this email, please contact the sender immediately and delete all copies. Thank you.*

**EXHIBIT  K**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON D.C. | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2350
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

May 4, 2017

**VIA EMAIL AND U.S. MAIL**

J.T. Fox, Esq.
Law Offices of JT Fox
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105

***Dachev v. DiMaggio***
***Responses to Document Requests and "Production" Thereto***

Dear Mr. Fox:

Pursuant to Section 2016.040 of the California Code of Civil Procedure,[1] this letter initiates the meet-and-confer process concerning Defendant Robin DiMaggio's ("Mr. DiMaggio's"[2]) April 20, 2017 Responses ("Responses") to Plaintiffs' Request for Inspection and Production of Documents, Set No. One ("Requests"). As discussed below, the Responses, and Mr. DiMaggio's failure to produce rudimentary documents responsive to the Requests, are grossly non-compliant with the Code. After reviewing this letter, please let us know whether your clients will provide supplemental responses, a Code-compliant production and permit the device inspection protocol as described herein; if your clients decline to do so, please be advised that Plaintiffs will have no choice but to file the appropriate motions to compel and seek monetary sanctions.

Mr. DiMaggio's Responses to Plaintiffs' Request for Inspection and Production and Production Thereon

As a general matter, the scope of permissible discovery is broad. A party may obtain discovery regarding any non-privileged matter that is "relevant to the subject matter involved in the pending action…" Code Civ. Proc. § 2017.010. Discovery will be allowed even if the evidence sought may ultimately be inadmissible. *Id.; Volkswagen of America v. Superior Ct. (Rusk)*, 139 Cal. App. 4th 1481, 1490-91 (2006) (noting that "admissibility is not prerequisite to discovery"). Under California's discovery statutes, "the party seeking discovery is entitled to substantial leeway." *Id.* at 1497.

[1] Unless otherwise noted, all statutory section references and references to the "Code" go to the California Code of Civil Procedure.
[2] As used herein, the term "Mr. DiMaggio" refers to Robin Mr. DiMaggio as well as his company, DiMaggio International, Inc.

Plaintiffs' Requests seek basic information going to the core of their claims. Specifically, Plaintiffs set forth tailored categories of documents going to Mr. DiMaggio's communications with AEI/Bruce Sterling, bank statements and other documents showing monies allegedly spent on the Charity Concert, documents relating to what (if anything) was done to secure artists for the Charity Concert and agreements and communications relating to the Charity Concert. Mr. DiMaggio's responses to the Requests narrow their scope to the point of making them meaningless and his grossly incomplete production suggests bad faith.

*Request nos. 1-6*

These requests seek communications and agreements from 2012 to the present between Mr. DiMaggio and AEI and/or its representative, Bruce Sterling. Mr. DiMaggio's responses thereto, however, contain qualifications and limitations as to what he is agreeing to produce. *See* responses to nos. 1, 2 (limiting to production to "emails in connection with the events as set forth in [Plaintiffs' and [Mr.] DiMaggio's] lawsuit[]" *and* nos. 3, 5 (limiting production to "emails, receipt invoices and copies of payment . . . which substantiates the oral agreement between [DiMaggio] and AEI"). These attempted limitations are evasive, self-serving and in violation of the Code.

Mr. DiMaggio is alleging that AEI is withholding funds tendered by Plaintiffs for the Charity Concert. He also claims to have given AEI $600,000 for the Charity Concert *before* Plaintiffs gave him the money to do so and admits a prior relationship with Mr. Sterling. This raises the obvious possibility that funds given to AEI (if any) were for matters unrelated to this dispute, and Plaintiffs have the right to conduct discovery into that possibility which, by necessity, includes Mr. DiMaggio's prior dealings with AEI. There is no claim that gathering AEI documents responsive to these requests could rise to the level of burden recognized by the Code as a legitimate ground for non-production.

Plaintiffs request the service of an amended response by May 12, 2017 in which the limitations referenced above are stricken and replaced by the statement "Subject to the General Objections, Responding Party will produce the documents responsive to this request." Plaintiffs also seek Mr. DiMaggio's agreement that a complete production will be tendered to our firm on or before May 12, 2017.

*Request nos. 7, 8*

These requests seek bank statements (no. 7) and canceled checks (no. 8) from January 1, 2015 to the present for any account or expenditure related to the Charity Concert. Although Mr. DiMaggio agreed to produce these documents, he has failed to do so; in fact, he has only submitted copies of five receipts for alleged cashier's checks (which may or may not have been cashed).

In various conversations and emails over the course of the last five months in which you and I have discussed the need for financial documentation, you have repeatedly stated that Mr. DiMaggio has cancer (but you do not know what kind) or is undergoing a medical procedure (but you do not know what it is). Please note that whatever health issues Mr. DiMaggio may or may not be experiencing, obtaining bank statements and canceled checks for such a limited time-frame is an extremely simple matter that can usually be completed online or by picking up the phone. Regardless, there is no legitimate excuse for not producing these documents, and plaintiffs request that all documents responsive to request nos. 7 and 8 be produced no later than May 12, 2017.

*Request nos. 9, 11*

These requests seek documents showing any expenditures made by Mr. DiMaggio related to the Charity Concert. All that was produced, however, are an invoice from AEI and copies of 5 receipts for official Citibank checks made out to AEI/Bruce Sterling. No other invoices, bank statements or other proof of payment were produced. Plaintiffs request that all documents responsive to these requests be produced no later than May 12, 2017.

*Request no. 10*

This request seeks documents associated with what appears to be a copy of a $600,000 bank check made out to AEI/Bruce Sterling. However, no bank documents showing the source of these funds were produced, as requested. Further, the copy of the alleged receipt for the $600,000 cashier's check is distinctly different than the copies for the other four receipts and is partially illegible. Plaintiffs request the production of all requested documents, as well as a legible copy of this receipt, on or before May 12, 2017.

*Request nos. 12, 21, 23; email format issue*

These requests seek communications between Mr. DiMaggio and any artist representative, agent or manager (no. 12) or any plaintiff (no. 21), as well as any documents related to the charity concert. Mr. DiMaggio has only produced *six* email exchanges, in what appears to be an effort to produce only select documents. The production does not even include the emails you informally sent me several months ago, and of course, communications between DiMaggio and plaintiffs, AEI and/or Sterling (or any other alleged persons acting on behalf of any artist) would be responsive. Further, on some of the six email exchanges produced, entire headers are missing.

Plaintiffs request that Mr. DiMaggio undertake a thorough and good faith effort to produce all responsive documents, including emails, and tender a complete production on or before May 12, 2017.

In addition, Plaintiffs request that for all produced emails, they be produced electronically on a thumb drive in *native* format so as to include all metadata and header information.

*Request nos. 13, 14, 16*

These requests call for all agreements with, offers to and bookings of any artist associated with the Charity Concert. In his responses, Mr. DiMaggio limits production to documents in his "possession, custody or control or that were generated by AEI." We do not understand this limitation, as responsive documents in Mr. DiMaggio's possession, custody or control must be produced regardless of whether they were generated by AEI. Plaintiffs request that an amended response be served by May 12, 2017 deleting this limitation and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request."

*Request no. 15*

This request calls for all documents related to Mr. DiMaggio's efforts to secure artists for the Charity Concert. His response limits production to documents "which substantiate[] the oral

agreement between DIM and AEI." This limitation improperly narrows the scope of the request; Plaintiffs request that an amended response be served by May 12, 2017 deleting the limitation and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request."

*Request no. 17*

This request calls for all documents related to any monies spent, held or deposited for the purpose of booking any artist for the Charity Concert. Mr. DiMaggio's response states, among other things, that "such documents have never existed." This makes no sense, since DiMaggio is claiming he gave AEI monies for the purpose of booking artists for the Charity Concert and has already produced an alleged invoice. Plaintiffs request that an amended response be served by May 12, 2017 deleting all limitations and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request."

*Request no. 18*

This request calls for documents that account for the monies Plaintiffs gave to him. Mr. DiMaggio limits the request by stating he will produce "copies of payment to third parties from Plaintiffs' funds." The request is broader than the limitation; Plaintiffs request that an amended response be served by May 12, 2017 deleting all limitations and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request."

*Request nos. 19, 20*

These requests call for documents (no. 19) and agreements (no. 20) related to the possibility of any alleged 2017 concert in Bulgaria. Mr. DiMaggio limits the scope of the requests by stating he will produce certain "agreements" and "emails between [him] and Plaintiffs." The requests, however, are broader than these limitations; Plaintiffs request that amended responses be served by May 12, 2017 deleting all limitations and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request."

*Request no. 25*

This request seeks documents related to Marchelo Djotolov. Mr. DiMaggio's response states, among other things, that "such documents have never existed." Plaintiffs request that an amended response be served deleting all limitations and simply stating "Subject to the General Objections, responding party will produce all documents responsive to this request." (If Mr. DiMaggio is not in the possession, custody or control of certain documents, he need not produce them, but a limitation on the scope of the request is improper.)

*Inspection Demand no. 1*

In response to Plaintiffs' request to inspect electronic devices, Mr. DiMaggio states that he will permit inspection of his only cell phone and only laptop, subject to certain safeguards, limitations and security measures. Please confirm that Mr. DiMaggio has not used any other electronic devices in

connection with the Charity Concert or the documents requested. Assuming that is the case, here is my proposal for the inspection protocol.

Plaintiffs have retained Bruce Pixley, a forensic computer specialist, as their inspector professional. In order to preserve Mr. DiMaggio's privacy and avoid the production of purely personal emails, Mr. Pixley will make forensic images of Mr. DiMaggio's cell phone and laptop, which should not take more than a half-day, and will subsequently conduct searches through all accounts and databases used thereunder, using the following search terms:

AEI
Sterling
Foundation
Peace
DIM
DII
DiMaggio International
Charity
Sofia
Bulgaria
Rich America
Citibank
Cashier's
Bank
Wire
Invoice
Receipt
Contract
Agreement
Offer
Artist
Perform
Performance
Book
Booking
Binder
Trust
Vv Hadley
Metals
Svilosa
Dachev & Associates
RISE
All nicknames, names and abbreviated terms associated with:
Alexander Panev
Krasimir Dachev
Bruce Sterling
Jay Botev

Marcello Djotolov

All artists that DiMaggio discussed with Plaintiffs as possibilities for the Charity Concert, including but not limited to:

Jennifer Lopez
Roger Waters
John Legend
Christina Agüilera
Robbi Williams
Don Felder
Don Henley
Adele
Stevie Wonder
Mick Jagger
Mariah Carey
Justin Timberlake
Rihanna
Lady Gaga
Maroon 5
Snoop Dog
R. Stewart
Slash
Bruno Mars
Earth Wind & Fire
Rod Stewart
KISS
Johnny Depp
Blondie
The Beach Boys

Mr. DiMaggio will provide to Mr. Pixley, in confidence, all passwords necessary to conduct the above searches. After conducting the searches, Mr. Pixley will then provide both sides with the native electronic versions of the documents resultant from his search, with Mr. DiMaggio reserving the right to seek to obtain confidentiality or other protection for any particular documents that he, in good faith, believes are not subject to discovery. Mr. Pixley will not provide Plaintiffs with any other documents from these devices and associated accounts and, at the conclusion of the case, will erase the forensic images. Please let me know if this inspection protocol is acceptable.

For the reasons stated above, Plaintiffs request that Mr. DiMaggio serve amended responses and all documents requested above no later than May 12, 2017, and agree to device inspection as outlined above on a date convenient to you but no later than May 17, 2017. If the parties cannot reach agreement on the above terms, Plaintiffs will have no choice but to file a Motion to Compel and seek appropriate sanctions for Mr. DiMaggio's declination to cooperate in discovery.

Main Document Page 148 of 248

J.T. Fox, Esq.
May 4, 2017
Page 7

Thank you.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

**EXHIBIT  L**

Mr. J.T. Fox, Esq., SBN 195063
Law Offices of JT Fox & Associates, APC
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax

Attorney for Defendants,
ROBIN DIMAGGIO & DIMAGGIO INTERNATIONAL, INC.

RECEIVED
MAY 29 2017
By

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

KRASIMIR DACHEV, ET AL.,

Plaintiff,

v.

ROBIN DIMAGGIO, ET AL.,

Defendants.

Case No.: BC645027

**DEFENDANT'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR DOCUMENTS**

[Set No. One]

Lead Related Case:
YC071579 (Van Nuys Case)

PROPOUNDING PARTY: PLAINTIFFS

RESPONDING PARTY: DEFENDANT ROBIN DIMAGGIO

SET NO.: One

Defendant hereby provides supplemental responses to Plaintiff's Request for Documents, Set No. 1, as follows:

**I**

**RESERVATION OF RIGHT TO SUPPLEMENT, MODIFY OR ALTER RESPONSES**

Additional discovery and further investigation is ongoing and additional documents as well as additional facts may later be discovered by responding party that pertain to the various issues and subject matters raised in the following discovery questions. Because of that possibility, responding

party reserves its right to introduce in this action evidence based upon or derived from subsequently discovered facts, witnesses and/or documents. Responding party expressly reserves the right to conduct further investigation into the facts and circumstances surrounding the subject matter of this litigation and the causes of action in Plaintiff's complaint in that the areas of inquiry set forth in these discovery questions involve information peculiarly within the knowledge of either Plaintiff, or third parties with whom responding party has not had an opportunity to engage in discovery. To the extent that further investigation and discovery uncover additional documents and/or facts and/or witnesses pertaining to the subject matters referred to in the interrogatories, responding party expressly reserves its respective right to supplement, modify or alter any of its responses set forth herein.

Responding party's responses herein are based only upon current information and documents known to this responding party and disclose only those contentions which presently occur to such responding party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the contentions herein set forth. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently discovered fact or facts which responding party may later obtain or recall.

Further, under the work product doctrine, the attorney-client privilege and pursuant to the provisions of '' 2018.010, et seq., and 2034.210, et seq., Code of Civil Procedure, responding party declines to disclose materials or information protected by the attorney-client privilege, attorney work product doctrine or other legal privilege against disclosure or premature disclosure. No disclosures herein shall be considered a waiver of these privileges.

**INSPECTION DEMAND NO. 1**

Responding party will comply with this demand, however the parties' will need to mutually agree to the search terms for Plaintiffs' expert to ensure the privacy of responding party. Further, responding party only has one cell phone and one laptop, and no other electronic devices.

**DOCUMENT DEMANDS**

**DEMAND NO. 1**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails and letters between responding party and AEI in connection with the events as set forth in Plaintiffs' lawsuit and DIM's lawsuit that are in this responding party's possession, custody or control. Responding party is also producing emails between responding party and AEI from past business dealings between responding party and AEI. Responding party does not have any text messages between responding party and AEI in responding party's possession, custody or control because they have never existed.

**DEMAND NO. 2**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will

produce all emails and letters between responding party and AEI in connection with the events as set forth in Plaintiffs' lawsuit and DIM's lawsuit that are in this responding party's possession, custody or control. Responding party is also producing emails between responding party and AEI from past business dealings between responding party and AEI. Responding party does not have any text messages between responding party and AEI in responding party's possession, custody or control because they have never existed.

**DEMAND NO. 3**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails, letters, receipt invoices and copies of payment from DIM to AEI which substantiates the oral agreement between DIM and AEI for AEI's musical artist booking services, that are in this responding party's possession, custody or control. Responding party is also producing all other contracts, letters and emails related to other AEI musical booking services that were going to be provided by AEI to DIM for other musical events that are in DIM's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 4**

Responding party is unable to comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. There no such documents responsive to this demand because the agreements between DIM and AEI were memorialized in writing between DIM and AEI. This responding party will produce all emails, letters, receipt invoices and copies of payment from DIM to AEI which substantiates the agreement between DIM and AEI for AEI's musical artist booking services related to this lawsuit, that are in this responding party's possession, custody or control. Responding party is also producing all other contracts, letters and emails related to other AEI musical booking services that were going to be provided by AEI to DIM for other musical events that are in DIM's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 5**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails, letters, receipt invoices and copies of payment from DIM to AEI which substantiates the agreement between DIM and AEI for AEI's musical artist booking services related to this lawsuit, that are in this responding party's possession, custody or control. Responding party is also producing all other contracts, letters and emails related to other AEI musical booking services that were going to be provided by AEI to DIM for other musical events that are in DIM's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 6**

Objection. This demand calls for evidence that is neither relevant to this litigation nor calculated to lead to the discovery of admissible evidence. Without waiving said objection, this responding party will produce all emails, letters, receipt invoices and copies of payment from DIM to AEI which substantiates the agreement between DIM and AEI for AEI's musical artist booking services related to this lawsuit, that are in this responding party's possession, custody or control. Responding party is also producing all

other contracts, letters and emails related to other AEI musical booking services that were going to be provided by AEI to DIM for other musical events that are in DIM's possession, custody or control following a diligent search and inquiry.

**DEMAND NO. 7**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection. Responding party has ordered a copy of DiMaggio International, Inc.'s bank statements from its' financial institution. Confirmation of this request for bank statements has already been provided to Plaintiffs' counsel. Upon receipt of said bank statements, responding party will provide a copy to Plaintiffs' counsel.

**DEMAND NO. 8**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection. Responding party has already produced all copies of checks/cashier's checks and/or payments and/or receipts that it had in its' possession, custody or control related to the Charity Event. Responding party has ordered a copy of DiMaggio International, Inc.'s bank statements from its' financial institution. Confirmation of this request for bank statements has already been provided to Plaintiffs' counsel. Upon receipt of said bank statements, responding party will provide a copy to Plaintiffs' counsel.

**DEMAND NO. 9**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. Plaintiff will produce all documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection. Responding party has ordered a copy of DiMaggio International, Inc.'s bank statements from its' financial institution. Confirmation of this request for bank statements has already been provided to Plaintiffs' counsel. Upon receipt of said bank statements, responding party will provide a copy to Plaintiffs' counsel.

**DEMAND NO. 10**

Responding party will comply with Plaintiffs' demand. A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand. All documents or things in the demand category in responding party's possession, custody or control responsive will be produced for inspection. Responding party has ordered a copy of DiMaggio International, Inc.'s bank statements from its' financial institution. Confirmation of this request for bank statements has already been provided to Plaintiffs' counsel. Upon receipt of said bank statements, responding party will provide a copy to Plaintiffs' counsel. Responding party will also try to send to Plaintiffs' counsel a better copy of the subject $600,000 cashier's check.

**DEMAND NO. 11**

Same response as to demand no. 9 above.

**DEMAND NO. 12**

A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiff's demand. The only documents in responding party's possession, custody or control that is responsive to this demand are emails between DIM and Vv Haldey that responding party will produce. Responding party will also provide a thumb drive for all emails, including headers. Responding party is also allowing Plaintiffs to inspect responding party's laptop.

**DEMAND NO. 13**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 14**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 15**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 16**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 17**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 18**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 19**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 20**

Subject to General Objections, responding party will produce all documents responsive to this request.

**DEMAND NO. 21**

A diligent search and a reasonable inquiry has been made by responding party in an effort to comply with Plaintiff's demand. Subject to General Objections, responding party will produce all documents responsive to this request. Responding party will also provide a thumb drive for all emails, including

headers, as well as a drop box file with all documents being produced. Responding party is also allowing Plaintiffs to inspect responding party's laptop.

**DEMAND NO. 23**

A diligent search and a reasonable inquiry has been made by responding party in an effort to comply with Plaintiff's demand. Subject to General Objections, responding party will produce all documents responsive to this request. Responding party will also provide a thumb drive for all emails, including headers, as well as a drop box file with all documents being produced. Responding party is also allowing Plaintiffs to inspect responding party's laptop.

**DEMAND NO. 25**

A diligent search and a reasonable inquiry has been made in an effort to comply with Plaintiffs' demand and responding party has been unable to locate any documents in its' possession, custody or control.

Dated: May 19, 2017

LAW OFFICES OF JT FOX, APC

By: J.T. FOX, Attorney for
Defendant ROBIN DIMAGGIO

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing

**SUPPLEMENTAL RESPONSES TO REQUEST FOR DOCUMENTS**

and know its contents.

☒ CHECK APPLICABLE PARAGRAPH

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner ☐ a director of __________ and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for__________________________, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 17, 2017 at Los Angeles County, California, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

______________________________
ROBIN DIMAGGIO

**PROOF OF SERVICE**

STATE OF CALIFORNIA - COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action; my business address is 556 S. Fair Oaks Ave., No. 444, Pasadena, CA 91105.

On May 19, 2017, I served the foregoing documents described as: **SUPPLEMENTAL RESPONSES TO REQUEST FOR DOCUMENTS, SET NO. 1** on the parties interested in this action, by ***United States Mail*** to:

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400 Fax: 213-891-1470

_X_ (Mail), I am readily familiar with the Law Offices of J.T. Fox & Associates' practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X_ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on May 19, 2017, at Pasadena, California.

J.T. Fox

**EXHIBIT  M**

001/R1/04F013

Citibank CBO Services 731
P.O. Box 769018
San Antonio, Texas 78245

DIMAGGIO INTERNATIONAL, INC.
5737 KANAN RD. STE. 117
AGOURA HILLS CA 91301

000
CITIBANK, N. A.
**Account**
**204775621**
**Statement Period**
**Aug 1 - Aug 31, 2016**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

Page 1 of 2

## CitiBusiness® ACCOUNT AS OF AUGUST 31, 2016

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$87.00** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SERVICE CHARGE SUMMARY FROM JULY 1, 2016 THRU JULY 31, 2016

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING # 204775621** | | | |
| Average Daily Collected Balance | | | $1,672.55 |
| DEPOSIT SERVICES | | | |
| MONTHLY MAINTENANCE FEE | 1 | 12.0000 | 12.00 |
| CHECKS, DEP ITEMS/TICKETS, ACH | 2 | .4000 | 0.80 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$12.00** |
| **Net Service Charge** | | | **$12.00** |

Charges debited from account # 204775621

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**
**204775621**

Beginning Balance: $36.89
Ending Balance: $87.00

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/05 | WIRE TRANSFER<br>WIRE FROM SVILOZ A AD Aug 05 | | 750,000.00 | 750,036.89 |
| 08/08 | ELECTRONIC CREDIT<br>ASCAP INTWR ROYL 1578883 Aug 08 | | 67.64 | 750,104.53 |
| 08/08 | SERVICE CHARGE<br>INCOMING WIRE FEE F01621801AED01 Aug 08 | 14.00 | | 750,090.53 |
| 08/09 | WITHDRAWAL | 750,000.00 | | 90.53 |
| 08/09 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 12.00 | | 78.53 |
| 08/11 | DEPOSIT | | 54.00 | 132.53 |
| 08/22 | DEBIT CARD PURCH Card Ending in 3338<br>26BWT2Y2 3338 Aug 22<br>YUM YUM DONUTS FRA AGORA CA 16232 | 7.98 | | 124.55 |
| 08/22 | DEBIT CARD PURCH Card Ending in 3338<br>KQHKH66S 3338 Aug 22<br>AGOURA S FAMOUS DELI & AGORA HILLS CA 16232 | 15.75 | | 108.80 |
| 08/22 | DEBIT CARD PURCH Card Ending in 3338<br>1SP4MC16 3338 Aug 22<br>GREEN BASIL THAI RESTA CALBASAS CA 16232 | 21.80 | | 87.00 |
| | **Total Debits/Credits** | **750,071.53** | **750,121.64** | |

DIMAGGIO INTERNATIONAL, INC.

Account: 204775621 Page 2 of 2
Statement Period: Aug 1 - Aug 31, 2016

001/R1/04F013

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
| --- | --- | --- |
| Checking | 877-528-0990*<br>(For Speech and Hearing Impaired Customers Only TDD: 800-945-0258) | Citibank, N.A.<br>P.O. Box 790184<br>St Louis, MO 63179 |

For change in address, call your account officer or visit your branch.

* To ensure quality service, calls are randomly monitored.

© 2016 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

[illegible]

Relationship Summary:

| | |
|---|---|
| Checking | [illegible] |
| Savings | [illegible] |
| Checking Plus | [illegible] |

[illegible]

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| [illegible] | | | |
| Average Daily Collected Balance | | | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| Total Charges for Services | | | [illegible] |
| Net Service Charge | | | [illegible] |

[illegible]

[illegible]

Beginning Balance: [illegible]
Ending Balance: [illegible]

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | | [illegible] |

[illegible]

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | [illegible] | Citibank, N.A. [illegible] |

[illegible]

**EXHIBIT  N**

**Lisa Atwood**

| | |
|---|---|
| **From:** | Douglas Painter |
| **Sent:** | Wednesday, May 24, 2017 1:48 PM |
| **To:** | Jt Fox |
| **Cc:** | Robert Span; Lisa Atwood |
| **Subject:** | RE: Dachev v. DiMaggio (Outstanding Discovery) |

JT,

As I am sure you are aware, your client appears to be playing more games, producing only two bank statements (August and September) issued *after* the alleged 7/14/16 $600K payment to AIG; further, the August statement shows only the $750K wired to him (which he quickly took); the September statement shows an opening balance of $87 and a closing balance of zero.

Please advise immediately as to whether motion practice is needed to get Mr. DiMaggio to produce the June and July bank statements and other financial documents he has been promising for the last 5 months.

Thanks,

Doug

---

**From:** Jt Fox [mailto:jt@jtfoxlaw.com]
**Sent:** Wednesday, May 24, 2017 12:20 PM
**To:** Douglas Painter
**Cc:** Lisa Atwood
**Subject:** Re: Dachev v. DiMaggio (Outstanding Discovery)

I'll call you after lunch. Sorry for delay. Jt

Sent from my iPhone

On May 24, 2017, at 12:00 PM, Douglas Painter <dpainter@steinbrecherspan.com> wrote:

> JT – again, I have not heard from you re the appointed time you set to meet and confer, as you requested. I think this may be the third telephonic no-show including the one from the prior dispute. If you'd like to talk, I'm around. Doug
>
> ---
>
> **From:** jt@jtfoxlaw.com [mailto:jt@jtfoxlaw.com]
> **Sent:** Tuesday, May 23, 2017 5:40 PM
> **To:** Douglas Painter
> **Cc:** Lisa Atwood
> **Subject:** RE: Dachev v. DiMaggio (Outstanding Discovery)
>
> Anytime in the morning would be great!
> <image001.png>
> **J.T. Fox, Esq.**
> **LAW OFFICES OF J.T. FOX & ASSOCIATES,**
> **A Professional Corporation**

556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: Re: Dachev v. DiMaggio (Outstanding Discovery)
From: Douglas Painter <dpainter@steinbrecherspan.com>
Date: Tue, May 23, 2017 2:32 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>
Cc: Lisa Atwood <latwood@steinbrecherspan.com>

Today is a bit tough. Are you available tomorrow and if so what time?

Get Outlook for iOS

---

From: jt@jtfoxlaw.com
Sent: Tuesday, May 23, 2017 2:27 PM
Subject: RE: FW: Dachev v. DiMaggio (Outstanding Discovery)
To: Douglas Painter <dpainter@steinbrecherspan.com>
Cc: Lisa Atwood <latwood@steinbrecherspan.com>

Doug,

Just tried you. Please call me when you are free.

Thanks,

JT

<image001.png>
J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM

Websites:www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: FW: Dachev v. DiMaggio (Outstanding Discovery)
From: Douglas Painter <dpainter@steinbrecherspan.com>
Date: Mon, May 22, 2017 2:12 pm
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>
Cc: Lisa Atwood <latwood@steinbrecherspan.com>

JT – at 2:00 p.m., as we had agreed, I called you to participate in your meet-and-confer obligation concerning Mr. DiMaggio's apparent desire to file a Motion to Strike all punitive damages allegations from the First Amended Complaint. You were not available. From 2:20 to 3:45 today I will be accessible on my cell (310-489-1952), so please call me within that time period. In an effort to narrow the parties' disagreements relating to punitive damages, I attach a Notice of Errata that has been filed today removing the inadvertent stray sentence under "Prayer for Relief" seeking puntiives for negligent misrepresentation. Doug

---

**From:** Douglas Painter
**Sent:** Sunday, May 21, 2017 9:25 AM
**To:** 'Jt Fox'
**Subject:** RE: Dachev v. DiMaggio (Outstanding Discovery)

Sounds good – talk to you then

---

**From:** Jt Fox [mailto:jt@jtfoxlaw.com]
**Sent:** Sunday, May 21, 2017 9:24 AM
**To:** Douglas Painter
**Subject:** Re: Dachev v. DiMaggio (Outstanding Discovery)

How about 2pm?

Sent from my iPhone

On May 21, 2017, at 9:15 AM, Douglas Painter <dpainter@steinbrecherspan.com> wrote:

> Okay. What time are we conferring tomorrow re the motion Mr. DiMaggio wants to file? Early afternoon would be good for me.

**From:** Jt Fox [mailto:jt@jtfoxlaw.com]
**Sent:** Sunday, May 21, 2017 9:14 AM
**To:** Douglas Painter
**Subject:** Re: Dachev v. DiMaggio (Outstanding Discovery)

Let's just keep the 9th. I'll hire an appearance lawyer to go to with Robin.

Sent from my iPhone

On May 21, 2017, at 5:58 AM, Douglas Painter <dpainter@steinbrecherspan.com> wrote:

> Can you please give me a date falling before June 9.
>
> Get Outlook for iOS
>
> ---
>
> From: Jt Fox <jt@jtfoxlaw.com>
> Sent: Saturday, May 20, 2017 5:44 PM
> Subject: Re: Dachev v. DiMaggio (Outstanding Discovery)
> To: Douglas Painter <dpainter@steinbrecherspan.com>
>
> Doug,
>
> I I just realized that I am out of town June 8 & June 9th. Would you mind if we have the laptop inspection the following week? Robin and I are pretty much available any day the following week.
>
> Thanks
>
> Jt
>
> Sent from my iPhone
>
> On May 20, 2017, at 12:58 PM, Douglas Painter <dpainter@steinbrecherspan.com> wrote:
>
> > That's correct. I have not turned to the others and

appreciate the extension to July 14.

Get Outlook for iOS

---

From: jt@jtfoxlaw.com
Sent: Saturday, May 20, 2017 12:15 PM
Subject: RE: Dachev v. DiMaggio (Outstanding Discovery)
To: Douglas Painter <dpainter@steinbrecherspan.com>

Doug,

I just want to confirm. I only received one meet and confer letter for the document responses. I am not aware of any other meet and confer letters. Can you please confirm if there are any other meet and confer letters out there and whether further supp discovery responses are due. I only received the doc meet and confer letter in the mail.

Sincerely,

JT

<image001.png>

**J.T. Fox, Esq.**
**LAW OFFICES OF J.T. FOX & ASSOCIATES,**
**A Professional Corporation**
**556 S. Fair Oaks Ave., No. 444**
**Pasadena, CA 91105**
**(888) 750-5530 Office**

**EXHIBIT  O**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Wednesday, May 24, 2017 2:07 PM
**To:** Douglas Painter
**Cc:** Robert Span; Lisa Atwood
**Subject:** RE: Dachev v. DiMaggio (Outstanding Discovery)

Doug,

I just forwarded your email to my client, so that he knows the seriousness of the situation. I as well do not understand why he was only given 3 pages by his banker.

I have been informed today that he is going back to his bank today to try and get more statements, etc.

I know the credit card statements have been ordered, I'll see if they are ready for pickup yet.

Hang in there for a few more days, I'll see what I can do to help.

Sincerely,

JT

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

**EXHIBIT  P**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Tuesday, May 30, 2017 5:32 PM
**To:** Douglas Painter
**Cc:** Robert Span; Lisa Atwood
**Subject:** RE: Dachev v. DiMaggio (Outstanding Discovery)

Doug,

I just received a message from Robin. He was unable to make it to the bank today, because of work. He promised me that he would run by the bank tomorrow for sure to pickup more records from his banker.

Please wait until tomorrow to see what he comes up with.

Sincerely,

JT

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

> -------- Original Message --------
> Subject: RE: Dachev v. DiMaggio (Outstanding Discovery)
> From: Douglas Painter <dpainter@steinbrecherspan.com>
> Date: Wed, May 24, 2017 1:48 pm
> To: Jt Fox <jt@jtfoxlaw.com>

**EXHIBIT  Q**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Thursday, June 01, 2017 8:37 PM
**To:** Douglas Painter
**Subject:** Additional Bank Statement from DiMaggio
**Attachments:** DOC-1.pdf; DOC-2.pdf; DOC-3.pdf

Doug,

Attached is the latest bank statement from Robin.

Should we have a stipulated protected order in place, so that Robin would be more comfortable turning over these records, etc.

Sincerely,

JT

The Law Offices Of J.T. Fox
& Associates, APC

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

Citibank CBO Services 731
P.O. Box 769018
San Antonio, Texas 78245

001/R1/04F013

000
CITIBANK, N. A.
**Account**
**204775621**
**Statement Period**
**Jul 1 - Jul 31, 2016**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

Page 1 of 3

DIMAGGIO INTERNATIONAL, INC.
5737 KANAN RD. STE. 117
AGOURA HILLS CA 91301

## CitiBusiness® ACCOUNT AS OF JULY 31, 2016

**Relationship Summary:**

| | |
|---|---|
| Checking | ----- |
| Savings | ----- |
| Checking Plus | ----- |

## SERVICE CHARGE SUMMARY FROM JUNE 1, 2016 THRU JUNE 30, 2016

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING # 204775621** | | | |
| Average Daily Collected Balance | | | |
| DEPOSIT SERVICES | | | |
| MONTHLY MAINTENANCE FEE | 1 | 12.0000 | |
| CHECKS, DEP ITEMS/TICKETS, ACH | 5 | .4000 | |
| **WAIVE | | | |
| **Total Charges for Services** | | | |
| **Net Service Charge** | | | |

Charges debited from account # 204775621

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**

**204775621**

**Beginning Balance:** $715,662.41
**Ending Balance:**

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/01 | DEBIT CARD PURCH Card Ending in 3338 VK69CP00 3338 Jul 01 STARBUCKS STORE 05549 LOSANGELES CA 16182 | 2.55 | | |
| 07/01 | ATM WITHDRAWAL 3967 - 1000 OKS, W LKE VL, CA | 40.00 | | |
| 07/01 | POS DEBIT Card Ending in 3338 BEDBATH&BEYOND# 121 SOUTHOUSAND OAKSCAUS0515 | 147.82 | | |
| 07/05 | ELECTRONIC CREDIT ASCAP DOMWR ROYL 1578883 Jul 05 | | 28.59 | |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 4,964.00 | |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 9,960.00 | |
| 07/05 | DEBIT CARD PURCH Card Ending in 3338 M02PMC16 3338 Jul 05 GREEN BASIL THAI RESTA CALBASAS CA 16183 | 41.97 | | |
| 07/05 | ATM WITHDRAWAL 22000 VNTURA, WOLAND HLLS, CA | 800.00 | | |
| 07/05 | WITHDRAWAL | 13,000.00 | | |
| 07/05 | POS DEBIT Card Ending in 3338 ARCO #42146 WOODLAND HILLCAUS0015 | 24.35 | | |

## CHECKING ACTIVITY

Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/05 | POS DEBIT Card Ending in 3338<br>CHEVRON/REGENT PROPERTYWOODLAND HILLCAUS0015 | 67.36 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>MKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 0.95 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>6PW7*FH3 3338 Jul 06<br>CITY OF B H PARKING ME BEVRLY HILLS CA 16184 | 1.75 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>DKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 4.50 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>STD5BQCR 3338 Jul 06<br>CORNER BAKERY THOSAND OAKS CA 16186 | 16.48 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>04FDF100 3338 Jul 06<br>CJ WILSON MAZDA OF VEN VENURA CA 16184 | 60.16 | | |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061670170401 Jul 06 | 14.00 | | |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061670171601 Jul 06 | 14.00 | | |
| 07/07 | WIRE TRANSFER | | 6,000.00 | |
| 07/07 | DEBIT CARD PURCH Card Ending in 3338<br>3FMDGHTG 3338 Jul 07<br>BEAUTYHABIT WESLAKE VILL CA 16188 | 396.68 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>MNGL8H00 3338 Jul 08<br>81161 - TARZANA MEDICA TARANA CA 16189 | 1.00 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>VNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 6.20 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>KNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 11.75 | | |
| 07/08 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 12.00 | | |
| 07/08 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061893285401 Jul 08 | 14.00 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>0Q1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE FB WESLAKE VILL CA 16190 | 27.24 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>2T1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 119.00 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>CS1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 440.37 | | |
| 07/12 | POS DEBIT Card Ending in 3338<br>#06335 ALBERTSONS CALABASAS CAUS0515 | 55.77 | | |
| 07/12 | POS DEBIT Card Ending in 3338<br>EREWHON NATURAL FOODS MCALABASAS CAUS0215 | 139.21 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>T-MOBILE #1704 WOODLAND HILLCAUS0214 | 49.04 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>PETSMART INC 103 WESTLAKE VILLCAUS0215 | 65.39 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>OREILLY AUTO PARTS 432 THOUSAND OAKSCAUS0215 | 140.60 | | |
| 07/14 | WIRE TRANSFER | | 149,955.00 | |
| 07/14 | WITHDRAWAL | 155,600.00 | | |
| 07/14 | WITHDRAWAL | 600,000.00 | | |
| 07/15 | DEPOSIT | | 12.00 | |
| 07/15 | DEBIT CARD PURCH Card Ending in 3338<br>K2DSW700 3338 Jul 15<br>HAROLD'S RESTAURANT THOSAND OAKS CA 16196 | 35.23 | | |
| 07/15 | DEBIT CARD PURCH Card Ending in 3338<br>N1P3Q200 3338 Jul 15<br>PLATA TAQUERIA & CANTI AGORA HILLS CA 16196 | 170.39 | | |
| 07/15 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061965060701 Jul 15 | 14.00 | | |
| 07/19 | DEBIT CARD PURCH Card Ending in 3338<br>6J9M1W06 3338 Jul 19<br>POQUITO MAS QPS WOOLAND HILL CA 16200 | 16.35 | | |
| 07/20 | DEBIT CARD PURCH Card Ending in 3338<br>TCXXF0YF 3338 Jul 20<br>SHELL OIL 57444585400 CALBASAS CA 16201 | 30.00 | | |
| 07/21 | WIRE TRANSFER<br>WIRE FROM SVILOS A AD Jul 21 | | 53,300.00 | |
| 07/21 | WITHDRAWAL | 53,251.00 | | |

## CHECKING ACTIVITY Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/21 | SERVICE CHARGE<br>INCOMING WIRE FEE F016203015DF01 Jul 21 | | | |
| | **Total Debits/Credits** | | | |

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | 877-528-0990*<br>(For Speech and Hearing Impaired Customers Only TDD: 800-945-0258) | Citibank, N.A.<br>P.O. Box 790184<br>St Louis, MO 63179 |

For change in address, call your account officer or visit your branch.

* To ensure quality service, calls are randomly monitored.

© 2016 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

**EXHIBIT  R**

06/15

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

RECEIVED
JUN 15 2017
L.A.S.C. - Northwest East

Attorneys for plaintiffs KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

DIMAGGIO INTERNATIONAL, INC., a California corporation,
Plaintiffs,
v.
PEACE FOR YOU PEACE FOR ME FOUNDATION, a form of business entity unknown, ALEXANDER PANEV, an individual, JAY BOTEV, an individual, KRASIMIR DACHEV, an individual, MARCELO DJOTOLOV, an individual, METAL TECHNOLOGY GROUP, a form a form of business entity unknown, and DOES 1 to 50,
Defendants.

CASE NO. LC104988

*Hon. Rupert Byrdsong*
Dept.: "U"

---

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,
Plaintiffs,
v.
ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,
Defendants.

CASE NO. BC645027

**STIPULATION AND [PROPOSED] PROTECTIVE ORDER**

COPY

**IT IS HEREBY STIPULATED, IN CASE NO. BC645027,** by and between Plaintiffs KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME FOUNDATION, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria ("Plaintiffs'), on the one hand, and Defendants ROBIN DIMAGGIO and DIMAGGIO INTERNATIONAL, INC. ("Defendants"), on the other hand (collectively the "Parties" (plural) or a "Party" (singular)), by and through the undersigned counsel, that in order to facilitate the exchange of information and documents which may be subject to confidentiality limitations on disclosure due to any applicable federal laws, state laws, and privacy rights, the Parties stipulate as follows:

1. In this Stipulation and Protective Order, the words set forth below shall have the following meanings:

a. "Proceeding" means the proceedings in the above-entitled related case No. BC645027.

b. "Court" means the Hon. Rupert Byrdsong, or any other judge to which this Proceeding may be assigned, including Court staff participating in such proceedings.

c. "Confidential" means any Documents, Testimony, or Information which is in the possession of a Designating Party who believes in good faith that such Documents, Testimony, or Information is entitled to confidential treatment under applicable law.

d. "Confidential Materials" means any Documents, Testimony, or Information as defined below designated as "Confidential" pursuant to the provisions of this Stipulation and Protective Order.

e. "Highly Confidential" means any information which belongs to a Designating Party which believes in good faith that the Disclosure of such information to another Party or non-Party would create a substantial risk of serious financial or other injury that cannot be avoided by less restrictive means.

f. "Highly Confidential Materials" means any Documents, Testimony, or Information, as defined below, designated as "Highly Confidential" pursuant to the provisions of this Stipulation and Protective Order.

g. "Designating Party" means the Party that designates Documents, Testimony, or Information, as defined below, as "Confidential" or "Highly Confidential."

h. "Disclose" or "Disclosed" or "Disclosure" means to reveal, divulge, give, or make available Materials, or any part thereof, or any information contained therein.

i. "Documents" means (i) any "Writing," "Original," and "Duplicate" as those terms are defined by California Evidence Code Sections 250, 255, and 260, which have been produced in discovery in this Proceeding by any person or entity, and (ii) any copies, reproductions, or summaries of all or any part of the foregoing.

j. "Information" means the content of Documents or Testimony.

k. "Testimony" means all depositions, declarations, or other testimony taken or used in this Proceeding.

2. The Designating Party shall have the right to designate as "Highly Confidential" only the non-public Documents, Testimony, or Information that the Designating Party in good faith believes would create a substantial risk of serious financial or other injury, if Disclosed to another Party or non-Party, and that such risk cannot be avoided by less restrictive means.

3. The entry of this Stipulation and Protective Order does not alter, waive, modify, or abridge any right, privilege, or protection otherwise available to any Party with respect to the discovery of matters, including but not limited to any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

4. Any Documents, Testimony, or Information to be designated as "Confidential" or "Highly Confidential" must be clearly so designated (a) before the Document, Testimony, or Information is Disclosed or produced, or, in the case of Documents extracted by any third-party electronic document/computer inspector and then provided to counsel for the Parties, within 15 calendar days of receipt by such counsel of such Documents. The "Confidential" or "Highly Confidential" designation should not obscure or interfere with the legibility of the designated Information.

a. For Documents (apart from transcripts of depositions or other pretrial or

trial proceedings), the Designating Party must affix, electronically or manually, the legend "Confidential" or "Highly Confidential" on each page of any Document containing such designated material.

b. For Testimony given in depositions the Designating Party may either:

i. identify on the record, before the close of the deposition, all "Confidential" or "Highly Confidential" Testimony, by specifying all portions of the Testimony that qualify as "Confidential" or "Highly Confidential;" or

ii. designate the entirety of the Testimony at the deposition as "Confidential" or "Highly Confidential" (before the deposition is concluded) with the right to identify more specific portions of the Testimony as to which protection is sought within 30 days following receipt of the deposition transcript. In circumstances where portions of the deposition Testimony are designated for protection, the transcript pages containing "Confidential" or "Highly Confidential" Information may be separately bound by the court reporter, who must affix to the top of each page the legend "Confidential" or "Highly Confidential," as instructed by the Designating Party.

c. For Information produced in some form other than Documents, and for any other tangible items, including, without limitation, compact discs or DVDs, the Designating Party must affix in a prominent place on the exterior of the container or containers in which the Information or item is stored the legend "Confidential" or "Highly Confidential." If only portions of the Information or item warrant protection, the Designating Party shall identify the "Confidential" or "Highly Confidential" portions.

5. The inadvertent production by any of the undersigned Parties or non-Parties to the Proceedings of any Document, Testimony, or Information during discovery in this Proceeding without a "Confidential" or "Highly Confidential" designation, shall be without prejudice to any claim that such item is "Confidential" or "Highly Confidential" and such Party shall not be held to have waived any rights by such inadvertent production. In the event that any Document, Testimony, or Information that is subject to a "Confidential" or "Highly Confidential" designation is inadvertently produced without such designation, the Party that inadvertently

produced the document shall give written notice of such inadvertent production within twenty (20) days of discovery of the inadvertent production, together with a further copy of the subject Document, Testimony, or Information designated as "Confidential" or "Highly Confidential" (the "Inadvertent Production Notice"). Upon receipt of such Inadvertent Production Notice, the Party that received the inadvertently produced Document, Testimony, or Information shall promptly destroy the inadvertently produced Document, Testimony, or Information and all copies thereof, or, at the expense of the producing Party, return such together with all copies of such Document, Testimony or Information to counsel for the producing Party and shall retain only the "Confidential" or "Highly Confidential" materials. Should the receiving Party choose to destroy such inadvertently produced Document, Testimony, or Information, the receiving Party shall notify the producing Party in writing of such destruction within ten (10) days of receipt of written notice of the inadvertent production. This provision is not intended to apply to any inadvertent production of any Document, Testimony, or Information protected by attorney-client or work product privileges. In the event that this provision conflicts with any applicable law regarding waiver of confidentiality through the inadvertent production of Documents, Testimony or Information, such law shall govern.

6. In the event that counsel for a Party receiving Documents, Testimony or Information in discovery designated as "Confidential" or "Highly Confidential" objects to such designation with respect to any or all of such items, said counsel shall advise counsel for the Designating Party, in writing, of such objections, the specific Documents, Testimony or Information to which each objection pertains, and the specific reasons and support for such objections (the "Designation Objections"). Counsel for the Designating Party shall have thirty (30) days from receipt of the written Designation Objections to either (a) agree in writing to de-designate Documents, Testimony, or Information pursuant to any or all of the Designation Objections and/or (b) file a motion with the Court seeking to uphold any or all designations on Documents, Testimony, or Information addressed by the Designation Objections (the "Designation Motion"). Pending a resolution of the Designation Motion by the Court, any and all existing designations on the Documents, Testimony, or Information at issue in such Motion

shall remain in place. The Designating Party shall have the burden on any Designation Motion of establishing the applicability of its "Confidential" or "Highly Confidential" designation. In the event that the Designation Objections are neither timely agreed to nor timely addressed in the Designation Motion, then such Documents, Testimony, or Information shall be de-designated in accordance with the Designation Objection applicable to such material.

7. Access to and/or Disclosure of Confidential Materials shall be permitted only to the following persons or entities:

a. the Court;

b. (1) Attorneys of record in the Proceeding and their affiliated attorneys, paralegals, clerical and secretarial staff employed by such attorneys who are actively involved in the Proceeding and are not employees of any Party; (2) In-house counsel to the undersigned Parties and the paralegal, clerical and secretarial staff employed by such counsel. Provided, however, that each non-lawyer given access to Confidential Materials shall be advised that such materials are being Disclosed pursuant to, and are subject to, the terms of this Stipulation and Protective Order and that they may not be Disclosed other than pursuant to its terms;

c. those officers, directors, partners, members, employees and agents of all non-designating Parties that counsel for such Parties deems necessary to aid counsel in the prosecution and defense of this Proceeding; provided, however, that prior to the Disclosure of Confidential Materials to any such officer, director, partner, member, employee or agent, counsel for the Party making the Disclosure shall deliver a copy of this Stipulation and Protective Order to such person, shall explain that such person is bound to follow the terms of such Order, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A;

d. court reporters in this Proceeding (whether at depositions, hearings, or any other proceeding);

e. any deposition, trial, or hearing witness in the Proceeding who previously has had access to the Confidential Materials, or who is currently or was previously an officer, director, partner, member, employee or agent of an entity that has had access to the Confidential Materials;

f. any deposition or non-trial hearing witness in the Proceeding who previously did not have access to the Confidential Materials; provided, however, that each such witness given access to Confidential Materials shall be advised that such materials are being Disclosed pursuant to, and are subject to, the terms of this Stipulation and Protective Order and that they may not be Disclosed other than pursuant to its terms;

g. mock jury participants, provided, however, that prior to the Disclosure of Confidential Materials to any such mock jury participant, counsel for the Party making the Disclosure shall deliver a copy of this Stipulation and Protective Order to such person, shall explain that such person is bound to follow the terms of such Order, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A.

h. outside experts or expert consultants consulted by the undersigned Parties or their counsel in connection with the Proceeding, whether or not retained to testify at any oral hearing; provided, however, that prior to the Disclosure of Confidential Materials to any such expert or expert consultant, counsel for the Party making the Disclosure shall deliver a copy of this Stipulation and Protective Order to such person, shall explain its terms to such person, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A. It shall be the obligation of counsel, upon learning of any breach or threatened breach of this Stipulation and Protective Order by any such expert or expert consultant, to promptly notify counsel for the Designating Party of such breach or threatened breach; and

i. any other person or entity that the Designating Party agrees to in writing.

8. Access to and/or Disclosure of Highly Confidential Materials shall be permitted only to the following persons or entities:

a. Trial Counsel for the Parties, their partners and associates, and staff and supporting personnel of such attorneys, such as paralegal assistants, secretarial, stenographic and clerical employees and contractors, and outside copying services, who are working on this Proceeding (or any further proceedings herein) under the direction of such attorneys and to whom it is necessary that the Highly Confidential Materials be Disclosed for purposes of this Proceeding. Such employees, assistants, contractors and agents to whom such access is

permitted and/or Disclosure is made shall, prior to such access or Disclosure, be advised of, and become subject to, the provisions of this Protective Order. "Trial Counsel," for purposes of this Paragraph, shall mean outside retained counsel and shall not include in-house counsel to the undersigned Parties and the paralegal, clerical and secretarial staff employed by such in-house counsel;

b. outside experts or expert consultants consulted by the undersigned Parties or their counsel in connection with the Proceeding, whether or not retained to testify at any oral hearing; provided, however, that prior to the Disclosure of Highly Confidential Materials to any such expert or expert consultant, counsel for the Party making the Disclosure shall deliver a copy of this Stipulation and Protective Order to such person, shall explain its terms to such person, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A prior to the Disclosure of Highly Confidential Materials. It shall be the obligation of Trial Counsel, upon learning of any breach or threatened breach of this Stipulation and Protective Order by any such expert or expert consultant, to promptly notify Trial Counsel for the Designating Party of such breach or threatened breach;

c. any person who authored, received, saw or was otherwise familiar with Documents, Testimony, or Information or thing designated "Highly Confidential," including any person otherwise familiar with the Highly Confidential Information contained therein, but only to the extent of that person's prior familiarity with the Highly Confidential Information;

d. court reporters in this Proceeding (whether at depositions, hearings, or any other proceeding); and

e. the Court.

9. Confidential Materials and Highly Confidential Materials shall be used by the persons or entities receiving them only for the purposes of preparing for, conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding, and not for any business or other purpose whatsoever.

10. Any Party to the Proceeding (or other person subject to the terms of this Stipulation and Protective Order) may ask the Court, after appropriate notice to the other Parties

to the Proceeding, to modify or grant relief from any provision of this Stipulation and Protective Order.

11. Entering into, agreeing to, and/or complying with the terms of this Stipulation and Protective Order shall not:

a. operate as an admission by any person that any particular Document, Testimony, or Information marked "Confidential" or "Highly Confidential" contains or reflects trade secrets, proprietary, confidential or competitively sensitive business, commercial, financial or personal information; or

b. prejudice in any way the right of any Party (or any other person subject to the terms of this Stipulation and Protective Order):

i. to seek a determination by the Court of whether any particular Confidential Materials or Highly Confidential Materials should be subject to protection under the terms of this Stipulation and Protective Order; or

ii. to seek relief from the Court on appropriate notice to all other Parties to the Proceeding from any provision(s) of this Stipulation and Protective Order, either generally or as to any particular Document, Material or Information.

12. Any Party to the Proceeding who has not executed this Stipulation and Protective Order as of the time it is presented to the Court for signature may thereafter become a Party to this Stipulation and Protective Order by its counsel's signing and dating a copy thereof and filing the same with the Court, and serving copies of such signed and dated copy upon the other Parties to this Stipulation and Protective Order.

13. Any Information that may be produced by a non-Party witness in discovery in the Proceeding pursuant to subpoena or otherwise may be designated by such non-Party as "Confidential" or "Highly Confidential" under the terms of this Stipulation and Protective Order, and any such designation by a non-Party shall have the same force and effect, and create the same duties and obligations, as if made by one of the undersigned Parties hereto. Any such designation shall also function as consent by such producing non-Party to the authority of the Court in the Proceeding to resolve and conclusively determine any motion or other application

made by any person or Party with respect to such designation, or any other matter otherwise arising under this Stipulation and Protective Order.

14. If any person subject to this Stipulation and Protective Order who has custody of any Confidential Materials or Highly Confidential Materials receives a subpoena or other process ("Subpoena") from any government or other person or entity demanding production of such materials, the recipient of the Subpoena shall promptly give notice of the same by electronic mail transmission, followed by either express mail or overnight delivery to counsel of record for the Designating Party, and shall furnish such counsel with a copy of the Subpoena. Upon receipt of this notice, the Designating Party may, in its sole discretion and at its own cost, move to quash or limit the Subpoena, otherwise oppose production of the Confidential Materials or Highly Confidential Materials, and/or seek to obtain confidential treatment of such materials from the subpoenaing person or entity to the fullest extent available under law. The recipient of the Subpoena may not produce any Confidential Materials or Highly Confidential Materials pursuant to the Subpoena prior to the date specified for production on the Subpoena.

15. Nothing in this Stipulation and Protective Order shall be construed to preclude either Party from asserting in good faith that certain Confidential Materials or Highly Confidential Materials require additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection.

16. If, after execution of this Stipulation and Protective Order, any Confidential Materials or Highly Confidential Materials submitted by a Designating Party under the terms of this Stipulation and Protective Order is Disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order, the non-Designating Party responsible for the Disclosure shall bring all pertinent facts relating to the Disclosure of such Confidential Materials or Highly Confidential Materials to the immediate attention of the Designating Party.

17. This Stipulation and Protective Order is entered into without prejudice to the right of any Party to knowingly waive the applicability of this Stipulation and Protective Order to any Confidential Materials or Highly Confidential Materials designated by that Party. If the

Designating Party uses Confidential Materials or Highly Confidential Materials in a non-Confidential manner, then the Designating Party shall advise that the designation no longer applies.

18. Where any Confidential Materials or Highly Confidential Materials, or Information derived therefrom, is included in any motion or other proceeding governed by California Rules of Court, Rules 2.550 and 2.551, the Parties and any involved non-party shall follow those rules. With respect to discovery motions or other proceedings not governed by California Rules of Court, Rules 2.550 and 2.551, the following shall apply: If Confidential Materials, Highly Confidential Materials, or Information derived therefrom are submitted to or otherwise disclosed to the Court in connection with discovery motions and proceedings, the same shall be separately filed under seal with the clerk of the Court in an envelope marked: "CONFIDENTIAL – FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER AND WITHOUT ANY FURTHER SEALING ORDER REQUIRED."

19. The Parties shall meet and confer regarding the procedures for use of any Confidential Materials or Highly Confidential Materials at trial and shall move the Court for entry of an appropriate order.

20. Nothing in this Stipulation and Protective Order shall affect the admissibility into evidence of Confidential Materials or Highly Confidential Materials, or abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Court concerning the issue of the status of any Confidential Materials or Highly Confidential Materials.

21. This Stipulation and Protective Order shall continue to be binding after the conclusion of this Proceeding and all subsequent proceedings arising from this Proceeding, except that a Party may seek the written permission of the Designating Party or may move the Court for relief from the provisions of this Stipulation and Protective Order. To the extent permitted by law, the Court shall retain jurisdiction to enforce, modify, or reconsider this Stipulation and Protective Order, even after the Proceeding is terminated.

22. Upon written request made within thirty (30) days after the settlement or other termination of the Proceeding, the undersigned Parties shall have thirty (30) days to either (a) promptly return to counsel for each Designating Party all Confidential Materials and Highly Confidential Materials, and all copies thereof (except that counsel for each Party may maintain in its files, in continuing compliance with the terms of this Stipulation and Protective Order, all work product, and one copy of each pleading filed with the Court [and one copy of each deposition together with the exhibits marked at the deposition)]*, (b) agree with counsel for the Designating Party upon appropriate methods and certification of destruction or other disposition of such materials, or (c) as to any Documents, Testimony, or other Information not addressed by sub-paragraphs (a) and (b), file a motion seeking a Court order regarding proper preservation of such Materials. To the extent permitted by law the Court shall retain continuing jurisdiction to review and rule upon the motion referred to in sub-paragraph (c) herein.

23. After this Stipulation and Protective Order has been signed by counsel for all Parties, it shall be presented to the Court for entry. Counsel agree to be bound by the terms set forth herein with regard to any Confidential Materials or Highly Confidential Materials that have been produced before the Court signs this Stipulation and Protective Order.

24. The Parties and all signatories to the Certification attached hereto as Exhibit A agree to be bound by this Stipulation and Protective Order pending its approval and entry by the Court. In the event that the Court modifies this Stipulation and Protective Order, or in the event that the Court enters a different Protective Order, the Parties agree to be bound by this Stipulation and Protective Order until such time as the Court may enter such a different Order. It is the Parties' intent to be bound by the terms of this Stipulation and Protective Order pending its entry so as to allow for immediate production of Confidential Materials and Highly Confidential Materials under the terms herein.

This Stipulation and Protective Order may be executed in counterparts and electronically transmitted or facsimiled copies of signature pages shall have the same force and effect as originals.

Dated: June 13, 2017

STEINBRECHER & SPAN LLP
ROBERT S. SPAN
DOUGLAS R. PAINTER

By: ______________________
Douglas R. Painter

Attorneys for Plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

Dated: June 13, 2017

LAW OFFICES OF J.T. FOX & ASSOCIATES, A.P.C.

By: ______________________
J.T. Fox

Attorneys for Defendants DIMAGGIO INTERNATIONAL, INC. and ROBIN DIMAGGIO

**ORDER**

For GOOD CAUSE APPEARING, the Court hereby approves this Stipulation and Protective Order.

**IT IS SO ORDERED.**

Dated: ______________ ______________________________
JUDGE OF THE SUPERIOR COURT

**EXHIBIT A**

**CERTIFICATION RE CONFIDENTIAL DISCOVERY MATERIALS**

I hereby acknowledge that I, ______________________________ [NAME], ______________________________ [POSITION AND EMPLOYER], am about to receive Confidential Materials and/or Highly Confidential Materials supplied in connection with the Proceedings in Case No. BC645027, Los Angeles Superior Court. I certify that I understand that the Confidential Materials and/or Highly Confidential Materials are provided to me subject to the terms and restrictions of the Stipulation and Protective Order filed in this Proceeding. I have been given a copy of the Stipulation and Protective Order; I have read it, and I agree to be bound by its terms.

I understand that the Confidential Materials and Highly Confidential Materials, as defined in the Stipulation and Protective Order, including any notes or other records that may be made regarding any such materials, shall not be Disclosed to anyone except as expressly permitted by the Stipulation and Protective Order. I will not copy or use, except solely for the purposes of this Proceeding, any Confidential Materials or Highly Confidential Materials obtained pursuant to this Stipulation and Protective Order, except as provided therein or otherwise ordered by the Court in the Proceeding.

I further understand that I am to retain all copies of all Confidential Materials and Highly Confidential Materials provided to me in the Proceeding in a secure manner, and that all copies of such materials are to remain in my personal custody until termination of my participation in this Proceeding, whereupon the copies of such materials will be returned to counsel who provided me with such materials.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this _____ day of ______, 20__, at ___________________.

DATED:_________________________ BY: ______________________________
Signature

______________________________
Title

______________________________
Address

______________________________
City, State, Zip

______________________________
Telephone Number

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss:
CITY AND COUNTY OF LOS ANGELES )

I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Steinbrecher & Span LLP, 445 South Figueroa Street, Suite 2350, Los Angeles, California 90071.

On June 15, 2017, I served the foregoing document(s) described as:

**STIPULATION AND [PROPOSED] PROTECTIVE ORDER**

on the interested parties, by placing a true copy thereof in a sealed envelope(s) addressed as follows:

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
T: (888) 750-5530
F: (888) 750-5530
**Attorneys for Defendants**

[ ] **VIA OVERNIGHT MAIL:**
By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

[X] **VIA U.S. MAIL:**
I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on June 15, 2017, with postage thereon fully prepaid, at Los Angeles, California.

[ ] **VIA PERSONAL DELIVERY:**
I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP § 1011.

[ ] **VIA FACSIMILE:**
By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct and was executed on June 15, 2017, at Los Angeles, California.

Lisa M. Atwood

**EXHIBIT  S**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON D.C. | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2350
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

June 5, 2017

**VIA EMAIL AND U.S. MAIL**

J.T. Fox, Esq.
Law Offices of JT Fox
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105

***Dachev v. DiMaggio***
***Document Inspection Protocol***

Dear Mr. Fox:

This confirms the protocol for this Friday's inspection of Mr. DiMaggio's cell phone and laptop. The inspection will be held at 10:00 a.m., June 9, 2017, at Regus Sherman Oaks, 15233 Ventura Boulevard, Suite 500, Sherman Oaks, CA 91403, as you requested.

We have stipulated that the inspection shall be conducted by Bruce Pixley of Pixley Forensics Group. On Friday, Mr. Pixley will make forensic images of Mr. DiMaggio's laptop and cell phone, which should not take more than 2-4 hours. He will not provide me or anyone associated with Plaintiffs with these images, which shall remain in his exclusive possession, custody and control. Within the next week, Mr. Pixley will conduct searches through all email and text accounts and databases used thereunder, using the following search terms:

AEI (from January 1, 2012 to the present)
Bruce (from January 1, 2012 to the present)
Sterling (from January 1, 2012 to the present)
Foundation
Peace (from January 1, 2012 to the present)
DIM (from January 1, 2012 to the present)
DII
DiMaggio International (from January 1, 2012 to the present)
Charity
Sofia
Bulgaria
Rich America
Citibank (from January 1, 2012 to the present)
Cashier's (from January 1, 2012 to the present)
Bank (from January 1, 2012 to the present)

Wire (from January 1, 2012 to the present)
Invoice (from May 1, 2015 to the present)
Receipt (from May 1, 2015 to the present)
Contract (from January 1, 2012 to the present)
Agreement (from January 1, 2012 to the present)
Offer (from January 1, 2012 to the present)
Artist (from January 1, 2012 to the present)
Perform (from January 1, 2012 to the present)
Performance (from January 1, 2012 to the present)
Book (from May 1, 2015 to the present)
Booking (from May 1, 2015 to the present)
Binder (from May 1, 2015 to the present)
Trust (from May 1, 2015 to the present)
Vv Hadley (from January 1, 2012 to the present)
Metals (from May 1, 2015 to the present)
Svilosa (from May 1, 2015 to the present)
Dachev & Associates (from May 1, 2015 to the present)
RISE (from January 1, 2012 to the present)

All emails sent to and from:

Alexander Panev
Krasimir Dachev
Bruce Sterling
AEI
Jay Botev
Marcello Djotolov
Peace for You Peace for Me Foundation
Svilosa
Rich America
Industry Level Music Group
Ian Martin
A.J. Pavel

All artists that DiMaggio discussed with Plaintiffs as possibilities for the Charity Concert, including but not limited to:

Jennifer Lopez
Roger Waters
John Legend
Christina Aguilera
Robbi Williams
Don Felder
Don Henley
Adele
Stevie Wonder
Mick Jagger
Mariah Carey

Justin Timberlake
Rihanna
Lady Gaga
Maroon 5
Snoop Dog
R. Stewart
Slash
Bruno Mars
Earth Wind & Fire
Rod Stewart
KISS
Johnny Depp
Blondie
The Beach Boys

Mr. DiMaggio will provide to Mr. Pixley, in confidence, all passwords necessary to conduct the above searches on all of his email, text and messaging accounts. If Mr. Pixley encounters any issues that may require the above search parameters to be amended, he will contact counsel for both parties for any possible changes or modifications thereto and counsel for both parties will in good faith attempt to reach agreement thereon. After conducting the above searches, Mr. Pixley will then provide both sides with the native and readable electronic versions of the documents resultant from his search, with Mr. DiMaggio reserving the right to designate within 15 days of receipt any document therein which he deems to be confidential and/or not subject to discovery; any such designation may be challenged by Plaintiffs through court application or motion. Mr. Pixley will not provide Plaintiffs with any other documents from these devices and associated accounts and, at the conclusion of the case, will erase the forensic images. To the extent Mr. DiMaggio does not cooperate with the above protocol, Plaintiffs reserve the right to seek costs, fees and sanctions, including for Mr. Pixley's time.

Thanks.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

cc: Mr. Bruce Pixley

**EXHIBIT T**

STEINBRECHER & SPAN LLP
LOS ANGELES | WASHINGTON D.C. | HOUSTON

445 SOUTH FIGUEROA STREET
SUITE 2350
LOS ANGELES, CA 90071
TEL: 213-891-1400
FAX: 213-891-1470
EMAIL: dpainter@steinbrecherspan.com

June 12, 2017

**VIA EMAIL AND U.S. MAIL**

J.T. Fox, Esq.
Law Offices of JT Fox
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105

*Dachev v. DiMaggio*
*Inspection of Cell and Laptop*

Dear J.T.:

On April 13, 2017 and May 17, 2017, Mr. DiMaggio swore, under penalty of perjury, that he "only has one cell phone and one laptop, and no other electronic devices." This is consistent with the representations you have been making to me over that last several months. At the June 9, 2017 inspection, however, Mr. DiMaggio failed to bring any laptop with him, as promised, and only brought his phone, claiming that he does not own a laptop at all but an iMac desktop computer. Accordingly, Mr. DiMaggio and Mr. Pixley, with our approval, agreed to meet today, June 12, 2017, at 10:30 a.m. at the place requested by Mr. DiMaggio (the Regus located in Westlake Village). Mr. DiMaggio promised to bring his iMac with him for imaging.

The next day, June 10, 2017, I was informed by Mr. Pixley that Mr. DiMaggio cancelled the June 12 appointment and asked to reschedule it to June 19, 2017.

Without getting into the implications of Mr. DiMaggio's subscription to facts he now denies (for which Plaintiffs reserve all rights), on a practical level, Mr. Pixley's services are charged by the hour, and having him come out twice for what was supposed to have been one inspection is inconvenient to him and costly for my clients. Nonetheless, we are honoring Mr. DiMaggio's request and have booked the Westlake Village Regus (2945 Townsgate Road, Suite 200, Westlake Village, CA) at 10:30 a.m., June 19, 2017, at which time Mr. DiMaggio will bring his iMac (and any other electronic devices he may own) for Mr. Pixley to inspect and image in compliance with the protocol to which you and I agreed. If Mr. DiMaggio, for any reason, fails to cooperate with this second scheduled inspection, Plaintiffs will have no choice but to seek sanctions for such failure, which would include Mr. Pixley's costs.

Main Document Page 201 of 248

J.T. Fox, Esq.
June 12, 2017
Page 2

Thank you.

Very truly yours,

Douglas R. Painter
STEINBRECHER & SPAN LLP

DRP:la

**EXHIBIT  U**

**Lisa Atwood**

**From:** Douglas Painter
**Sent:** Friday, July 28, 2017 11:08 AM
**To:** jt@jtfoxlaw.com
**Cc:** Carolina Echeverria; Lisa Atwood
**Subject:** DiMaggio / meet-and-confer memorialization

J.T.,

This simply memorializes our telephonic meet-and-confer yesterday in which we discussed the fact that the thumb drive from Mr. Pixley's search of Mr. DiMaggio's Gmail cloud account is missing almost all email correspondence relating to this matter, including the alleged emails your firm filed with the Court. This is a serious situation that could expose your client to serious sanctions, to say nothing of lost credibility. As a courtesy, we agreed that plaintiffs would grant up and until **August 4, 2017** for Mr. DiMaggio to provide us with these missing emails. If the missing emails are not produced in full (with metadata) by that date, plaintiffs will have no choice but to file a motion to compel and for sanctions.

We also agreed that the date for plaintiffs to file any discovery motion thereon would be extended to August 25, 2017. I assume that we intended this extended date to apply to all discovery motions (i.e., those relating to Mr. DiMaggio's interrogatory responses, etc.). If I got that wrong, please let me know immediately. Thanks.

Doug

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400 Fax: 213-891-1470

dpainter@steinbrecherspan.com
www.steinbrecherspan.com

*This email may contain material that is confidential, attorney-client privileged and/or work-product protected, and is solely for the use of the intended recipient. Any review, reliance or distribution by others, or forwarding without express permission, is strictly prohibited. If you are not the intended recipient of this email, please contact the sender immediately and delete all copies. Thank you.*

**EXHIBIT  V**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Friday, July 28, 2017 12:23 PM
**To:** Douglas Painter
**Cc:** Carolina Echeverria; Lisa Atwood
**Subject:** RE: DiMaggio / meet-and-confer memorialization

Doug,

I thought we said that I would have until August 4, 2017 to go over the discrepancies with my client over the expert's work, etc. My client will then see if he is able to retrieve the emails, etc. If he cannot easily gain them, he could then subpoena them or order them from his email provider. I spoke to Robin and he is fine going through the claimed missing emails, while trying to replace them, etc.

You have to give him more time to accomplish this.

Please advise.

JT

The Law Offices Of J.T. Fox
& Associates, APC

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: DiMaggio / meet-and-confer memorialization
From: Douglas Painter <dpainter@steinbrecherspan.com>

Date: Fri, July 28, 2017 11:07 am
To: "jt@jtfoxlaw.com" <jt@jtfoxlaw.com>
Cc: Carolina Echeverria <cecheverria@steinbrecherspan.com>, Lisa Atwood
<latwood@steinbrecherspan.com>

J.T.,

This simply memorializes our telephonic meet-and-confer yesterday in which we
discussed the fact that the thumb drive from Mr. Pixley's search of Mr. DiMaggio's
Gmail cloud account is missing almost all email correspondence relating to this
matter, including the alleged emails your firm filed with the Court.  This is a
serious situation that could expose your client to serious sanctions, to say nothing
of lost credibility.  As a courtesy, we agreed that plaintiffs would grant up and
until **August 4, 2017** for Mr. DiMaggio to provide us with these missing
emails.  If the missing emails are not produced in full (with metadata) by that
date, plaintiffs will have no choice but to file a motion to compel and for
sanctions.

We also agreed that the date for plaintiffs to file any discovery motion thereon
would be extended to August 25, 2017.  I assume that we intended this extended
date to apply to all discovery motions (i.e., those relating to Mr. DiMaggio's
interrogatory responses, etc.).  If I got that wrong, please let me know
immediately.  Thanks.

Doug


Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400  Fax: 213-891-1470

dpainter@steinbrecherspan.com
www.steinbrecherspan.com

*This email may contain material that is confidential, attorney-client privileged and/or work-product protected, and is
solely for the use of the intended recipient.  Any review, reliance or distribution by others, or forwarding without
express permission, is strictly prohibited.  If you are not the intended recipient of this email, please contact the sender
immediately and delete all copies.  Thank you.*

**EXHIBIT W**

**Lisa Atwood**

**From:** R. DiMaggio <thedimaggio@gmail.com>
**Sent:** Thursday, August 03, 2017 7:33 AM
**To:** Douglas Painter; Jt Fox; moses bardavid
**Subject:** DiMaggio international inc.

Doug

Please go through Moses Bardavid directly now as he is handling my Bankruptcy and advised me to not send anything to JT regarding DiMaggio international emails ECT.

JT and Moses are CCD.

Respectfully.
Robin DiMaggio

**EXHIBIT  X**

**Lisa Atwood**

**From:** jt@jtfoxlaw.com
**Sent:** Tuesday, August 08, 2017 7:11 PM
**To:** Douglas Painter
**Subject:** RE: Document Issues

Doug,

I am trying to get Moses to provide you a formal response as to the pending discovery issue. Moses desired to wait for the decision of the trustee, etc, in respect to Robin providing additional discovery or deleted emails, etc.

I know your position very well and I have advised Robin and Moses.

I am tyring to mediate this issue. I am hopeful for a definitive response from Robin within 48 hours as to whether or not he will cooperate at this time, etc., with the missing emails, etc.

Sincerely,

JT

J.T. Fox, Esq.
LAW OFFICES OF J.T. FOX & ASSOCIATES,
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Office
(888) 750-5530 Fax
(310) 701-6052 Cell
E-mail: JT@JTFOXLAW.COM
Websites: www.JTFOXLAW.COM & www.ATTORNEYPI.COM & www.JTFOX.COM & www.LAWYEROC.com
Please consider the environment before printing this e-mail.

PRIVILEGED COMMUNICATION. The information contained in this e-mail, and any attachments thereto, is only for the use of the recipient(s) named above. This message, and its attachments, may contain information that falls under the attorney-client and/or work product privileges. Receipt of this message by an unintended recipient does not constitute a waiver by the sender of any and all applicable privileges. If you are not the intended recipient of this e-mail and any attachments, or an agent responsible for delivering it to the intended recipients, you are hereby notified that any use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by e-mail, permanently delete the e-mail and any attachments immediately, and destroy all copies.

-------- Original Message --------
Subject: Re:
From: Douglas Painter <dpainter@steinbrecherspan.com>

Date: Thu, August 03, 2017 5:45 am
To: "R. DiMaggio" <thedimaggio@gmail.com>
Cc: "J. Fox" <jt@jtfoxlaw.com>

Dear Mr DiMaggio,

Thank for your email and for your earlier personal referral to Julian. Under California's rules of professional conduct for lawyers, I am prohibited from communicating with you directly without your attorney present, hence I am copying your attorney on this email. Please refrain from such direct communications in the future as I will not be able to respond to them.

Doug Painter

Get Outlook for iOS

---

From: R. DiMaggio <thedimaggio@gmail.com>
Sent: Wednesday, August 2, 2017 11:01 PM
Subject:
To: Douglas Painter <dpainter@steinbrecherspan.com>

Doug,
Did Julian handle your music?

**EXHIBIT  Y**

**Lisa Atwood**

| | |
|---|---|
| **From:** | Alexander Panev <alpanev@outlook.com> |
| **Sent:** | Sunday, August 06, 2017 11:50 PM |
| **To:** | Alexander Panev |
| **Subject:** | Viber message from DiMaggio |

Im in Montreuile Paris now. Better life and hoping to start fresh with you here musically. Without all the joker's you brought on that are you alive.

Ал. Панев
Al. Panev

**Lisa Atwood**

---

**From:** Alexander Panev <alpanev@outlook.com>
**Sent:** Sunday, August 06, 2017 11:46 PM
**To:** Alexander Panev
**Subject:** Viber message from DiMaggio

How was your Concert this year without me? Im Loving you France my citizenship country where I reside. I closed my companies because Buisness is not what it used to be because of you so at least in France I can still create epic Concerts. Wished we could of worked something out but you were to stubborn to listen to me. And we both wasted alot of stupid money due to your ego. Ahhhh long live the Bulgarian Ego who thinks he knows all. If your in France dinner on me. La Biz. De ton Vieux Frères.

Ал. Панев
Al. Panev



How was your Concert this year without me? Im Loving you France my citizenship country where I reside. I closed my

Type a message...

Я В Е Р Т Ь У И О П Ю

А С Д Ф Г Х Й К Л Ш Щ

**EXHIBIT  Z**

**Lisa Atwood**

**From:** Douglas Painter
**Sent:** Sunday, August 13, 2017 3:28 PM
**To:** Lisa Atwood
**Subject:** Fwd: DiMaggio international

Begin forwarded message:

**From:** Douglas Painter <dpainter@steinbrecherspan.com>
**Subject: Re: DiMaggio international**
**Date:** August 13, 2017 at 2:08:09 PM PDT
**To:** "R. DiMaggio" <thedimaggio@gmail.com>, moses bardavid <bardavidlaw@gmail.com>, Jt Fox <jt@jtfoxlaw.com>

JT,

It is my understanding that you are, as if this date, the attorney of record in this case. If and when you plan on filing a substitution of attorney with the Court, please email me a copy and I will re-direct my communications accordingly. Thanks.

Doug

Get Outlook for iOS

---

**From:** R. DiMaggio <thedimaggio@gmail.com>
**Sent:** Sunday, August 13, 2017 1:14:16 PM
**To:** Douglas Painter; moses bardavid; Jt Fox
**Subject:** DiMaggio international

Doug

They are scheduling a devastating Surgery for me next week or the following week regarding a major Cancer set back.

JT is no longer handling my Attorney services this is all on Moses Bardavid who is handling all further legal situations.

I know your threatening of Sanctions but as I get medical letters to Moses who will pass them on to you. Nothing a judge will want to start carrying a major Cancer patient during this period of my life.

I have nothing to live for but my life.

Medical letters on their way to you.

Moses will see you get them as soon as my surgery is scheduled this week.
And lastly let JT off the hook he's off the case.

Hope your music is going great.
Mine is taking a long Break as of Now.

Best
Robin DiMaggio

**EXHIBIT AA**

**Lisa Atwood**

**From:** R. DiMaggio <thedimaggio@gmail.com>
**Sent:** Friday, August 18, 2017 9:23 AM
**To:** Jt Fox; Douglas Painter; moses bardavid
**Attachments:** DiMaggio Letter.tif

JT, Doug im cooked for a while and this doesn't even talk about a 98% start of Chemo and Radiation.
Everyone Back off!!!!!!!

Im Not playing!

Sanction all you want.
My gear is not Legal staying alive is my only Priority.



ENT
Group of Los Angeles

Marc Cohen, M.D.
Fellow, American College of Surgeons
Fellow, American Board of Otolaryngology / Head & Neck Surgery
Asst. Clinical Professor, UCLA School of Medicine, Dept. of Head & Neck Surgery

David W. Martin, M.D.
Fellow, American Board of Otolaryngology / Head & Neck Surgery
Fellow, American Board of Facial Plastic & Reconstructive Surgery

Ali R. Namazie, M.D.
Fellow, American College of Surgeons
Fellow, American Board of Otolaryngology / Head & Neck Surgery
Fellow, American Board of Facial Plastic & Reconstructive Surgery

August 16, 2017

Re: Robin DiMaggio

To Whom It May Concern:

I am currently treating Mr. DiMaggio for throat pain and swollen lymph nodes. A recent MRI reveals details that are suspicious for cancer. The patient is scheduled for a tonsillectomy on 8/22/17 and a lymph node biopsy on 9/1/2017.

At this time, a 4 week recovery period will be necessary following the procedures. I will make further recommendations when all test results are available.

Please feel free to contact me should you require additional information.

Sincerely,

Marc Cohen, MD

4955 Van Nuys Blvd., Suite 505 • Sherman Oaks, CA 91403 • T (818) 986-5500 • F (818) 985-5503
5525 Etiwanda Ave., Suite 312 • Tarzana, CA 91356 • T (818) 609-0600 • F (818) 609-1680
WWW.ENTGroupLA.COM

**EXHIBIT BB**

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): STEINBRECHER & SPAN LLP DOUGLAS R. PAINTER (SB #131043) 445 S. Figueroa St., Suite 2350, Los Angeles, CA 90071 TELEPHONE NO.: (213) 891-1400 FAX NO.: (213) 891-1470 E-MAIL ADDRESS: dpainter@steinbrecherspan.com ATTORNEY FOR (Name): Plaintiffs Krasimir Dachev, et al. | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles STREET ADDRESS: 6230 Sylmar Ave. MAILING ADDRESS: 6230 Sylmar Ave. CITY AND ZIP CODE: Van Nuys, CA 91401 BRANCH NAME: Northwest District | |
| PLAINTIFF/PETITIONER: Krasimir Dachev, et al. DEFENDANT/RESPONDENT: DiMaggio International, Inc., et al. | |
| **DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER: BC645027 [Related] ~~LC104988 [Lead]~~ |

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):***
Citibank, N.A., 3967-A E Thousand Oaks Blvd., Westlake Village, CA 91362 (805) 413-4160

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

To *(name of deposition officer)*: Manette Mays, Network Deposition Services
On *(date)*: July 14, 2017 At *(time)*: 10:00 a.m.
Location *(address)*: 1800 Century Park East, Suite 150, Los Angeles, CA 90067

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. [✓] by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. [ ] by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. [ ] by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified)*:

See Attachment 3.

[✓] Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: June 7, 2017

Douglas R. Painter
(TYPE OR PRINT NAME)

(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorneys for Plaintiffs Dachev, et al.
(TITLE)

(Proof of service on reverse)

Form Adopted for Mandatory Use Judicial Council of California SUBP-010 [Rev. January 1, 2012]

**DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

Code of Civil Procedure, §§ 2020.410–2020.440; Government Code, § 68097.1 www.courts.ca.gov

**ATTACHMENT 3**

**DEFINITIONS**

1. As used herein, the term "CITIBANK" shall refer to Citibank, N.A., including any and all agents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other person or entity acting on its behalf.

2. As used herein, the terms "COMMUNICATION" OR "COMMUNICATIONS" shall mean and include any meeting, conference, face-to-face conversation, telephone conversation, or conference or communication used by any media (including, but not limited to, electronic mail and text messages), as well as any written, taped, or recorded communication of any kind whatsoever.

3. As used herein, the terms "DOCUMENT" or "DOCUMENTS" shall mean any kind of written, typewritten, printed, electronic or recorded material whatsoever, including but not limited to, any emails, notes, memoranda, charges, complaints, claims, affidavits, statements, papers, files, forms, data, tapes, cassettes, discs, magnetic cards, printouts, letters, reports, summaries, compilations, chronicles, publications, books, manuals, handbooks, certificates, minutes, agendas, communications, contracts, agreements, telegrams, teletypes, telesales, records, correspondence, diaries, calendars, appointment books, logs, audio and/or video recordings and transcriptions of recordings, microfilm, microfiche, electronic records or representations of any kind, information stored on computer (including, but not limited to, readable files such as Microsoft Excel spreadsheets) or on any type of computer-readable storage media and capable of being reproduced by printed representation of any form whether or not ever printed out or displayed, photographs, pictures, diagrams, or any other writing, however produced or reproduced, and further including, without limitation, originals, all copies that are not exact duplicates and all drafts prepared in connection with such DOCUMENTS whether or not used, within the possession, custody, and/or control of CITIBANK, or CITIBANK's agents, attorneys, and/or any other persons or entities who may act on CITIBANK's behalf, excepting only those DOCUMENTS that are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by written notice to Plaintiffs.

**DOCUMENTS TO BE PRODUCED**

1. Any and all bank statements, checks, deposits, cashier-checks, records of withdrawals, transactions and any other DOCUMENTS regarding, concerning or relating to any savings, checking, investment or other accounts at CITIBANK in the name of or associated with DiMaggio International, Inc., including but not limited to Account No. 204775621, from January 1, 2015 to the present.

2. Any and all DOCUMENTS regarding, concerning or reflecting any COMMNICATIONS between any person or entity regarding, concerning or relating to any savings, checking, investment or other accounts at CITIBANK in the name of or associated with DiMaggio International, Inc., including but not limited to Account No. 204775621, from January 1, 2015 to the present.

3.  All bank statements, checks, deposits, cashier-checks, records of withdrawals, transactions and any other DOCUMENTS regarding or relating to any savings, checking, investment or other accounts at CITIBANK in the name of or associated with Robin DiMaggio (SS# 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), from January 1, 2015 to the present.

4.  Any and all DOCUMENTS regarding, concerning or reflecting any COMMNICATIONS between any person or entity regarding, concerning or relating to any savings, checking, investment or other accounts at CITIBANK in the name of or associated with Robin DiMaggio (SS# 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), from January 1, 2015 to the present.

**EXHIBIT CC**

(Page 2 of 2)

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

OFFICIAL CHECK

citibank

Citibank, N.A.

313873841

FCH 00731 FAH 008 $0.00 ONL PIC

003-17 Ck. Ser.# 313873841

DATE 07/14/16

PAY ****TEN THOUSAND DOLLARS****

**$10,000.00**

TO THE ORDER OF ****AEI ENTERTAINMENT BROKERAGE FIRM****

NAME OF REMITTER ADDRESS ROBIN C DIMAGGIO

Citibank, N.A. One Penn's Way New Castle DE 19720

Drawer: Citibank, N.A.

BY AUTHORIZED SIGNATURE

⑈313873841⑈ ⑆031100209⑆ 38762924⑈

(Page 1 of 2)

Security features on this document include: Micro-Print Endorsement Line, Watermark and Visible Fibers. Absence of these features may indicate alteration. [illegible]

FOR INFORMATION CONCERNING THIS INSTRUMENT CONTACT: [illegible]

Seq 00024 07/14/16
BAT:668783 CC:3160001201
NT:48 LTPS:Jacksonville PT
BC:Warner Center BC CA2-168

Seq: 24
Batch: 668783
Date: 07/14/16

DEPOSITORY BANK ENDORSEMENT

DO NOT WRITE / SIGN / STAMP BELOW THIS LINE

WARNING — DO NOT CASH CHECK WITHOUT NOTING WATERMARK. HOLD TO LIGHT TO VERIFY WATERMARK.

**EXHIBIT DD**

Citibank CBO Services 731
P.O. Box 769018
San Antonio, Texas 78245

001/R1/04F013

000
CITIBANK, N. A.
**Account**
**204775621**
**Statement Period**
**Jul 1 - Jul 31, 2016**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

DIMAGGIO INTERNATIONAL, INC.
5737 KANAN RD. STE. 117
AGOURA HILLS CA 91301

## CitiBusiness® ACCOUNT AS OF JULY 31, 2016

| Relationship Summary: | |
|---|---|
| Checking | $36.89 |
| Savings | ****** |
| Checking Plus | ****** |

## SERVICE CHARGE SUMMARY FROM JUNE 1, 2016 THRU JUNE 30, 2016

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING # 204775621** | | | |
| Average Daily Collected Balance | | | $2,445.15 |
| DEPOSIT SERVICES | | | |
| MONTHLY MAINTENANCE FEE | 1 | 12.0000 | 12.00 |
| CHECKS, DEP ITEMS/TICKETS, ACH | 5 | .4000 | 2.00 |
| **WAIVE | | | |
| **Total Charges for Services** | | | **$12.00** |
| **Net Service Charge** | | | **$12.00** |

Charges debited from account # 204775621

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**
**204775621**

**Beginning Balance:** $662.41
**Ending Balance:** $36.89

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/01 | DEBIT CARD PURCH Card Ending in 3338 VK69CP00 3338 Jul 01 STARBUCKS STORE 05549 LOSANGELES CA 16182 | 2.55 | | 659.86 |
| 07/01 | ATM WITHDRAWAL 3967 - 1000 OKS, W LKE VL, CA | 40.00 | | 619.86 |
| 07/01 | POS DEBIT Card Ending in 3338 BEDBATH&BEYOND# 121 SOUTHOUSAND OAKSCAUS0515 | 147.82 | | 472.04 |
| 07/05 | ELECTRONIC CREDIT ASCAP DOMWR ROYL 1578888 Jul 05 | | 28.59 | 500.63 |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 4,964.00 | 5,464.63 |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 9,960.00 | 15,424.63 |
| 07/05 | DEBIT CARD PURCH Card Ending in 3338 M02PMC16 3338 Jul 05 GREEN BASIL THAI RESTA CALBASAS CA 16183 | 41.97 | | 15,382.66 |
| 07/05 | ATM WITHDRAWAL 22000 VNTURA, WDLAND HLLS, CA | 800.00 | | 14,582.66 |
| 07/05 | WITHDRAWAL | 13,000.00 | | 1,582.66 |
| 07/05 | POS DEBIT Card Ending in 3338 ARCO #42146 WOODLAND HILLCAUS0015 | 24.35 | | 1,558.31 |

001/R1/04F013

DIMAGGIO INTERNATIONAL, INC.

Account 204775621 Page 2 of 3
Statement Period: Jul 1 - Jul 31, 2016

## CHECKING ACTIVITY Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/05 | POS DEBIT Card Ending In 3338<br>CHEVRON/REGENT PROPERTYWOODLAND HILLCAUS0016 | 67.36 | | 1,490.95 |
| 07/06 | DEBIT CARD PURCH Card Ending In 3338<br>MKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 0.95 | | 1,490.00 |
| 07/06 | DEBIT CARD PURCH Card Ending In 3338<br>6PW7*FH3 3338 Jul 06<br>CITY OF B H PARKING ME BEVRLY HILLS CA 16184 | 1.75 | | 1,488.25 |
| 07/06 | DEBIT CARD PURCH Card Ending In 3338<br>DKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 4.50 | | 1,483.75 |
| 07/06 | DEBIT CARD PURCH Card Ending In 3338<br>STD5BQCR 3338 Jul 06<br>CORNER BAKERY THOSAND OAKS CA 16186 | 16.48 | | 1,467.27 |
| 07/06 | DEBIT CARD PURCH Card Ending In 3338<br>04FDF100 3338 Jul 06<br>CJ WILSON MAZDA OF VEN VENURA CA 16184 | 60.16 | | 1,407.11 |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061870170401 Jul 06 | 14.00 | | 1,393.11 |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061870171501 Jul 06 | 14.00 | | 1,379.11 |
| 07/07 | WIRE TRANSFER<br>WIRE FROM MIR ZA TEB MIR Z A MEN Jul 07 | | 6,000.00 | 7,379.11 |
| 07/07 | DEBIT CARD PURCH Card Ending In 3338<br>3FMDGHTQ 3338 Jul 07<br>BEAUTYHABIT WESLAKE VILL CA 16188 | 396.68 | | 6,982.43 |
| 07/08 | DEBIT CARD PURCH Card Ending In 3338<br>MNGL8H00 3338 Jul 08<br>81161 - TARZANA MEDICA TARANA CA 16189 | 1.00 | | 6,981.43 |
| 07/08 | DEBIT CARD PURCH Card Ending In 3338<br>VNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 6.20 | | 6,975.23 |
| 07/08 | DEBIT CARD PURCH Card Ending In 3338<br>KNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 11.75 | | 6,963.48 |
| 07/08 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 12.00 | | 6,951.48 |
| 07/08 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061893285401 Jul 08 | 14.00 | | 6,937.48 |
| 07/11 | DEBIT CARD PURCH Card Ending In 3338<br>0Q1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE FB WESLAKE VILL CA 16190 | 27.24 | | 6,910.24 |
| 07/11 | DEBIT CARD PURCH Card Ending In 3338<br>2T1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 119.00 | | 6,791.24 |
| 07/11 | DEBIT CARD PURCH Card Ending In 3338<br>CS1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 440.37 | | 6,350.87 |
| 07/12 | POS DEBIT Card Ending In 3338<br>#06335 ALBERTSONS CALABASAS CAUS0515 | 55.77 | | 6,295.10 |
| 07/12 | POS DEBIT Card Ending In 3338<br>EREWHON NATURAL FOODS MCALABASAS CAUS0215 | 139.21 | | 6,155.89 |
| 07/13 | POS DEBIT Card Ending In 3338<br>T-MOBILE #1704 WOODLAND HILLCAUS0214 | 49.04 | | 6,106.85 |
| 07/13 | POS DEBIT Card Ending In 3338<br>PETSMART INC 103 WESTLAKE VILLCAUS0216 | 65.39 | | 6,041.46 |
| 07/13 | POS DEBIT Card Ending In 3338<br>OREILLY AUTO PARTS 432 THOUSAND OAKSCAUS0216 | 140.60 | | 5,900.86 |
| 07/14 | WIRE TRANSFER<br>WIRE FROM MIR ZA TEB MIR Z A MEN Jul 14 | | 149,955.00 | 155,855.86 |
| 07/14 | WITHDRAWAL | 155,600.00 | | 255.86 |
| 07/15 | DEPOSIT | | 12.00 | 267.86 |
| 07/15 | DEBIT CARD PURCH Card Ending In 3338<br>K2DSW700 3338 Jul 15<br>HAROLD'S RESTAURANT THOSAND OAKS CA 16196 | 35.23 | | 232.63 |
| 07/15 | DEBIT CARD PURCH Card Ending In 3338<br>N1P3Q200 3338 Jul 15<br>PLATA TAQUERIA & CANTI AGORA HILLS CA 16196 | 170.39 | | 62.24 |
| 07/15 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061965060701 Jul 15 | 14.00 | | 48.24 |
| 07/19 | DEBIT CARD PURCH Card Ending In 3338<br>6J9M1W06 3338 Jul 19<br>POQUITO MAS QPS WOOLAND HILL CA 16200 | 16.35 | | 31.89 |
| 07/20 | DEBIT CARD PURCH Card Ending In 3338<br>TCXXF6YF 3338 Jul 20<br>SHELL OIL 57444585400 CALBASAS CA 16201 | 30.00 | | 1.89 |
| 07/21 | WIRE TRANSFER<br>WIRE FROM SVILOS A AD Jul 21 | | 53,300.00 | 53,301.89 |
| 07/21 | WITHDRAWAL | 53,251.00 | | 50.89 |

DIMAGGIO INTERNATIONAL, INC.

Account 204775621 Page 3 of 3
Statement Period: Jul 1 - Jul 31, 2016

## CHECKING ACTIVITY Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/21 | SERVICE CHARGE<br>INCOMING WIRE FEE F016203015DF01 Jul 21 | 14.00 | | 36.89 |
| | **Total Debits/Credits** | **224,845.11** | **224,219.59** | |

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | 877-528-0990*<br>(For Speech and Hearing Impaired Customers Only TDD: 800-945-0258) | Citibank, N.A.<br>P.O. Box 790184<br>St Louis, MO 63179 |

For change in address, call your account officer or visit your branch.

* To ensure quality service, calls are randomly monitored.

© 2016 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

**EXHIBIT EE**

[HANDWRITTEN NOTATIONS ADDED]

Citibank CBO Services 731
P.O. Box 769018
San Antonio, Texas 78245

001/R1/04F013
000
CITIBANK, N.A.
**Account**
**204775621**
**Statement Period**
**Jul 1 - Jul 31, 2016**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

DIMAGGIO INTERNATIONAL, INC.
5737 KANAN RD. STE. 117
AGOURA HILLS CA 91301

Page 1 of 3

## CitiBusiness® ACCOUNT AS OF JULY 31, 2016

**Relationship Summary:**

| | |
|---|---|
| **Checking** | ----- → forgery |
| **Savings** | ----- |
| **Checking Plus** | ----- |

## SERVICE CHARGE SUMMARY FROM JUNE 1, 2016 THRU JUNE 30, 2016

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING # 204775621** | | | |
| Average Daily Collected Balance | | | |
| DEPOSIT SERVICES | | | |
| MONTHLY MAINTENANCE FEE | 1 | 12.0000 | |
| CHECKS, DEP ITEMS/TICKETS, ACH | 5 | .4000 | |
| **WAIVE | | | |
| **Total Charges for Services** | | | |
| **Net Service Charge** | | | |

Charges debited from account # 204775621

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**
**204775621**

forgery →
**Beginning Balance:** $715,662.41
**Ending Balance:**

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/01 | DEBIT CARD PURCH Card Ending in 3338 VK69CP00 3338 Jul 01 STARBUCKS STORE 05549 LOSANGELES CA 16182 | 2.55 | | |
| 07/01 | ATM WITHDRAWAL 3967 - 1000 OKS, W LKE VL, CA | 40.00 | | |
| 07/01 | POS DEBIT Card Ending in 3338 BEDBATH&BEYOND# 121 SOUTHOUSAND OAKSCAUS0515 | 147.82 | | |
| 07/05 | ELECTRONIC CREDIT ASCAP DOMWR ROYL 1576863 Jul 05 | | 28.59 | |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 4,964.00 | |
| 07/05 | WIRE TRANSFER WIRE FROM MIR ZA TEB MIR Z A MEN Jul 05 | | 9,960.00 | |
| 07/05 | DEBIT CARD PURCH Card Ending in 3338 M02PMC16 3338 Jul 05 GREEN BASIL THAI RESTA CALBASAS CA 16183 | 41.97 | | |
| 07/05 | ATM WITHDRAWAL 22000 VNTURA. WDLAND HLLS, CA | 800.00 | | |
| 07/05 | WITHDRAWAL | 13,000.00 | | |
| 07/05 | POS DEBIT Card Ending in 3338 ARCO #42146 WOODLAND HILLCAUS0015 | 24.35 | | |

**CHECKING ACTIVITY** Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/05 | POS DEBIT Card Ending in 3338<br>CHEVRON/REGENT PROPERTYWOODLAND HILLCAUS0015 | 67.36 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>MKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 0.95 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>6PW7*FH3 3338 Jul 06<br>CITY OF B H PARKING ME BEVRLY HILLS CA 16184 | 1.75 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>DKQCRW00 3338 Jul 06<br>STARBUCKS STORE 05549 LOSANGELES CA 16184 | 4.50 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>STD5BQCR 3338 Jul 06<br>CORNER BAKERY THOSAND OAKS CA 16186 | 16.48 | | |
| 07/06 | DEBIT CARD PURCH Card Ending in 3338<br>04FDF100 3338 Jul 06<br>CJ WILSON MAZDA OF VEN VENURA CA 16184 | 60.16 | | |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061870170401 Jul 06 | 14.00 | | |
| 07/06 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061870171501 Jul 06 | 14.00 | | |
| 07/07 | WIRE TRANSFER | | 6,000.00 | |
| 07/07 | DEBIT CARD PURCH Card Ending in 3338<br>3FMDGHTG 3338 Jul 07<br>BEAUTYHABIT WESLAKE VILL CA 16188 | 396.68 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>MNGL8H00 3338 Jul 08<br>81161 - TARZANA MEDICA TARANA CA 16189 | 1.00 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>VNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 6.20 | | |
| 07/08 | DEBIT CARD PURCH Card Ending in 3338<br>KNJ9LM00 3338 Jul 08<br>STARBUCKS STORE 11603 WOOLAND HILL CA 16189 | 11.75 | | |
| 07/08 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 12.00 | | |
| 07/08 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061893285401 Jul 08 | 14.00 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>0Q1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE FB WESLAKE VILL CA 16190 | 27.24 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>2T1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 119.00 | | |
| 07/11 | DEBIT CARD PURCH Card Ending in 3338<br>CS1F2RQ1 3338 Jul 11<br>FOUR SEASONS WLAKE SPA WESLAKE VILL CA 16190 | 440.37 | | |
| 07/12 | POS DEBIT Card Ending in 3338<br>#06335 ALBERTSONS CALABASAS CAUS0515 | 55.77 | | |
| 07/12 | POS DEBIT Card Ending in 3338<br>EREWHON NATURAL FOODS MCALABASAS CAUS0215 | 139.21 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>T-MOBILE #1704 WOODLAND HILLCAUS0214 | 49.04 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>PETSMART INC 103 WESTLAKE VILLCAUS0215 | 65.39 | | |
| 07/13 | POS DEBIT Card Ending in 3338<br>OREILLY AUTO PARTS 432 THOUSAND OAKSCAUS0215 | 140.60 | | |
| 07/14 | WIRE TRANSFER | | 149,955.00 | |
| 07/14 | WITHDRAWAL | 155,600.00 | | |
| 07/14 | WITHDRAWAL | 600,000.00 | | |
| 07/15 | DEPOSIT | | 12.00 | |
| 07/15 | DEBIT CARD PURCH Card Ending in 3338<br>K2DSW700 3338 Jul 15<br>HAROLD'S RESTAURANT THOSAND OAKS CA 16196 | 35.23 | | |
| 07/15 | DEBIT CARD PURCH Card Ending in 3338<br>N1P3Q200 3338 Jul 15<br>PLATA TAQUERIA & CANTI AGORA HILLS CA 16196 | 170.39 | | |
| 07/15 | SERVICE CHARGE<br>INCOMING WIRE FEE C0061965060701 Jul 15 | 14.00 | | |
| 07/19 | DEBIT CARD PURCH Card Ending in 3338<br>6J9M1W06 3338 Jul 19<br>POQUITO MAS OPS WOOLAND HILL CA 16200 | 16.35 | | |
| 07/20 | DEBIT CARD PURCH Card Ending in 3338<br>TCXXF0YF 3338 Jul 20<br>SHELL OIL 57444585400 CALBASAS CA 16201 | 30.00 | | |
| 07/21 | WIRE TRANSFER<br>WIRE FROM SVILOS A AD Jul 21 | | 53,300.00 | |
| 07/21 | WITHDRAWAL | 53,251.00 | | |

?Forgery

## CHECKING ACTIVITY

Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/21 | SERVICE CHARGE<br>INCOMING WIRE FEE F016203015DF01 Jul 21 | | | |
| | **Total Debits/Credits** | | | |

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | 877-528-0990*<br>(For Speech and Hearing Impaired Customers Only TDD: 800-945-0258) | Citibank, N.A.<br>P.O. Box 790184<br>St Louis, MO 63179 |

For change in address, call your account officer or visit your branch.

* To ensure quality service, calls are randomly monitored.

© 2016 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

**EXHIBIT FF**

**Douglas Painter**

**From:** Douglas Painter
**Sent:** Wednesday, August 23, 2017 5:44 PM
**To:** jt@jtfoxlaw.com
**Cc:** Lisa Atwood
**Subject:** DiMaggio / meet and confer

J.T.,

I just tried to call you but could not reach you. I write to engage in the meet and confer process concerning a motion that is slightly different than the one we previously discussed.

As I mentioned in an email to you earlier today, on Monday we have received bank documents from Citibank. We have finally gone through them, and they show that Mr. DiMaggio forged some bank records produced in discovery. He also forged the emails that you filed with the Court in the DiMaggio International Complaint and deleted from his Gmail account all emails with Plaintiffs. Plaintiffs will therefore be filing a Motion for the Terminating Sanction of Default pursuant to, among other sources, C.C.P. § 2023.030(d)(4), based on forgery and intentional spoliation of evidence.

To the extent Mr. DiMaggio wishes to stipulate to a default, we would be willing to entertain such a discussion. If he is not, we should still talk on the phone to discuss these matters, to make sure we have complied with our meet and confer obligations. Please call me on my cell (310-489-1952) or office number below. The Motion will be filed next week so we should talk soon.

In addition, we need to discuss (1) how you want the documents from the banks sent to you; and (2) whether you are okay with extending the date by which Plaintiffs have to seek further responses or production re their discovery, assuming the Court denies our Motion.

Please call me at your earliest convenience.

Doug

Douglas R. Painter, Esq.
Steinbrecher & Span LLP
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
Tel: 213-891-1400 Fax: 213-891-1470

dpainter@steinbrecherspan.com
www.steinbrecherspan.com

*This email may contain material that is confidential, attorney-client privileged and/or work-product protected, and is solely for the use of the intended recipient. Any review, reliance or distribution by others, or forwarding without express permission, is strictly prohibited. If you are not the intended recipient of this email, please contact the sender immediately and delete all copies. Thank you.*

STEINBRECHER & SPAN LLP
ROBERT S. SPAN (SB# 68605)
DOUGLAS R. PAINTER (SB# 131043)
445 S. Figueroa St., Suite 2350
Los Angeles, CA 90071
T: (213) 891-1400
F: (213) 891-1470

Attorneys for plaintiffs KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME and SVILOSA AD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

DIMAGGIO INTERNATIONAL, INC., a California corporation,

Plaintiffs,

v.

PEACE FOR YOU PEACE FOR ME FOUNDATION, a form of business entity unknown, ALEXANDER PANEV, an individual, JAY BOTEV, an individual, KRASIMIR DACHEV, an individual, MARCELO DJOTOLOV, an individual, METAL TECHNOLOGY GROUP, a form a form of business entity unknown, and DOES 1 to 50,

Defendants.

CASE NO. LC104988

*Hon. Rupert Byrdsong*

---

KRASIMIR DACHEV, an individual, PEACE FOR YOU PEACE FOR ME, a non-profit foundation organized under the laws of Bulgaria, and SVILOSA AD, a Joint Stock Company organized under the laws of Bulgaria,

Plaintiffs,

v.

ROBIN DIMAGGIO, an individual, DIMAGGIO INTERNATIONAL, INC., a California corporation, and DOES 1-25, inclusive,

Defendants.

CASE NO. BC645027

**DECLARATION OF MATTHEW A. LESNICK IN SUPPORT OF PLAINTIFFS' MOTION FOR THE TERMINATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND SPOLIATION OF EVIDENCE**

[Notice and Motion; Memorandum of Points and Authorities; Declarations of Krasimir Dachev, Douglas R. Painter, Bruce Pixley and Proposed Order filed concurrently herewith]

Date: October 4, 2017
Time: 8:30 a.m.
Dept.: "U"

**DECLARATION OF MATTHEW A. LESNICK**

I, Matthew A. Lesnick, declare as follows,

1. I am an adult citizen of the United States, a resident of California and a member in good standing of the California State Bar. I am a partner at the law firm of Lesnick Prince & Pappas LLP, advisory bankruptcy counsel for Plaintiffs in this action. I am familiar with the facts stated herein and if called as a witness would and could testify competently thereto.

2. Attached as Exhibit A is a true and correct copy of an email dated August 22, 2017 sent to me from John Tedford on behalf of the Trustee of Debtor DiMaggio International, Inc. in the bankruptcy case entitled *In Re DiMaggio International, Inc.*, United States Bankruptcy Court Case Number 1:17-bk-11560-VK.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 11th day of September 2017 at Santa Monica, California.

Matthew A. Lesnick

**EXHIBIT  A**

**From:** John N. Tedford, IV JTedford@dgdk.com
**Subject:** DiMaggio International Inc.: Dachev v. DiMaggio
**Date:** August 22, 2017 at 4:47 PM
**To:** Matthew Lesnick (matt@lesnickprince.com) matt@lesnickprince.com
**Cc:** Diane C. Weil dweil@dgdk.com

**Matt:**

**I am writing on behalf of Diane C. Weil, chapter 7 trustee for DiMaggio International, Inc. A number of weeks ago, we discussed your client's desire to conduct discovery in *Dachev v. DiMaggio*, LASC case no. BC645027. You indicated that, in the course of conducting discovery, you may request that the defendant or third parties produce documents and information relating to the Debtor (including, but not necessarily limited to, financial information). This email confirms that (1) the Trustee does not object to you seeking or obtaining such discovery, and (2) you have agreed to provide copies of any such documents and information to the Trustee.**

**Thank you for your time and attention to this matter.**

**John**

**John N. Tedford, IV**
**Danning, Gill, Diamond & Kollitz, LLP**
1900 Avenue of the Stars, 11th Floor
Los Angeles CA 90067-4402
(310) 277-0077 | (310) 277-5735 fax
JTedford@dgdk.com | www.dgdk.com

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Danning, Gill, Diamond & Kollitz, LLP, any of its clients, or any other person or entity.

# EXHIBIT 1

**Lisa Atwood**

**From:** DONOTREPLY-CRS@lacourt.org
**Sent:** Wednesday, September 27, 2017 1:36 PM
**To:** Lisa Atwood
**Subject:** Cancellation: LC104988 - 170811242306

The following reservation has been canceled by the requestor.

Reservation ID: 170811242306
Case Number: LC104988
Case Title: DIMAGGIO INTERNATIONAL, INC. VS. PEACE FOR YOU FOR ME
Party: DACHEV KRASIMIR (Defendant)
Courthouse: Van Nuys Courthouse East
Dept: U
Reservation Type: **Motion to Compel Further Discovery Responses**
Date: 10/4/2017
Time: 08:30 am

**USE OF CRS DOES NOT ALTER OR EXTEND ANY STATUTORY DEADLINES, INCLUDING GIVING NOTICE. IT IS YOUR SOLE RESPONSIBILITY TO SERVE AND FILE THE CORRESPONDING DOCUMENTS PURSUANT TO THE STATUTORY REQUIREMENTS.**

Please do not reply to this email. Replies to this email will not be read.

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 10/04/17 | DEPT. NWU

HONORABLE RUPERT A. BYRDSONG JUDGE | J. GARALZA DEPUTY CLERK

HONORABLE JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

#4

E. VINCE CRUZ, CA Deputy Sheriff | NONE Reporter

8:32 am BC645027

KRASIMIR DACHEV
VS
ROBIN DIMAGGIO

RELATED TO LC104988

Plaintiff Counsel
NO APPEARANCES
Defendant Counsel

**NATURE OF PROCEEDINGS:**

PLAINTIFFS, KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME, AND SVILOSA AD'S MOTION FOR THE TERIMNATING SANCTION OF DEFAULT FOR INTENTIONAL FORGERY AND SPOLIATION OF EVIDENCE

RECEIVED
OCT 11 2017

The matter is called for hearing.

There being no appearance by or for the moving party, the Motion for Terminating Sanction is DENIED.

The Final Status Conference of February 2, 2018 and Trial Date of February 13, 2018, are to remain as previously set.

Clerk is to give notice.

CLERK'S CERTIFICATE OF MAILING

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the MINUTE ORDER upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail

MINUTES ENTERED
10/04/17
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 10/04/17 DEPT. NWU

HONORABLE RUPERT A. BYRDSONG JUDGE | J. GARALZA DEPUTY CLERK

HONORABLE JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

#4

E. VINCE CRUZ, CA Deputy Sheriff | NONE Reporter

8:32 am BC645027

KRASIMIR DACHEV
VS
ROBIN DIMAGGIO

RELATED TO LC104988

Plaintiff Counsel
NO APPEARANCES
Defendant Counsel

**NATURE OF PROCEEDINGS:**

at the courthouse in <INSERT CITY>, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Dated: 10/04/2017

Sherri R. Carter, Executive Officer/Clerk

By: ______________________________
J. GARALZA

DOUGLAS R. PAINTER, ESQ.
STEINBRECHER & SPAN LLP
445 S. FIGUEROA ST., STE 2350
LOS ANGELES, CA 90071

J.T. FOX, ESQ.
26500 AGOURA RD., STE 137
CALABASAS, CA 91302

MINUTES ENTERED
10/04/17
COUNTY CLERK

Main Document Page 248 of 248

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Lesnick Prince & Pappas LLP, 185 Pier Avenue, Suite 103, Los Angeles, CA 90405

A true and correct copy of the foregoing document entitled (*specify*): **EXHIBITS TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/29/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Moises S Bardavid** mbardavid@hotmail.com
- **Matthew A Lesnick** matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **David Seror (TR)** mtzeng@brutzkusgubner.com, C133@ecfcbis.com
- **Valerie Smith** claims@recoverycorp.com
- **United States Trustee (SV)** ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 11/29/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Maureen A. Tighe
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 324
Woodland Hills, CA 91367

Robin DiMaggio
5737 Kanan Rd., #117
Agoura Hills, CA 91301

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/29/2017 | Janet A. Mack | /s/Janet A. Mack |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012* **F 9013-3.1.PROOF.SERVICE**